**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. THOMAS J. AQUILINO, SENIOR JUDGE**
-------------------------------------------------------------------- X

**UNITED STATES**           :

       **Plaintiff,**      :

             :

    **v.**          :

             :    **No. 19-cv-00125**

**KATANA RACING, INC. d/b/a WHEEL & TIRE** :
**DISTRIBUTORS,**           :

             :

       **Defendant.**     :
-------------------------------------------------------------------- X

## DEFENDANT'S RENEWED RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

NEVILLE PETERSON LLP
John M. Peterson
Richard F. O'Neill
Patrick B. Klein
55 Broadway, Ste. 2602
New York, NY 10004
(212) 635-2730
jpeterson@npwny.com

*Counsel to Defendant,*
*Katana Racing, Inc.*
*d/b/a Wheel & Tire Distributors*

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. ii

STATEMENT OF FACTS ..................................................................................................1

I.      Background. ..............................................................................................................2

II.     Proceedings in this Court and the Federal Circuit. ..................................................5

ARGUMENT ......................................................................................................................6

I.      CBP Did Not Render an Actionable Section 592 Decision in this Case. ..............6

II.     The Complaint Does Not Sufficiently Allege a Section 592 Violation Under the
Standards of *Twombly* and *Iqbal*. ......................................................................12

       A.      Pleading Standards of *Twombly* and *Iqbal* ...........................................12

       B.      The Complaint Articulates a Theory of Fraud but Does Not Plead Fraud with
Particularity as Required by Rule 9(b). ..................................................14

III.    In the Alternative, This Action Must Be Dismissed as Untimely Because the
Government Improperly Induced Katana's Third Waiver of the Statute of Limitations
by Deception. ........................................................................................................19

IV.    This Action is Barred by Laches ..........................................................................27

CONCLUSION ..................................................................................................................29

## **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. passim

*Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147 (1984) ......................................................... 25

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................... 12, 17, 19

*Bergman v. United States*, 28 Fed. Cl. 580 (1993) ..................................................................... 23

*Brady v. United States*, 397 U.S. 742 (1970) ...................................................................... 21, 26

*Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F.3d 1312 (Fed. Cir. 2009) ................................. 13

*Freeport Minerals Co. v. United States*, 758 F.2d 629 (Fed. Cir. 1985). ..................................... 28

*Ganz USA LLC v. United States*, 2016 Ct. Intl. Trade LEXIS 106 (2016) .................................. 28

*Green v. United States,* 260 F.3d 78 (2nd Cir. 2001) .................................................................. 25

*Heaphy v United States*, 23 Cl. Ct. 697 (1991) ......................................................................... 23

*Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51 (1984) ............................. 26

*Holmberg v. Armbrecht*, 327 U.S. 392 (1946) ........................................................................... 27

*In re BP Lubricants USA Inc.*, 637 F.3d 1307 (Fed. Cir. 2011) ................................................. 13

*Jazz Photo Corp. v. United States,* 439 F.3d 1344 (Fed. Cir. 2006) ........................................... 25

*Lincoln Logs Ltd. v. Lincoln Pre-Cut Log Homes, Inc.,* 971 F.2d 732 (Fed. Cir. 1992) ............. 28

*Lynn v. United States*, 58 Fed. Cl. 797 (1993) ........................................................................... 23

*McMann v. Richardson*, 397 U.S. 759  (1970) ........................................................................... 26

*National Semiconductor Inc. v. United States*, 547 F.3d 1364 (Fed. Cir. 2008). ........................ 24

*Scharf v. Department of the Air Force*, 710 F.2d 1572 (Fed. Cir. 1983)................................ 22, 23

*Tannehill v. United States*, 18 Ct. Cl. 296 (1989).......................................................................... 23

*United States v. Aegis Sec. Ins. Co*., 301 F. Supp. 3d 1359 (Ct. Int'l Tr. 2018)................... 11, 23

*United States v. Aegis Sec. Ins. Co.*, 422 F. Supp. 3d 1328 (Ct. Int'l Tr. 2019)........................... 9

*United States v. Arky*, 938 F.2d 579 (5th Cir. 1991)................................................................... 26

*United States v. Catapano*, 2008 U.S. Dist. LEXIS 121693  (E.D.N.Y. 2008)........................... 27

*United States v. Chu-Chaing Ho*., 582 F. Supp. 3d 1325 (Ct. Int'l Tr. 2022) ............................. 15

*United States v. Ford Motor Co.,* 463 F.3d 1267 (Fed. Cir. 2006)............................................... 26

*United States v. Ford Motor Co.*, 497 F. 3d 1331 (Fed. Cir. 2007)............................................... 25

*United States v. Greenlight Organic Inc*., 586 F. Supp. 3d 1342 (Ct. Int'l Tr. 2022) ................. 15

*United States v. Guerra*, 94 F.3d 989 (5th Cir. 1996) ................................................................ 26

*United States v. Heidecke*, 900 F.2d 1155 (7th Cir. 1990) ........................................................ 26

*United States v. Inn Foods, Inc*., 560 F.3d 1338 (Fed. Cir. 2009)................................................ 15

*United States v. Katana Racing, Inc.,* 569 F. Supp. 3d 1296 (Ct. Int'l Tr. 2022)................. passim

*United States v. Katana Racing, Inc*., 75 F.4th 1346 (Fed. Cir. 2023) ...................................... 1, 6

*United States v. Koh*, 968 F. Supp. 136 (S.D.N.Y. 1997).............................................................. 26

*United States v. Levine*, 658 F.2d 113 (3d Cir. 1981)................................................................... 26

*United States v. Meeker*, 701 F.2d 685 (7th Cir. 1983) .............................................................. 26

*United States v. Modes, Inc.*, 16 C.I.T. 879 (1992). .................................................................... 15

*United States v. Nitek Elecs. Inc.*, 36 C.I.T. 1147 (2012) ............................................................ 9

*United States v. Nitek Elecs., Inc*., 36 C.I.T. 553 (2012) .............................................................. 9

*United States v. Nitek Elecs., Inc*., 806 F.3d 1376 (Fed Cir. 2015). ............................. 7, 8, 10, 11

*United States v. Optrex Am., Inc*., 29 C.I.T. 1494 (2005)............................................................... 7

*United States v. Palmer*, 1996 U.S. App. LEXIS 23187 (4th Cir. 1996). .................................... 25

*United States v. Spanish Foods*, 24 C.I.T. 1052 (2000).............................................................. 15

*United States v. Wanxiang Am. Corp.*, 2023 Ct. Intl. Trade LEXIS 118 (2023) ........................... 6
*United States v. Wilson,* 26 F.3d 142 (D.C. Cir. 1994) ............................................................... 26

**Statutes**
19 U.S.C. § 1508 ....................................................................................................................... 28
19 U.S.C. § 1592 .................................................................................................................. passim
19 U.S.C. § 1621 .......................................................................................................................... 3
28 U.S.C. § 1582 .......................................................................................................................... 2

**Other Authorities**
International Chamber of Commerce, Incoterms 2010: ICC Rules for the Use of
    Domestic and International Trade Items  (2010). .................................................................. 15
Press Release, U.S. Attorney's Office, Southern District of New York, Manhattan U.S.
    Attorney Announces Criminal and Civil Charges Against CEO of Apparel Company
    for Engaging in Customs Fraud (Sept. 24, 2021), https://www.justice.gov/usao-
    sdny/pr/manhattan-us-attorney-announces-criminal-and-civil-charges-against-ceo-
    apparel-compan-0 .................................................................................................................. 15

**Treatises**
5 Wright & Miller, Federal Practice and Procedure (3d ed. 2004). ............................................ 12

**Regulations**
19 C.F.R. § 162.74 ................................................................................................................ passim

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. THOMAS J. AQUILINO, SENIOR JUDGE**

-------------------------------------------------------------------- X
**UNITED STATES** :
                                        :
                   **Plaintiff,** :
                                        :
              **v.** :
                                        :          **No. 19-cv-00125**
**KATANA RACING, INC. d/b/a WHEEL & TIRE** :
**DISTRIBUTORS,** :
                                        :
                   **Defendant.** :
-------------------------------------------------------------------- X

## DEFENDANT'S RENEWED RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

In accordance with Rules 7, 12, and 56 of the Rules of the U.S. Court of International Trade ("USCIT R."), and in accordance with the final judgment and remand decision of the U.S. Court of Appeals for the Federal Circuit in *United States v. Katana Racing, Inc*., 75 F.4th 1346 (Fed. Cir. 2023), Defendant Katana Racing, Inc. ("Katana"), hereby renews its *Motion to Dismiss* the Complaint, by which Plaintiff United States seeks recovery pursuant to 19 U.S.C. § 1592(d) of certain "withheld duties" of which U.S. Customs and Border Protection ("CBP" or "Customs"), was allegedly deprived. Katana has consistently denied liability for these duties, as its identity was stolen, and Katana did not commit the claimed violations of 19 U.S.C. § 1592(a) which form the basis for the Government's claim.

To the extent the Court needs to consider matters outside the pleadings, Katana herewith renews its converted Motion for Summary Judgment.

## STATEMENT OF FACTS

A statement of the material facts to which Defendant contends there are no genuine issues of fact to be tried is appended herewith pursuant to USCIT R. 56.3 (hereinafter "Pl.'s 56.3") and is incorporated by reference into this Memorandum.

## I.    Background.

The United States brought this action against Katana Racing Inc. pursuant to 28 U.S.C. § 1582, seeking recovery of $5,742,483.80 in "withheld duties" relating to imports of passenger car and light truck ("PVLT") tires from the People's Republic of China made between September 2009 and September 2012. *See* 56.3 Statement at ¶ 1. During that period, the United States imposed additional "safeguard" duties against such Chinese-origin tires in amounts which gradually reduced from 35% to 30% to 25% *ad valorem*. *See* 56.3 Statement at ¶ 2. Katana, a Southern California-based tire importer and wholesaler, advised its Chinese suppliers that, due to the tariffs, it would no longer be able to purchase Chinese tires. In return, the Chinese suppliers offered Katana "Delivered Duty Paid" ("DDP") prices, which Katana found acceptable.  *See* 56.3 Statement at ¶3. Under the "DDP" INCOTERM, the seller—in this case, the Chinese producers— are responsible for Customs clearance and payment of all duties due. For the next three years, Katana purchased tires on a DDP basis—a fact verified by Customs auditors. *See* 56.3 Statement at ¶4.

In late 2012, Customs approached Katana to commence a Regulatory Audit of 61 entries of Chinese PVLT tires. Katana did not recognize the entries, and denied having made them. *See* 56.3 Statement at ¶5. Upon further investigation, it was determined that the Chinese suppliers, while selling to Katana on DDP terms, had identified Katana as importer of record on Customs entry documents. Further examination revealed that the entries contained valuation and classification errors. The audit was expanded to include some 386 entries. After completing its Regulatory Audit, with Katana's assistance and cooperation, CBP determined that some $5,742,483.80 in duties had been underpaid. *See* 56.3 Statement at ¶ 6.

Upon first discovering these entries, Katana made a "prior disclosure" to Customs, noting that the entries appeared to contain errors, while disclaiming responsibility for making or authorizing the entries or making the false statements contained therein. *See* 56.3 Statement at ¶ 7. It is undisputed that Katana never received a bill for Customs brokerage services for any of the entries, never advanced any duties in connection with the entries, and had not engaged the many different Customs brokers who filed the entries. It is also unquestioned that Katana's records showed that the company had been invoiced for the tires on DDP terms, and had paid its vendors the stated DDP prices. *See* 56.3 Statement at ¶ 8.

Katana cooperated with CBP's Regulatory Audit[1] and assisted the agency in calculating the loss of revenue. While this process played out, Customs solicited from Katana two extensions of the 19 U.S.C. § 1621 statute of limitations governing actions to recover 19 U.S.C. § 1592 penalties and withheld duties. *See* 56.3 Statement at ¶ 9.

On February 12, 2016, Customs presented Katana with a demand for payment of the $5,742,483.80 in calculated "withheld duties." In response, Katana arranged an in person meeting between its representatives and representatives of CBP in Long Beach, California to discuss the demand. *See* 56.3 Statement at ¶ 10. At that March 21, 2016, meeting, Katana (1) explained that it did not presently have the funds to pay the $5,742.483.80 but wanted to retain its "prior disclosure" status; and (2) requested a future meeting with CBP to explain the identity theft so Katana might be exonerated of any liability for the monies. Mr. Jorge Garcia, then Assistant Port Director of Customs for the Los Angeles/Long Beach port, agreed that Katana could continue its prior disclosure status and would receive a meeting to explain the circumstances of its case. *See* 56.3

---

[1] Although the Customs Regulations require that all "prior disclosures" be referred to Customs' Office of Investigations, there is no indication that Customs made any such referral with respect to Katana's prior disclosure. *See* 19 C.F.R. § 162.74(f).

Statement at ¶11. On March 22, 2016, Katana's counsel wrote to Assistant Port Director Garcia confirming this understanding. *See* 56.3 Statement at ¶ 12. CBP does not dispute Katana's version of these events. *See United States v. Katana Racing, Inc.,* 569 F. Supp. 3d 1296, 1304, 1312-1313 (Ct. Int'l Tr. 2022).

Shortly thereafter, Customs requested that Katana execute a third waiver of the statute of limitations for the purpose of allowing it the benefit of orderly administrative proceedings with respect to the prior disclosure. Reasonably expecting, as explained herein, that it would have an opportunity to meet with Customs and explain its situation, Katana executed and returned the waiver on October 25, 2016. *See* 56.3 Statement at ¶ 13.

CBP took no apparent action with respect to the case for years. Finally, in 2018, Ms. Karen Hiyama, a CBP attorney in Detroit, informed Katana that she had inherited the case and demanded payment of the $5,742,483.80 in withheld duties. *See* 56.3 Statement at ¶ 14, 15. Katana explained that it contested liability for the duties and had been promised an opportunity to make a presentation regarding its claims of identity theft. *See* 56.3 Statement at ¶ 14, 15. Ms. Hiyama made clear that no such opportunity would be afforded; and on June 20, 2019, she issued to Katana a "Demand for Payment of Duty." *See* 56.3 Statement at ¶ 16. As discussed herein, while the demand letter demanded payment of "duties deprived the United States due to violation of Title 19, United States Code, Section 1592(a)," it never stated that Katana had committed the violation. Nor did the demand identify any level of culpability relating to the claimed violation—an essential element of any 19 U.S.C. § 1592(a) violation. *See* 56.3 Statement at ¶ 16, 17.

When Katana declined to execute another statute of limitations waiver, it revoked the third waiver. The United States then filed this action seeking $5,743,483.80 in "withheld duties" from

Katana, under 19 U.S.C. § 1592(d) but interestingly not seeking the interest penalty provided for prior disclosures pursuant to 19 U.S.C. § 1592(c)(4). *See* 56.3 Statement at ¶ 20.

## II.    Proceedings in this Court and the Federal Circuit.

Katana filed a motion to dismiss the case against it pursuant to USCIT R. 12(b)(1) and 12(b)(6), alleging that the action was untimely filed, as Katana had revoked its third waiver of the statute of limitations.  Katana also asserted that the Complaint failed to plead a plausible cause of action against it—it did not allege that Katana had violated 19 U.S.C. § 1592(a) nor did it identify any level of culpability for the violation—and that the action was barred by laches. The Government responded to the *Motion to Dismiss* and then filed a Motion styled a "Cross-Motion for Summary Judgment."[2] On March 28, 2022, after converting the Rule 12(b)(6) motion to a Motion for Summary Judgment, this Court entered judgment dismissing the case under Court Rule 12(b)(1), holding that the action was untimely filed due to Katana's revocation of its third statute of limitations waiver.

The Government appealed from this Court's judgment of dismissal. On appeal, the U.S. Court of Appeals for the Federal Circuit vacated and remanded this Court's dismissal, holding that the statute of limitations was not a jurisdictional matter, and that Defendant Katana could not "revoke" its statute of limitations waiver. The Court further held that, where the Government seeks only 19 U.S.C. § 1592(d) withheld duties, it does not have to provide a defendant with the administrative procedures specified in 19 U.S.C. § 1592(b). However, the Federal Circuit did not reach the issue of the adequacy of the Government's Complaint in this action and explicitly held

---

[2] This filing was accompanied by a 9,900 page "evidence summary" which repeatedly violated this Court's redaction rules. Defendant filed an Emergency Motion to seal the record as to this summary which was granted. To date, the Government has taken no action to correct the redaction errors.

that Katana was free to renew its Motion to Dismiss, which this Court had converted to a motion for summary judgment, to argue that the third statute of limitations waiver had been procured by the Government's misrepresentation and was therefore void.[3]

Defendant therefore renews its Motion for Dismissal and Summary Judgment, asking the Court to determine whether Customs rendered a sufficient administrative determination on which suit could be brought, whether the Government's Complaint adequately pleads a cause of action, whether the third statute of limitations waiver was void for deception, rendering this action untimely, and whether the action is barred by laches.

## **ARGUMENT**

### I.     **CBP Did Not Render an Actionable Section 592 Decision in this Case.**

It is well-established that "pleading a 19 U.S.C. § 1592 claim premised on an act, rather than omission, requires four elements: (1) the act; (2) falsity; (3) materiality; (4) culpability." *United States v. Wanxiang Am. Corp*., 2023 Ct. Intl. Trade LEXIS 118 at *22-23 (2023) (citing 19 U.S.C. § 1592(a)(1)(A)). CBP must include these four factors when asserting a Section 1592(a) violation. As discussed *infra*, the Complaint in this case fails to plead a plausible violation of 19 U.S.C. § 1592(a) because it never identifies actions taken by Defendants, the falsity or materiality

---

[3] Indeed, the Court of Appeals stated "Instead, on remand Katana may renew its motion to dismiss under CIT Rule 12(b)(6) or seek summary judgment." 75 F.4th at 1353, n.5. The Federal Circuit further held:

> Without expressing any view on the matter, we do not foreclose, however, Katana's argument that its third waiver was induced by affirmative misconduct by Customs. See *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc*., 467 U.S. 51, 60-61, 104 S. Ct. 2218, 81 L. Ed. 2d 42 & n.12 (1984); *United States v. Ford Motor Co*., 463 F.3d 1267, 1279 (Fed. Cir. 2006).

75 F.4th at 1353, n.6.

of those actions, nor does it include any allegation as to Defendant's culpability. These are essential elements of asserting a Section 592(a) violation.

Fundamentally, CBP's final "Demand for Payment of Duty," dated June 20, 2019, fails to state an adequate determination on which suit may be brought, also because it lacks any finding of culpability. It is well-established that Customs may seek recovery of "withheld duties" under 19 U.S.C. § 1592(d) only "if the United States has been deprived of lawful duties, taxes, or fees as a result of a violation of subsection (a)." *See* 19 U.S.C. § 1592(d). It is similarly well-established that the "language of section 1592 evidences that the level of culpability forms the core around which the government must construct each penalty claim it wishes to bring," *see United States v. Optrex Am., Inc.*, 29 C.I.T. 1494, 1498-1499 (2005), and that "[t]he term 'recovery' underscores that a 1592 action before this Court is an enforcement suit allowing the government to recover on a claim that it <u>perfected in the administrative proceedings</u>. See 19 U.S.C. § 1592." *Id.* (Emphasis added).

The Federal Circuit has held that the determination of culpability must originate with Customs, not with the Department of Justice or with the courts. "Customs chooses which culpability level or levels to assert against the importer." *United States v. Nitek Elecs., Inc*., 806 F.3d 1376, 1380 (Fed Cir. 2015). Examining the legislative history of Section 592, the Federal Circuit in *Nitek* squarely held that " … the legislative history nowhere suggests that the Department of Justice should determine the level of culpability. It leaves this determination in the hands of Customs." *Id.* at 1381.[4]

---

[4] In its previous decision in this case, the Court noted:

The Federal Circuit has held that the finding of §1592 culpability must originate with CBP in administrative proceedings, and may not be posited by the Department of Justice in litigation. *United States v. Nitek Electronics, Inc*., 806 F.3d 1376, 1380-81 (Fed. Cir.

Customs' final (only) administrative determination in Katana's case makes no finding of culpability at all. The decision (ECF 2-2 at 2, ECF 12-3 at 196) demands payment of $5,742,483.80, representing duties deprived the United States due to violation of Title 19, United States Code, Section 1592(a). The determination, like the Complaint in this case, *does not even state that Katana is the entity which committed the Section 1592(a) violation*. And it makes no finding at all regarding culpability, an essential element of a § 1592(a) violation.

This Court reviews Customs' administrative determinations in Section 592 cases *de novo*, but its *de novo* review is limited to the matters recited in Customs' administrative determination – including the level of culpability. This was demonstrated in *Nitek, supra,* where Customs determined that the importer had violated Section 592(a) by reason of gross negligence. The Justice Department, however, sued to collect the penalty alleging simple negligence. This Court dismissed the Government's action, and the determination was upheld by the Court of Appeals, which noted:

> Read together, the recovery language and the *de novo* review mean that that the court can consider all issues de novo that are alleged in Customs' final penalty claim. Specifically, this means that if Customs determines that the importer violated the statute based on negligence, the court does not need to give any deference to Customs' finding that the importer was negligent. However, the *de novo* review does not give the Government power to independently bring a claim that Customs did not allege. There is no indication in the plain meaning of subsection (e) that the Government may bring a claim based on a different culpability level.

806 F.2d at 1380.[5]

---

2015) ("[T]he legislative history nowhere suggests that the Department of Justice should determine the level of culpability. It leaves this determination in the hands of Customs.").

*United States v. Katana Racing Inc*., 569 F. Supp. 3d at 1310-1311 (Ct. Int'l Tr. 2022).

[5] This Court had previously noted:

Section 1592 mandates that Customs perfect a penalty claim prior to seeking recovery in this Court and a distinct level of culpability creates the nucleus around which that claim forms. Customs did not seek to impose a penalty on Nitek for negligence at the administrative level and, as a result, the administrative claim for which Customs is seeking recovery *simply does not exist.*

That this action seeks recovery of withheld duties, rather than penalties, does not change the need for an administrative determination regarding culpability. Indeed, the Government conceded this point in *United States v. Nitek Elecs. Inc.*, 36 C.I.T. 1147, 1152 fn 5 (2012), where the Court noted:

> Plaintiff [United States] contends that it would be manifestly unjust to prevent a hearing on its penalty claim for negligence *as* § 1592(d) similarly requires the government to demonstrate one of the aforementioned levels of culpability. Pl.'s Mot. 13-14. Applicable case law appears to support Plaintiff's reading of the statute, see *United States v. Pan Pac. Textile Grp., Inc.*, 29 CIT 1013, 1019, 395 F. Supp. 2d 1244, 1250 (2005) ("[I]n order for liability for unpaid duties to accrue under 19 U.S.C. § 1592(d), a violation of 19 U.S.C. § 1592(a) must have been committed through either fraud, gross negligence, or negligence.").

(Emphasis added). Where, as here, the Customs determination does not find that the claimed Section 592(a) violations were culpable, within the requirements of the statute, there is nothing for the Justice Department to sue on. Customs simply did not issue a perfected, actionable determination.

That a culpability finding is essential to any action to collect Section 592(d) duties is amply demonstrated by this Court's decision in *United States v. Aegis Sec. Ins. Co.*, 422 F. Supp. 3d 1328, 1344-1345 (Ct. Int'l Tr. 2019). In *Aegis*, Customs sued an importer, Tricots, for Section 592(a) penalties based on a finding of negligence, and sued its surety, Aegis, for withheld duties pursuant to 19 U.S.C. § 1592(d). The penalty case against Tricots was dismissed, since the Government failed to accord Tricots the procedural process required by 19 U.S.C. § 1592(b), and thus did not exhaust its administrative remedies. The court refused to dismiss the § 1592(d) claim against the surety, noting (as the Court of Appeals did in this case) that "Section 1592 does not provide any administrative process for imposing lost duty claims." *Id.* at 1344. But the Court noted that, in

---

*United States v. Nitek Elecs., Inc.*, 36 C.I.T. 546, 553 (2012) (emphasis added).

pursuing its claim for withheld duties, Customs would be required to prove the existence of a

Section 592(a) violation at the level of culpability found by Customs:

> Finally, subsection (e) of the statute provides that, in any proceeding based on negligence, such as the Government's claim here, "the United States shall have the burden of proof to establish the act or omission constituting the violation." 19 U.S.C. § 1592(e)(4). The Government's burden of proof is to establish by a preponderance of the evidence that Tricots committed an act or omission constituting a negligent violation of § 1592(a). See *United States v. Deladiep*, Inc., 41 CIT   ,   , 255 F. Supp. 3d 1326, 1337, SLIP OP. 2017-108 (2017).
>
> If the Government meets its burden, "the alleged violator shall have the burden of proof that the act or omission did not occur as a result of negligence." 19 U.S.C. § 1592(e)(4). The alleged violator satisfies its burden of proof by "affirmatively demonstrat[ing] that it exercised reasonable care under the circumstances." *United States v. Ford Motor Co.*, 463 F.3d 1267, 1279 (Fed. Cir. 2006) ("Customs has the burden merely to show that a materially false statement or omission occurred; once it has done so, the defendant must affirmatively demonstrate that it exercised reasonable care under the circumstances.").

*Id.* at 1345. Thus, even if a penalty is not sought, in a case seeking to recover withheld duties under

19 U.S.C. § 1592(d), the Government has the burden of proving that the defendant violated 19

U.S.C. § 1592(a), using the burdens of proof set out in 19 U.S.C. § 1592(e).

As the Federal Circuit held in *Nitek, supra*, the level of culpability sued on must be the

level of culpability determined by Customs. But in this case, where Customs has not articulated

*any* level of culpability in its finding, it simply has not rendered a determination actionable or

enforceable in this Court. While, as noted in *Aegis, supra,* Customs is not required to follow the

elaborate procedures of § 1592(b) when asserting a claim for withheld duties, it must articulate

that there was a culpable violation of § 1592(a).  Customs simply did not do that in this case, and

accordingly has not stated in its Complaint a claim on which relief may be granted.[6] As noted in

---

[6] The lack of detail in the Complaint, and Customs' reticence to state plainly, in either its determination or the Complaint in this case, that Katana is the person who submitted false entry statements to Customs, may stem from the agency's apparent failure to follow its own procedures. Katana submitted a prior disclosure to Customs when it learned that apparently false entries had

*Nitek*, it is not the role of the Justice Department to independently assert a level of culpability. *Nitek, supra* at 1380-81. And the Court's *de novo* review is limited to reviewing the violation based on the level of culpability asserted by Customs. It is clear that Congress did not intend that suits brought in this Court pursuant to 19 U.S.C. § 1592(e) entail a search for the level of culpability to be evaluated. Where Customs has not asserted a culpability level in its decision, there is nothing for this Court to enforce.

While Customs did not have to follow the procedures set out in 19 U.S.C. § 1592(b) to bring this action to recover withheld duties, its administrative duty demand is fatally deficient.

---

been filed in its name, stating plainly therein that it had been the victim of identity theft.  Section 162.74(f) of the Customs Regulations, 19 C.F.R. § 162.74(f), provides for "Verification of disclosure":

> (f) Verification of disclosure.  Upon receipt of a prior disclosure, the Customs officer shall notify Customs Office of Investigations of the disclosure. In the event the claimed prior disclosure is made to a Customs officer other than the concerned Fines, Penalties, and Forfeitures Officer, it is incumbent upon the Customs officer to provide a copy of the disclosure to the concerned Fines, Penalties, and Forfeitures Officer. The disclosing party may request, in the oral or written prior disclosure, that the concerned Fines, Penalties, and Forfeitures Officer request that the Office of Investigations withhold the initiation of disclosure verification proceedings until after the party has provided the information or data within the time limits specified in paragraph (b)(4) of this section. It is within the discretion of the concerned Fines, Penalties and Forfeitures Officer to grant or deny such requests.

There is no indication that Katana's prior disclosure was ever referred to the Office of Investigations for the required verification. Customs made no apparent effort to investigate the claimed identity theft, establish culpability or try to identify individuals responsible. Instead, it merely continued and completed the regulatory audit then in progress. In this regard, CBP may have failed to exhaust its administrative remedies. *See United States v. Aegis Sec. Ins. Co.*, 301 F. Supp. 3d 1359 (Ct. Int'l Tr. 2018).

II.     **The Complaint Does Not Sufficiently Allege a Section 592 Violation Under the Standards of *Twombly* and *Iqbal*.**

A.      **Pleading Standards of *Twombly* and *Iqbal***

Under the Federal Rules of Civil Procedure, and the Rules of the U.S. Court of International Trade,[7] a pleading that states a claim for relief must contain a short and plain statement of the grounds for the court's jurisdiction, a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for the relief sought. Fed. R. Civ. P. 8(a); USCIT R. 8(a). Elaborating on this, the U.S. Supreme Court, in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), established that to survive a motion to dismiss under Rule 12(b)(6), a complaint requires more than labels and conclusions or a formulaic recitation of the elements of a cause of action. The Court held that factual allegations must be sufficient to raise a right to relief above the speculative level, assuming that all the allegations in the complaint are true. *Twombly* emphasizes that a claim is only plausible when there is enough factual content that allows the court to reasonably infer the defendant's liability for the alleged misconduct. *Id*. at 556.

The Supreme Court further clarified the pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), holding that a complaint must articulate enough factual matter, accepted as true, to state a claim for relief that is <u>plausible on its face</u>. The *Iqbal* Court explained that the determination of whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. Moreover, *Iqbal* confirms that mere conclusory allegations are insufficient; instead, there must be factual allegations that are *plausible*, not just possible. *Id*. at 678; *see also,* 5 Wright & Miller, Federal Practice and Procedure § 1202, p. 94-95 (3d ed. 2004). (Rule 8(a) "contemplate[s] the statement

---

[7] Unless stated otherwise, use of the term "Rule" or "Rules" in this section refers to both the Federal Rules of Civil Procedure and to the Rules of the U.S. Court of International Trade.

of circumstances, occurrences, and events in support of the claim presented" and does not authorize a pleader's "bare averment that he wants relief and is entitled to it.").

Relatedly, Rule 9(b) requires that in pleadings alleging fraud, the circumstances constituting fraud must be stated with particularity. This heightened requirement requires that plaintiffs specify and "plead in detail the *who*, *what*, *when*, *where*, and *how* of the alleged fraud." *In re BP Lubricants USA Inc.,* 637 F.3d 1307, 1309-10 (Fed. Cir. 2011) (citing *Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F.3d 1312, 1327 (Fed. Cir. 2009)). This level of specificity is intended to provide defendants with adequate notice of the conduct complained of, enabling them to prepare an appropriate defense.

While *Ashcroft v. Iqbal* did not directly concern an allegation of fraud, it did involve the assessment of mental states, knowledge, and intent,[8] which are also crucial elements in fraud cases. The *Iqbal* decision is highly relevant for pleadings alleging fraudulent conduct because it underscores the requirement for detailed allegations in order to satisfy elements that concern a defendant's mental state. For cases involving fraud—where a plaintiff must plead the circumstances constituting fraud with particularity per Rule 9(b)—this often translates into a need for specific allegations about a defendant's *knowledge of the falsity* and *intent to deceive*—not just conclusory statements that falsehoods and deception occurred.

---

[8] While *Iqbal* did not directly involve allegations of fraud, it did address the issue of pleading sufficient facts to show the defendants acted with the necessary state of mind—in that case, discriminatory intent. The plaintiff, Javaid Iqbal, claimed he was detained and subjected to harsh conditions due to discriminatory policies spearheaded by high-ranking officials, including then-Attorney General John Ashcroft and FBI Director Robert Mueller, following the September 11 attacks. Iqbal argued that the officials knew of, condoned, and willfully and maliciously agreed to subject him to harsh conditions of confinement as a matter of policy solely on account of his religion, race, or national origin. In addressing the allegations of wrongful intent, the Court emphasized the need for factual allegations that go beyond mere speculation; thus, Iqbal's complaint would need to include factual allegations consistent with knowledge and intent to discriminate in order to satisfy the plausibility standard.

Rule 9(b) specifically calls for allegations of fraud to state with particularity the circumstances constituting fraud, and this naturally includes allegations regarding the mental state and intentions of the alleged fraudster. The Supreme Court in *Iqbal* underlined the necessity of providing detailed factual allegations that suggest a defendant's intent, rather than relying on mere conclusory statements, which aligns with the particularity mandate of Rule 9(b). In this case, the Complaint contains no allegations at all concerning 385 of the 386 entries which form the basis for the proposed duty assessment.

### B. The Complaint Articulates a Theory of Fraud but Does Not Plead Fraud with Particularity as Required by Rule 9(b).

As noted above, Customs' final determination is not actionable, since it never states that Katana violated 19 U.S.C. §1592(a) and does not state a finding of culpability. Notwithstanding that the Complaint is deficient in further ways.

Despite the absence of the terms "fraud" or "conspiracy" in the Government's complaint, the sum and substance of their allegations describe a "scheme," *see* Compl. at ¶ 13, commonly referred to as a "double invoicing scheme" which involves the submission of multiple invoices for the same international transaction, each with a different price for the same goods or services. Such a scheme can be used to manipulate customs duties at the expense of the importing customs authorities and in a manner that directly defrauds the buyer. Buyers are especially susceptible to victimization when engaged in international sales transactions governed by "Delivered Duty Paid" (or "DDP") terms. DDP terms indicate that the seller is responsible for delivering the goods to the buyer's location, including paying for all costs, including customs duties and taxes. The seller is also responsible for arranging delivery, including the engagement of a customs broker and provision of information necessary for the broker to file entry. *See e.g.,* International Chamber of Commerce, Incoterms 2010: ICC Rules for the Use of Domestic and International Trade Items

(2010). Given that the seller is responsible for paying customs duties and taxes in the buyer's country, there may be an incentive for the seller to engage in fraudulent activities, such as double invoicing, which relies on the following realities and mechanics to function:

- <u>Seller's Control</u>: The seller has control over the customs declaration and invoicing process. They may declare a lower customs value for the goods to reduce the amount of customs duties and taxes payable in the buyer's country, as the buyer typically pays the negotiated transaction value and may not see the customs value declared to customs authorities.

- <u>Higher Negotiated Transaction Value</u>: The seller and buyer negotiate a transaction value that is often higher than the declared customs value. This difference between the negotiated transaction value and the lower declared customs value allows the seller to save on customs duties and taxes while still receiving the higher negotiated payment from the buyer.

A double invoicing scheme effectively allows the seller to pocket the savings generated by underpaid customs duties, as the buyer is unaware of the customs value declared to customs authorities.

This Court and the Court of Appeals have traditionally treated double-invoicing allegations as fraudulent violations of 19 U.S.C. § 1592(a).[9] Here, the Complaint charges Katana with liability

---

[9] *See e.g.*, *United States v. Inn Foods, Inc*., 560 F.3d 1338 (Fed. Cir. 2009); *United States v. Greenlight Organic Inc*., 586 F. Supp. 3d 1342 (Ct. Int'l Tr. 2022); *United States v. Chu-Chaing Ho*., 582 F. Supp. 3d 1325 (Ct. Int'l Tr. 2022); *United States v. Spanish Foods*, 24 C.I.T. 1052 (2000); *United States v. Modes, Inc.*, 16 C.I.T. 879 (1992).

Double invoicing of imports has also been prosecuted criminally and civilly as a violation of the False Claims Act. *See, e.g.,* Press Release, U.S. Attorney's Office, Southern District of New York, Manhattan U.S. Attorney Announces Criminal and Civil Charges Against CEO of Apparel Company for Engaging in Customs Fraud (Sept. 24, 2021), https://www.justice.gov/usao-sdny/pr/manhattan-us-attorney-announces-criminal-and-civil-charges-against-ceo-apparel-compan-0

for duties owing on 386 entries, totaling $5,742,483.80. Complaint at ¶¶ 11-13. However, the Complaint includes no specific recitation of facts describing the *who*, *what*, *when*, *where*, and *how* of the alleged double invoicing scheme (*i.e.,* fraud), as required by Rule 9(b). A review of key Complaint allegations, *see* Complaint ¶¶ 10-15, with an eye for specific descriptions of Katana's actions or omissions is probative:

| Complaint Language | Analysis: Allegation of Act or Omission Committed by Katana? |
|---|---|
| ¶ 10. Katana is a distributor of high-end wheels and tires, and was the importer of record for all 386 entries. | Identifies Katana as the importer of record listed for the 386 entries at issue, but does not allege act or omission committed by Katana. |
| ¶ 11. The 386 entries were submitted to CBP with invoices that listed prices lower than what Katana actually paid its Chinese vendors for the PVLT tires. | Entries of PVLT tires were submitted with invoices that listed prices lower than what Katana paid its Chinese vendors. However, the allegation does not state that Katana submitted these invoices to CBP or engaged in any other act or omission.<br><br>Katana paid its vendors on a DDP basis. After deduction of non-dutiable charges, any value declared to Customs would be less than the amount Katana paid. |
| ¶ 12. For example, one commercial invoice supplied by a customs broker to CBP during the entry process valued the covered merchandise at $21,220.00. The Chinese tire vendor paid duties of $6,253.84 assessed against the value of the merchandise stated in the invoice supplied at entry, including $5,305.00 assessed as safeguard duties. Another commercial invoice, supplied by Katana to CBP during a regulatory audit, valued the same merchandise at $136,350.00. Using the information reflected in the latter invoice, which is the amount actually paid by Katana to the Chinese tire vendor, the | Identifies a discrepancy between the values stated on invoices during the entry process and a later audit, suggesting underpayment of duties, but again, does not specify that Katana was the submitting party for the undervalued invoice which is the specific action giving rise to the underpayment of duties owing on the entry. No other acts or omissions are identified.<br><br>The Complaint admits that the Chinese vendor, rather than Katana, paid the duties. |

16

| safeguard duties alone should have amounted to $34,087.50. | |
|---|---|
| ¶ 13. The false statements described in paragraphs 11 and 12 were material because the invoices reflecting the undervaluation of PVLT tires had the potential to affect, and did affect, the amount of safeguard duties, regular customs duties, Harbor Maintenance Fees, and Merchandise Processing Fees calculated as owed. As a result of this undervaluation scheme, Katana, as importer of record, caused the amount of safeguard duties, regular customs duties, Harbor Maintenance Fees, and Merchandise Processing Fees to be undercalculated by $5,742,483.80. | Asserts that the undervaluation was material and affected the amount of duties and fees owed. Does not delineate specific acts of submission by Katana, nor any other acts or omissions from which Section 592 liability could attach. |
| ¶ 14. Katana did not exercise reasonable care to ensure that these entries, for which Katana is the importer of record, reflected accurate values of the merchandise, and thus Katana violated 19 U.S.C. § 1592(a). | No acts or omissions are identified and Plaintiff offers only a legal conclusion. Claims Katana did not exercise reasonable care to ensure accurate values of the merchandise were declared, and at most implies a theory of strict or vicarious liability attaching to IORs for customs violations. |
| ¶ 15. As a result of the facts described in paragraphs 8 through 11 above, Katana deprived the United States of lawful duties and fees in the amount of $5,742,483.80, all of which remains unpaid. | No acts or omissions are identified and Plaintiff offers only a legal conclusion. Alleges that Katana is responsible for the United States being deprived of $5,742,483.80 in lawful duties and fees, and implies a theory of strict or vicarious liability attaching to IORs for customs violations. |

As demonstrated, the Complaint fails to meet the standards of *Twombly* and *Iqbal* as it does not provide factual details sufficient to raise a right to relief above the purely speculative level. While the Complaint alleges undervaluation of merchandise, it does not identify specific acts or omissions that demonstrate Katana's knowledge of, or complicity in, the alleged undervaluation scheme, and therefore fails under Rules 8 and 9(b). The Complaint does not specify which individuals at Katana were responsible for the alleged double-invoicing scheme, nor does it

identify the precise roles these individuals played in the purported misconduct. Rule 9(b) mandates the identification of the "who" in the fraud claim.

Applying *Iqbal's* principles to fraud claims, a complaint alleging fraud must provide the circumstances of the fraud with enough detail to raise the likelihood of misconduct above a speculative level and into the realm of the plausible. This includes detailing the knowledge and intent of the alleged fraudulent actions, thus informing the "who, what, when, where, and how" of the misconduct.

The complaint does not detail Katana's intent or knowledge concerning the underreporting of duties. While the Government may have detailed that an underreporting itself occurred, without alleging with particularity how Katana knew of, or intended, the underreporting, these allegations fall short of the requirements under Rule 9(b) which demand the articulation of the "why" and "how" of the fraudulent activity. Likewise, while the Complaint outlines the relevant period during which the entries were made, it lacks specifics regarding the timing of the individual instances of misconduct (*i.e.,* actions or omissions), which are necessary to meet the "when" requirement under Rule 9(b). Although the Government describes a scheme of undervaluation, it does not sufficiently detail the mechanism of how the scheme was purportedly perpetrated. Rule 9(b) requires a description of "how" the fraud occurred. Importantly, the Complaint lacks allegations connecting any specific fraudulent acts to conduct of Katana. It does not detail how Katana orchestrated or participated in the scheme.

For the imposition of Section 592 liability based on some fraudulent double invoicing scheme, the actions and knowledge of individuals must be alleged with specificity. In accordance with *Iqbal*, a mere accusation of wrongdoing, without more, fails to state a claim. The factual allegations must be enough to raise a reasonable expectation that discovery will reveal evidence

18

of illegal behavior. The Complaint against Katana should be required to do more than merely allege that a fraud occurred; it must demonstrate with particularity that Katana had the requisite level of culpability and it must specify the act(s) or omission(s) of Katana.

Given these deficiencies, the Government has not satisfied the pleading standards of Rules 8 or 9(b), nor the more rigorous standards established by *Twombly* and *Iqbal*. The Complaint allegations simply do not contain sufficient factual specificity to create a plausible inference of Katana's intentional and knowing participation in a "scheme" to underpay customs duties. Therefore, the Complaint must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### III. In the Alternative, This Action Must Be Dismissed as Untimely Because the Government Improperly Induced Katana's Third Waiver of the Statute of Limitations by Deception.

In February 2016, Katana found itself in a difficult situation. The company had sought to avail itself of the benefits of "prior disclosure" under 19 U.S.C. § 1592(c)(4). On February 12, 2016, the company received from Customs a demand for payment of over $5.7 million in "withheld duties," which it did not have funds to pay. The company feared loss of its "prior disclosure" status and possible exposure to tens of millions of additional dollars' worth of penalties if it failed to tender the duties as required by the prior disclosure regulation, 19 C.F.R. § 162.74(c).[10] It had

---

[10] 19 C.F.R. § 162.74(c), provides (emphasis added):

(c) Tender of actual loss of duties, taxes and fees or actual loss of revenue. A person who discloses the circumstances of the violation shall tender any actual loss of duties, taxes and fees or actual loss of revenue. The disclosing party may choose to make the tender either at the time of the claimed prior disclosure, **or within 30 days after CBP notifies the person in writing of CBP calculation of the actual loss of duties, taxes and fees or actual loss of revenue. The Fines, Penalties, and Forfeitures Officer may extend the 30-day period if there is good cause to do so.** The disclosing party may request that the basis for determining CBP asserted actual loss of duties, taxes or fees be reviewed by Headquarters, provided that the actual loss of duties, taxes or fees determined by CBP exceeds $100,000 and is

disclaimed liability from the inception of the matter, and reasonably so, but had not yet had an

opportunity to present to Customs its identity theft defense.

By letter dated February 24, 2016, Katana sought a meeting with Customs to discuss the

matter. On March 21, 2016, Katana's President, General Manager and Controller, accompanied

by counsel, met in Long Beach with Mr. Jorge Garcia, Assistant Port Director of Customs for the

Port of Los Angeles/Long Beach. Pursuant to 19 C.F.R. § 162.74(c), Mr. Garcia granted Katana

an extension of time to tender the claimed withheld duties. Mr. Garcia also promised that Customs

would allow Katana to make a presentation in responding to the duty demand and articulating its

claims of identity theft. Katana's counsel confirmed this in a letter to Assistant Port Director

Garcia, dated March 22, 2016:

> You indicated that Customs will issue a Section 592(d) demand for the $5.7 million
> in controversy and Katana will have a right to make presentations in response to
> that demand and in accordance with 19 U.S.C. § 1618. We appreciate the

---

deposited with CBP, more than 1 year remains under the statute of limitations involving the shipments covered by the claimed disclosure, and the disclosing party has complied with all other prior disclosure regulatory provisions. A grant of review is within the discretion of CBP Headquarters in consultation with the appropriate field office, and such Headquarters review shall be limited to determining issues of correct tariff classification, correct rate of duty, elements of dutiable value, and correct application of any special rules (GSP, CBI, HTS 9802, etc.). The concerned Fines, Penalties, and Forfeitures Officer shall forward appropriate review requests to the Chief, Penalties Branch, Office of International Trade. After Headquarters renders its decision, the concerned Fines, Penalties, and Forfeitures Officer will be notified and the concerned Center director will recalculate the loss, if necessary, and notify the disclosing party of any actual loss of duties, taxes or fees increases. Any increases must be deposited within 30 days, unless the local CBP office authorizes a longer period. Any reductions of the CBP calculated actual loss of duties, or and fees shall be refunded to the disclosing party. Such Headquarters review decisions are final and not subject to appeal. Further, disclosing parties requesting and obtaining such a review waive their right to contest either administratively or judicially the actual loss of duties, taxes and fees or actual loss of revenue finally calculated by CBP under this procedure. **Failure to tender the actual loss of duties, taxes and fees or actual loss of revenue finally calculated by CBP shall result in denial of the prior disclosure.**  .

> consideration and will prepare a submission to the Fines, Penalties and Forfeitures office after the Section 592(d) demand is issued.

*See* 56.3 Statement at ¶ 11-12; ECF 12-3 at 182. As this Court has previously noted, the Government does not dispute this version of events. *See United States v. Katana Racing, Inc.,* 569 F. Supp. 3d 1296, 1304, 1312-13 (Ct. Int'l Tr. 2022)

Thereafter, CBP requested, and on October 25, 2016, Katana furnished CBP with a requested third waiver of the statute of limitations, extending the statute of limitations period through July 15. The language of the waiver expressly states that Katana agreed to extend the limitations period:

> … in order that Katana might obtain the benefits of the orderly continuation and conclusion of any administrative proceedings currently being conducted or contemplated by CBP, so that Katana could enjoy the benefit of orderly administrative proceedings in which CBP is reviewing entries of tires by Katana which might be subject to safeguard duties formerly imposed on entries of certain passenger car and light truck tires from China.

*See* 56.3 Statement at ¶ 13; ECF 12-3 at 186. It is undisputed that Customs did nothing regarding the case until 2018, when the agency renewed its demand for payment of the duties. It is further undisputed that Katana requested the promised opportunity to make a presentation showing that it was not liable, that in 2019 Customs refused to provide this opportunity, and thereafter brought the instant suit, one day before the third statute of limitations waiver would have expired.

The facts of the case make clear, however, that the third statute of limitations waiver was invalid since the Government procured it through a false representation. It follows that this action is time-barred and must be dismissed.

A waiver is invalid if "induced by threat[,] … misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper." *Brady v. United States*, 397 U.S. 742, 755 (1970). When the third statute of limitations waiver was solicited in this

case, Katana provided it, in reliance of Customs' prior representation, made through Assistant Port Director Garcia, that it would be allowed to make a presentation showing that it had not violated 19 U.S.C. § 1592(a). Katana's reliance was reasonable. However, Customs' subsequent refusal to allow a presentation shows the prior promise to have been false and unfulfilled. This deceit renders the third waiver void.

The Federal Circuit's position on inducement by government deception was set forth in *Scharf v. Department of the Air Force*, 710 F.2d 1572, 1575 (Fed. Cir. 1983). In that case, a government representative provided misleading advice to a government employee about the consequences of deciding whether to resign from his position voluntarily rather than wait for disability retirement. The government representative told the petitioner that "his optional retirement would be set aside and he would go on disability retirement." The court concluded that the government's statement was "highly misleading" and "materially affected the petitioner's decision regarding retirement[,]" *id*., because awaiting disability retirement rather than voluntarily retiring would have permitted the employee to benefit from accumulated sick leave among other benefits that were forborne when the petitioner relied on the government's advice and made his decision. The Court held that the government official's statement was in fact misleading, that the petitioner had reasonably relied upon it, and set aside the voluntary retirement as having been procured by misrepresentation because "a reasonable person would certainly have concluded from the advice received that there would be no adverse consequences if an optional retirement preceded a disability retirement … [and] it was reasonable for petitioner to rely on the advice of his retirement counselor." *Id*.

Additional cases from within the Federal Circuit confirm this analysis. A party seeking to invalidate a waiver or election based on deception from a government official may argue that the

waiver or election is invalid, by showing "specific misinformation, deception or improper advice" which would have misled a reasonable person to rely on the misrepresentation. *See Lynn v. United States*, 58 Fed. Cl. 797, 801 (1993) (citing *Heaphy v United States*, 23 Cl. Ct. 697, 702 (1991)). "This is an objective test which does not require an inquiry into the subjective perceptions of the party asserting misrepresentation." *Id.* (citing *Bergman v. United States*, 28 Fed. Cl. 580, 588 (1993)). It is not necessary to show an intent to deceive on the part of the agency. Rather, it is sufficient that a party shows that a reasonable person would have been misled by the agency's statements. *See Heaphy v. United States*, 23 Ct. Cl. 697, 702 (1991); *see also Scharf, supra*; *Tannehill v. United States*, 18 Ct. Cl. 296, 300 (1989).

Numerous circumstances demonstrate that Katana reasonably relied on Customs' promise of an opportunity to make a presentation that would exonerate it when the company executed the third statute of limitations waiver.

First is the length of time following the March 21, 2016, during which Customs exercised forbearance in collecting the duties. Katana reasonably believed that Customs' Fines, Penalties and Forfeitures office had referred its prior disclosure to Customs' Office of Investigations for validation, in accordance with 19 C.F.R. § 162.74(f), and that its claims were being investigated. It appears however, that Customs *never* referred its prior disclosure to the Office of Investigations for validation as required by regulation.[11]

Second, Katana also reasonably believed that its opportunity to make presentations would be guaranteed by 19 U.S.C. § 1592(b), since 19 U.S.C. § 1592(c)(4) indicates that in prior

---

[11] Customs' failure to refer the matter to the Office of Investigations for validation represents a failure on the agency's part to exhaust its administrative remedies, and provides a separate basis for dismissal of this action. *See United States v. Aegis Sec. Ins. Co.*, 301 F. Supp. 3d 1359 (Ct. Int'l Tr. 2018).

disclosure cases, a maximum penalty equal to 100% of the loss of revenue may be imposed in

cases of fraud, and in cases of gross negligence or negligence, a penalty equal to "the interest … on

the amount of lawful duties, taxes and fees of which the United States is or may be deprived[.]"

The Federal Circuit has indicated that the interest penalty, in cases of negligence, should always

be pursued in the interest of making the government whole. *National Semiconductor Inc. v. United*

*States*, 547 F.3d 1364 (Fed. Cir. 2008).[12] While the appellate court noted in this case that § 1592(b)

procedures need not be followed in actions solely to collect § 1592(d) withheld duties, at the time

the third statute of limitations waiver was executed, Katana, represented and informed by

experienced counsel, reasonably believed it would receive the opportunity to make a presentation

promised by Assistant Port Director Garcia.

> This Court noted as much in its previous decision in this case:
>
> > With regard to the effect of defendant's last SoL waiver, CBP asserts that the
> > presence of the word "might" in it deprives Katana of any reliance interest. *See*
> > *supra*. But, the defendant explains that its execution of the waiver was prompted by
> > more than the language of the waiver form itself: at an in-person meeting between
> > Katana's counsel and officers and the Assistant Port Director of Customs at Long
> > Beach, California, held on March 21, 2016, Assistant Port Director Garcia
> > expressly represented to Katana that it would be provided an administrative notice
> > claiming and explaining Katana's "violation" of withheld duties and granting the
> > company an opportunity to respond. Katana's counsel confirmed this representation
> > in writing. See Def's Br., Ex. H. **This representation was operative and**
> > **uncontradicted when, seven months later, CBP requested a third SoL waiver**,
> > to allow for the orderly conclusion of administrative proceedings. See id., Ex. L."

*United States v. Katana Racing Inc.*, 569 F. Supp. 3d at 1312-1313 (Ct. Int'l Tr. 2022) (emphasis

added). Clearly, this Court has already recognized that it was objectively reasonable for Katana to

---

[12] Indeed, this Court previously noted Karen Hiyama's May 31, 2019 email to Katana's counsel stating that "I'm unfamiliar with the reason or reasons why the government would not also seek a penalty given the 1592(a) violation that underlies the duty demand." *See* ECF 12-3 at 194.

rely upon the promise made by Assistant Port Director Garcia when executing the third statute of limitations waiver. As subsequent facts show, that representation was false.

Third, the language of the waiver itself, noting that Customs was soliciting the waiver to allow the continuation or completion of administrative proceedings relating to Katana's prior disclosure, would have induced a reasonable person to believe that Katana would receive the meeting and a meaningful opportunity to make its presentation, present its evidence of identity theft, and avoid suit.

Acts of deception may not be immediately apparent as such. *See e.g. United States v. Palmer*, 1996 U.S. App. LEXIS 23187 (4th Cir. 1996). CBP's officers' actions are entitled to a presumption of regularity, *see Jazz Photo Corp. v. United States,* 439 F.3d 1344 (Fed. Cir. 2006), and Katana was certainly entitled to rely at first on Assistant CBP Port Director Garcia's representation that CBP would act in a manner the agency was entitled to act pursuant to 19 C.F.R. § 162.74. The deception became apparent only years after the waiver was executed, when Customs, through Ms. Hiyama—who had previously indicated she knew of "no reason why the government would not also seek a penalty"—refused Katana the right to make such a presentation. This Court has previously indicated that it was "clear to [Katana] that the waiver had been procured by 'false pretenses'." *See United States v. Katana Racing, Inc.,* 569 F. Supp. 3d 1296, 1306 (Ct. Int'l Tr. 2022). This deception should be equally clear to the Court.

A statute of limitations defense is an affirmative defense, subject to waiver, tolling and estoppel. *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984); *Green v. United States,* 260 F.3d 78 (2nd Cir. 2001). The Federal Circuit has rightly observed that a statute of limitations waiver is not a matter of contract, but a voluntary unilateral act. *United States v. Ford Motor Co.*, 497 F. 3d 1331, 1336 (Fed. Cir. 2007).

Equally well-established is that a waiver of a right or defense is void if procured by fraud, deceit, or misrepresentation. *See Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc*., 467 U.S. 51, 60–61 & n.12 (1984); *United States v. Ford Motor Co.,* 463 F.3d 1267, 1279 (Fed. Cir. 2006). This, of course, includes a statute of limitations defense, which is not jurisdictional and may be subject to waiver by a defendant. *United States v. Arky*, 938 F.2d 579, 581 (5th Cir. 1991). To be valid, a waiver must be knowing, voluntary, and intelligent. *United States v. Wilson,* 26 F.3d 142, 155-56, (D.C. Cir. 1994); *United States v. Meeker*, 701 F.2d 685, 688 (7th Cir. 1983) ("The purposes of a time bar are not offended by a knowing and voluntary waiver of the defense by the defendant. "); *United States v. Levine*, 658 F.2d 113, 124 n.17 (3d Cir. 1981) (explaining that knowing and intelligent waivers are valid but "should be made with the advice of counsel and informed by an understanding of the consequences of waiver"). A waiver must be "done with sufficient awareness of the relevant circumstances and likely consequences." *United States v. Guerra,* 94 F.3d 989, 995 (5th Cir. 1996) (emphasis added) (quoting *McMann v. Richardson*, 397 U.S. 759, 766 (1970) (guilty plea context)); *see also e.g., Brady v. United States*, 397 U.S. 742, 750 (1970). A defendant has the burden of coming forward with affirmative evidence that his waiver was unknowing. *United States v. Koh*, 968 F. Supp. 136, 138 (S.D.N.Y. 1997). The relevant circumstances surrounding Katana's third statute of limitations waiver indicate that the company reasonably relied on Customs' promise. As subsequent developments show, however, the promise was false.

A waiver of the statute of limitations defense is invalid when induced by the government's misrepresentations. *See United States v. Heidecke*, 900 F.2d 1155, 1161 (7th Cir. 1990) (finding that no such misrepresentation occurred); *United States v. Catapano*, 2008 U.S. Dist. LEXIS

121693 at *24 (E.D.N.Y. 2008) (waiver was invalid when government failed to disclose that defendant had already been charged in sealed indictment).

In 2016, the Government had demanded that Katana pay it $5,742,483.80 in "withheld duties." The Government then promised Katana a chance to exonerate itself of liability in a presentation to the agency, and postponed collection of the demanded duties. When Katana executed its third waiver on October 25, 2016, it did so based on an objectively reasonable belief, based on the explicit promise made to it, that Customs would honor its representation. Only subsequently was that representation shown to be false.[13]

Because the third statute of limitations waiver was procured through misrepresentation, it was void. It follows that this action was untimely brought and must be dismissed.

## IV.    This Action is Barred by Laches

USCIT Rule 8(d)(1) provides laches as an available affirmative defense to a complaint. As noted in *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946), for a laches defense to be available:

> There must be conscience, good faith, and reasonable diligence, to call into action the powers of the court [. . .]. [The] court may dismiss a suit where the plaintiffs' lack of diligence is wholly unexcused; and both the nature of the claim and the situation of the parties was such as to call for diligence. (Internal quotation marks and citations omitted).

Laches is available as a defense where a plaintiff unreasonably delayed asserting its rights, and the defendant can prove material prejudice as a result of such delay. *See e.g., Lincoln Logs Ltd. v.*

---

[13] That the formal procedures of 19 U.S.C. § 1592(b) do not apply to actions to collect § 1592(d) withheld duties does not alter the fact that Katana was induced to sign the third waiver based on a false promise. Ms. Hiyama announced her presence on the file in 2018, when more than a year remained on the third waiver. It would have been a simple matter to grant Katana a chance to make the promised presentation. In retrospect, it is clear that whether Katana violated 19 U.S.C. § 1592(a), or acted with required culpability, simply did not matter to the agency.

*Lincoln Pre-Cut Log Homes, Inc.,* 971 F.2d 732 (Fed. Cir. 1992); *Freeport Minerals Co. v. United States*, 758 F.2d 629 (Fed. Cir. 1985).

In this case, the Government committed unreasonable delay in waiting more than three years after Katana's meeting with CBP in Long Beach to take any action on its claim for withheld duties, despite CBP's agreement to proceed with the issuance of such claims. CBP failed for several years to initiate administrative proceedings it promised to Katana. The delay significantly prejudices Defendant Katana in several ways. First, Joe Garcia, Katana's General Manager who headed the company's response to the CBP audit and investigation, and a key witness in any trial of this matter, retired in 2016, and his recollections may have dimmed with the passage of time (and the additional time it would take for this matter to come to trial).[14] It will be difficult for Katana to obtain materials from the dozens of customs brokers who unlawfully filed the entries (none of which had contractual privity with Katana), and records of entries made between 2009 and 2012 are by now far outside the mandatory 5-year period for which brokers must keep records of "customs business" transacted, *see* 19 U.S.C. § 1508(c), thus complicating and frustrating Katana's preparation of a defense.[15]

The action should be deemed barred by laches.

---

[14] *See Ganz USA LLC v. United States*, 2016 Ct. Intl. Trade LEXIS 106 (2016) (granting USCIT R. 27 petition to perpetuate testimony of retired individuals).

[15] We expect that, as a minimum, these brokers would need to be called as trial witnesses on the question of whether or how they were ever authorized to act for Katana, from whom, if anyone, they received powers of attorney, and from whom they received payments for duty, freight and brokerage services.

## **CONCLUSION**

For the reasons set forth herein, Defendant requests that this Court issue an order granting

Katana's Motion to Dismiss or Motion for Summary Judgment.


Respectfully submitted,

NEVILLE PETERSON LLP

/s/ John M. Peterson
     John M. Peterson
     Richard F. O'Neill
     Patrick B. Klein
     One Exchange Plaza
     55 Broadway, Suite 2602
     New York, NY 10006
     (212) 635-2730
     jpeterson@npwny.com

Dated:  November 14, 2023

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. THOMAS J. AQUILINO, SENIOR JUDGE**

--------------------------------------------------------------------- X

**UNITED STATES,**

               **Plaintiff,**

    **v.**

**KATANA RACING, INC. d/b/a WHEEL & TIRE DISTRIBUTORS,**

               **Defendant.**

**No. 19-cv-00125**

--------------------------------------------------------------------- X

## <u>CERTIFICATE OF COMPLIANCE</u>

       Pursuant to the U.S. Court of International Trade Standard Chambers Procedures, and in reliance upon the word count feature of the word processing program used to prepare the instant Memorandum, I, Richard F. O'Neill, of Neville Peterson LLP, who is responsible for the instant Memorandum, certify that it contains 9,661 words.

                         Respectfully submitted,

                         /s/ Richard F. O'Neill
                           Richard F. O'Neill