**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE THOMAS J. AQUILINO, JUDGE**

|  |  |  |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 19-cv-00125-TJA |
| | ) | |
| KATANA RACING, INC., *doing business as* | ) | |
| Wheel & Tire Distributors, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT
AND OPPOSITION TO DEFENDANT'S COMBINED MOTION
<u>TO DISMISS AND MOTION FOR SUMMARY JUDGMENT</u>**

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

TARA K HOGAN
Assistant Director

EMMA E. BOND
Trial Attorney
U.S. Department of Justice
Commercial Litigation Branch - Civil
Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-2034

January 19, 2024                    *Attorneys for Plaintiff United States*

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

STATEMENT OF THE ISSUES ................................................................. 1

STATEMENT OF THE CASE ................................................................. 2

    I.       Nature Of The Case ......................................................... 2

    II.    Statement Of Facts .......................................................... 2

            A.    The United States Files A Complaint Against Katana Seeking Unpaid Duties Pursuant To 19 U.S.C. § 1592(d) ................................. 2

            B.    This Court Dismisses The Complaint ....................................... 3

            C.    The U.S. Court of Appeals For The Federal Circuit Reverses And Remands For Further Proceedings ........................................... 3

            D.    Proceedings On Remand .................................................. 5

SUMMARY OF THE ARGUMENT ........................................................... 5

DISCUSSION ................................................................................. 6

    I.      Katana's Renewed Motion To Dismiss Should Be Denied ................... 6

            A.    Standard Of Review For Motions To Dismiss Pursuant To Rule 12(b)(6) .............................................................. 6

            B.    Katana's Second Motion To Dismiss Should Be Denied ..................... 7

                    1.    The Well-Pleaded Allegations State A Claim For Unpaid Duties ................................................................. 7

                    2.    The United States Is Not Required To Plead The Elements Of An Unpaid Duty Claim "With Specificity" For Negligent Violations Of Section 1592(a) .................................... 13

                    3.    Claims For Unpaid Duties Pursuant To 19 U.S.C. § 1592(d) Do Not Require Exhaustion Of Administrative Remedies ......... 16

II.   The Court Should Grant The Plaintiff's Cross Motion For Partial Summary
      Judgment And Deny Katana's Motion For Summary Judgment ........................19

      A.   Standard Of Review For Summary Judgment ..........................................20

      B.   There Is No Genuine Dispute That Katana Is The Importer Of Record
           For The Subject 386 Entries And Thus Liable For Unpaid Duties ...........20

      C.   There Is No Genuine Dispute That Unpaid Duties Are Owed On 386
           Entries Resulting From A Negligent Violation Of Section 1592(a) .........24

           1.   There Is No Genuine Dispute That The 386 Entries Contained
                Material, False Statements Undervaluing The Merchandise,
                Resulting In Loss Of Revenue Of $5,742,483.80 ........................25

           2.   There Is No Genuine Dispute That The Material And False
                Statements Resulted From Katana's Negligence In Violation Of
                19 U.S.C. § 1592(a) .................................................................26

      D.   There Is No Genuine Dispute Of Fact That The Section 1592(d)
           Claim Is Timely Filed And Not Barred By Laches.................................29

           1.   The Complaint Was Timely Filed ................................................29

           2.   The Third Statute Of Limitations Waiver Is Not Void ................31

           3.   Katana's Arguments Misunderstand The Difference Between
                Penalties And Unpaid Duties......................................................34

           4.   Katana's Arguments Regarding Alleged Misrepresentation Are
                Unpersuasive ............................................................................37

           5.   This Action Is Not Barred By Laches ..........................................38

CONCLUSION....................................................................................................40

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                              <u>PAGE(S)</u>

*Aegis Sec. Ins. Co.*,
    422 F. Supp. ..................................................................................................19

*Air and Sea Brokers, Inc. v. United States*,
    596 F.2d 1008 (1979)....................................................................................31

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)......................................................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................passim

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................passim

*Brookhart v. Janis*,
    384 U.S. 1 (1966) .........................................................................................30

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .....................................................................................20

*Dimare Fresh, Inc. v. United States*,
    808 F.3d 1301 (Fed. Cir. 2015).......................................................................7

*Heckler v. Community Health Services of Crawford County, Inc.*,
    467 U.S. 51 (1984) .......................................................................................31

*Heng Ngai Jewelry, Inc. v. United States*,
    318 F. Supp. 2d 1291 (Ct. Int'l Trade 2004) ..................................................28

*Herman Miller, Inc v. Palazzetti Imports & Exports, Inc.*,
    270 F.3d 298 (6th Cir. 2001)..........................................................................38

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
    681 F.3d 1323 (Fed. Cir. 2012).......................................................................13

*Ivani Contracting Corp. v. City of New York*,
    103 F.3d 257 (2d Cir. 1997)...........................................................................39

*Lyons Partnership v. Morris Costumes, Inc.*,
    243 F.3d 789 (4th Cir. 2001)..........................................................................39

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)....................................................................................20

*Mingus Constructors, Inc. v. United States*,
812 F.2d 1387 (Fed. Cir. 1987).................................................................20

*Moulvi v. Safety Holdings, Inc*.,
No. 20:cv-595, 2021 WL 4494191 (E.D. Va. Sept. 30, 2021)....................5

*Reed v. Robilio*,
273 F. Supp. 954 (W.D. Tenn. 1967) *aff'd*,
400 F.2d 730 (6th Cir. 1968).....................................................................23

*Rothe Dev. Corp. v. United States Dep't of Defense*,
262 F.3d 1306 (Fed. Cir. 2001).................................................................20

*SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*,
580 U.S. 328 (2017)..............................................................................39, 40

*Scharf v. Dep't of the Air Force*,
710 F.2d 1572 (Fed. Cir. 1983).................................................................38

*Seaboard Lumber Co. v. United States*,
903 F.2d 1560 (1990).................................................................................30

*Skinner v. Switzer*,
131 S. Ct. 1289, (2011)..............................................................................13

*Stange v. United States*,
282 U.S. 270 (1931)..........................................................................4, 5, 30

*United States v. Aegis Sec. Ins. Co*.,
422 F. Supp. 3d 1328 (Ct. Int'l Trade 2019).................................11, 16, 24

*United States v. Blum*,
858 F.2d 1566 (Fed. Cir. 1988) .............................................................passim

*United States v. Chu-Chaing Ho*.,
582 F. Supp. 3d 1325 (Ct. Int'l Tr. 2022) ...........................................14, 15

*United States v. Daewoo Int'l (Am.) Corp*.,
696 F. Supp. 1534 (Ct. Int'l Trade) *opinion vacated in part on reh'g on other grounds*,
704 F. Supp. 1067 (Ct. Int'l Trade 1988) ...........................................33, 37

*United States v. Deladiep, Inc.*,
255 F. Supp. 3d 1326 (Ct. Int'l Trade 2017) ......................................11, 27

*United States v. Fed. Ins. Co.*,
    805 F.2d 1012 (Fed. Cir. 1986) ....................................................................31

*United States v. Ford Motor Co.*,
    463 F.3d 1267 (Fed. Cir. 2006) ............................................................passim

*United States v. Ford Motor Co.*,
    497 F.3d 1331 (Fed. Cir. 2007) ..........................................................4, 30, 37

*United States v. Greenlight Organic Inc.*,
    586 F. Supp. 3d 1342 (Ct. Int'l Tr. 2022) ...............................................14, 15

*United States v. Guerra*,
    94 F.3d 989 (5th Cir. 1996) ........................................................................38

*United States v. Hitachi Am., Ltd.*,
    172 F.3d 1319 (Fed. Cir. 1999) .............................................................31, 40

*United States v. Inn Foods, Inc.*,
    560 F.3d 1338 (Fed. Cir. 2009) ...................................................................14

*United States v. Jac Natori Co.*,
    108 F.3d 295 (Fed. Cir. 1997) ......................................................................7

*United States v. Katana Racing, Inc.*,
    75 F.4th 1346 (Fed. Cir. 2023) .............................................................passim

*United States v. Katana Racing, Inc.*,
    569 F. Supp. 3d 1296 (Ct. Int'l Trade 2022) .................................................4

*United States v. Koh*,
    968 F. Supp. 136 (S.D.N.Y. 1997) ...............................................................37

*United States v. Levine*,
    658 F.2d 113 (3d Cir. 1981) ........................................................................38

*United States v. Modes, Inc.*,
    16 C.I.T. 879 (1992) ..............................................................................14, 15

*United States v. Nitek Elecs., Inc.*,
    36 CIT 546 (2012) .................................................................................16, 18

*United States v. Nitek Elecs., Inc.*,
    844 F. Supp. 2d 1298 (Ct. Int'l Trade 2012), *aff'd*,
    806 F.3d 1376 (Fed. Cir. 2015) ...................................................................18

*United States v. Nitek Elecs., Inc.*,
    806 F.3d 1376 (Fed. Cir. 2015) ................................................................ 17, 18

*United States v. Optrex Am., Inc.*,
    29 C.I.T. 1494 (2005) ..................................................................................... 17

*United States v. Optrex Am., Inc.*,
    560 F. Supp. 2d 1326 (Ct. Int'l Trade 2008) ................................................ 27

*United States v. Pan Pac. Textile Grp., Inc.*,
    395 F. Supp. 2d 1244 (Ct. Int'l Trade 2005) ........................................... 24, 35

*United States v. Rodriguez Aguirre*,
    264 F.3d 1195 (10th Cir. 2001) ..................................................................... 39

*United States v. Spanish Foods*,
    24 C.I.T. 1052 (2000) ............................................................................... 14, 15

*United States v. Trek Leather, Inc.*,
    767 F.3d 1288 (Fed. Cir. 2014) ..................................................................... 10

*United States v. Wanxiang Am. Corp.*,
    654 F. Supp. 3d 1279 (Ct. Int'l Trade 2023) ............................................. 8, 24

*Zacharin v. United States*,
    213 F.3d 1366 (Fed. Cir. 2000) ................................................................ 31, 32

## **STATUTES**

19 U.S.C. § 1481 ...................................................................................................... 10

19 U.S.C. § 1484 (1999) .......................................................................................... 28

19 U.S.C. § 1484(a)(1) .......................................................................................passim

19 U.S.C. § 1484(a)(2)(B) .................................................................................. 20, 21

19 U.S.C. § 1508(c) ................................................................................................. 40

19 U.S.C. § 1591(d) ................................................................................................... 1

19 U.S.C. § 1592(a) ...........................................................................................passim

19 U.S.C. § 1592(a)(1) ............................................................................................... 7

19 U.S.C. § 1592(b) .............................................................................................. 4, 17

19 U.S.C. § 1592(c)(4) ................................................................................... 9, 21, 34

19 U.S.C. § 1592(d) ..........................................................................................passim

19 U.S.C. § 1592(e) ....................................................................................... 11, 19

19 U.S.C. § 1592(e)(4) .....................................................................................passim

19 U.S.C. § 1618 ........................................................................................ 32, 33, 34

19 U.S.C. § 1621 .............................................................................................. 3, 29

## **<u>RULES</u>**

CIT Rule 12(b)(1) ................................................................................................. 4

Fed. R. Evid. 801 .............................................................................................. 35

## **<u>REGULATIONS</u>**

19 C.F.R. § 141.1 ...................................................................................... 21, 29, 35

19 C.F.R. § 141.4(a) .......................................................................................... 10

19 C.F.R. § 141.32 ............................................................................................. 21

19 C.F.R. § 162.74(a) ......................................................................................... 34

19 C.F.R. § 162.74(c) ......................................................................................... 34

19 C.F.R. § 162.74(f) .......................................................................................... 36

19 C.F.R. § 162.79b ............................................................................................. 7

19 C.F.R. Part 171 ...................................................................................... 13, 14, 25

19 C.F.R. Pt. 171 ......................................................................................... 19,  35

19 C.F.R. § 171.3 ............................................................................................. 35

19 C.F.R. Part 171, App. B(B) ................................................................................ 9

19 C.F.R. Pt. 171, App. B(C)(1) ............................................................................ 16

19 C.F.R. Pt. 171, App. B(C)(1), (D)(6) .................................................................. 13

19 C.F.R. Pt. 171, App. B(D)(6) ................................................................................................26

19 C.F.R. Pt. 171, App. B(J) ....................................................................................................16

19 C.F.R. § 171.3 ......................................................................................................................36

## OTHER AUTHORITIES

5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357
(3d ed. 2004) ............................................................................................................................. 7

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE THOMAS J. AQUILINO, JUDGE**

|  |  |
|---|---|
| UNITED STATES, | ) |
| Plaintiff, | ) |
| v. | ) |
| KATANA RACING, INC., *doing business as* Wheel & Tire Distributors, | ) |
| Defendant. | ) |

Court No. 19-cv-00125-TJA

**PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S COMBINED MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rules 12(b)(6) and 56 of this Court's rules, plaintiff, the United States, respectfully requests that the Court deny the combined motion to dismiss and motion for summary judgment filed by defendant, Katana Racing, Inc. doing business as Wheel & Tire Distributors (Katana), and grant our cross motion for partial summary judgment on liability and quantum of unpaid duties, requiring Katana to pay $5,742,483.80 in unpaid duties.[1]

STATEMENT OF THE ISSUES

1.  Does the complaint against Katana state a claim for unpaid duties pursuant to 19 U.S.C. § 1592(d)?

---

[1] If the Court grants the cross motion, the only remaining issue for adjudication would be entitlement to and amount of prejudgment interest. *See United States v. Ford Motor Co.*, 31 C.I.T. 1178, 1181 (2007) ("[L]ong-established rule in the Federal Courts permits the United States to recover interest on money due to the government even in the absence of any statutory authorization for an award of prejudgment interest.").

2.      Based on the undisputed facts, is the United States entitled to partial summary judgment for unpaid duties pursuant to 19 U.S.C. § 1591(d), in the amount of $5,742,483.80?

      A.      Based on the undisputed facts, is Katana the importer of record for the 386 entries at issue in this case?

      B       Based on the undisputed facts, were the 386 entries entered by means of material and false statements undervaluing the merchandise, resulting in $5,742,483.80 in unpaid duties?

      C.      Based on the undisputed facts, did Katana fail to exercise reasonable care to ensure accurate valuation of the merchandise?

      C.      Based on the undisputed facts, is this action timely filed and not barred by laches?

## STATEMENT OF THE CASE

### I.      Nature Of The Case

In this case, the United States seeks to recover $5,742,483.80 in unpaid customs duties and fees stemming from 386 entries of certain passenger vehicle and light truck tires from China into the United States from November 24, 2009, through August 7, 2012, for which Katana served as the importer of record.

### II.      Statement Of Facts[2]

      A.      The United States Files A Complaint Against Katana Seeking Unpaid Duties Pursuant To 19 U.S.C. § 1592(d)

Katana is a distributor of high-end wheels and tires.  Compl. ¶ 10, ECF No. 2 (July 15, 2019).  From November 24, 2009, through August 7, 2012, Katana acted as the importer of

---

[2]  This statement of facts is drawn from the complaint and procedural history in the case. Facts supporting the cross motions for summary judgment are referenced in the relevant argument sections of this filing.

record for 386 entries of passenger vehicle and light truck tires from China, which were entered into the United States. *Id.* ¶¶ 1, 3, 10.

During the relevant period, Presidential Proclamation 8414 imposed safeguard duties for certain entries of certain passenger vehicle and light truck tires from China, effective September 26, 2009, for a period of three years. *Id.* ¶ 6 (citing 74 Fed. Reg. 47,861 (Sept. 14, 2009)). For the first year, Presidential Proclamation 8414 imposed additional duties of 35 percent *ad valorem* above the column 1 general rate of duty. *Id.* For the second year, the safeguard duties decreased to 30 percent *ad valorem* above the column 1 general rate of duty for the second year and, for the third year, further decreased to 25 percent *ad valorem* above the column 1 general rate of duty. *Id.*

Katana failed to exercise reasonable care to ensure that its 386 entries reflected accurate values of the merchandise, resulting in millions of dollars in unpaid duties and fees. Compl. ¶¶ 14, 15. In July 2012 and August 2013, Katana submitted a claimed prior disclosure to Customs and Border Protection (Customs or CBP) disclosing false statements undervaluing and misclassifying the merchandise, resulting in unpaid duties. *Id.* ¶¶ 16-17. Customs performed an audit and calculated a loss of revenue of $5,742,483.80. *Id.* ¶¶ 18-19. In February 2016, Customs issued a letter to Katana identifying $5,742,483.80 in unpaid duties as the amount needed to perfect Katana's claimed prior disclosure. *Id.* ¶ 20. After Katana failed to pay or compromise the claim, on June 20, 2019, the United States issued Katana a section 1592(d) duty demand for $5,742,483.80. *Id.* ¶ 26.

On July 15, 2019, the United States filed this action seeking unpaid customs duties and fees pursuant to the Tariff Act of 1930, 19 U.S.C. § 1592(d). *See generally*, Compl., ECF No. 2 (July 15, 2019).

B.    This Court Dismisses The Complaint

On August 30, 2019, Katana filed a motion to dismiss the complaint arguing, among other things, that "this action is barred by the applicable statute of limitations, 19 U.S.C. § 1621." Mot. to Dismiss at 1-2, ECF No. 12 (Aug. 30, 2019).  Katana also argued that CBP "failed to exhaust" administrative remedies, *id*, claiming that CBP was required to "follow and exhaust section 592(b) procedures before it can lawfully determine that a violation of section(a) has occurred," Mem. of Law at 17, ECF No. 12-1 (Aug. 30, 2019) (capitalization altered).

On March 28, 2022, this Court granted Katana's motion to dismiss, holding that the suit was "barred by the passage of time."  *United States v. Katana Racing, Inc*., 569 F. Supp. 3d 1296, 1314 (Ct. Int'l Trade 2022).

C.    The U.S. Court of Appeals For The Federal Circuit Reverses And Remands For Further Proceedings

The U.S. Court of Appeals for the Federal Circuit reversed.  *United States v. Katana Racing, Inc*., 75 F.4th 1346, 1352 (Fed. Cir. 2023).  In its opinion, the Federal Circuit explained that the statute of limitations is a non-jurisdictional defense. *Id.* at 1348, 1352.  The court "therefore concur{red} with the parties that the Court of International Trade erred in dismissing the government's suit for lack of jurisdiction under CIT Rule 12(b)(1)." *Id.* at 1353.  Thus, the court of appeals reversed and remanded the case "for further proceedings." *Id.*

The court of appeals also rejected Katana's defense based on the claimed failure to exhaust administrative remedies, explaining that Katana's attorney "agreed with the government that Customs was not required by statute to follow the administrative {pre-penalty} procedures in 19 U.S.C. § 1592(b) in order to assert a claim for unpaid and owed duties under 19 U.S.C. § 1592(d)." *Id.* at 1352 & n.4.  Finally, the Federal Circuit rejected Katana's statute of limitations defense based on alleged revocation of a statute of limitations waiver, explaining that

4

"[t]he waiver of an applicable statute of limitations is not a contract, but instead a voluntary, unilateral action that, once executed, may be relied upon by the government and therefore cannot be revoked." *Id.* at 1354 n.6 (citing *United States v. Ford Motor Co.*, 497 F.3d 1331, 1336–37 (Fed. Cir. 2007); *Stange v. United States*, 282 U.S. 270, 276 (1931)).

       D.    <u>Proceedings On Remand</u>

After the Federal Circuit issued the mandate, the United States filed a motion to establish a scheduling order governing further proceedings in the case, requesting a deadline for the parties to submit a joint proposed scheduling order pursuant to Rule 16(b).  Pl. Mot., ECF No. 39 (Oct. 24, 2023).  Katana opposed the motion, Def. Opp., ECF No. 41 (Nov. 14, 2023), and, on the same day, filed a combined motion to dismiss and motion for summary judgment, Def. Mot., ECF No. 40 (Nov. 14, 2023).  Katana's combined motion simultaneously presents new arguments for dismissal pursuant to Rule 12(b)(6) and seeks summary judgment.  *Id.*

Katana has not filed an answer and, because no Rule 26(f) conference has occurred, the parties have not yet engaged in discovery.[3]  Our motion seeking entry of a scheduling order— including an order requiring the parties to submit a proposed scheduling order pursuant to Rule 16(b)—remains pending.

<u>SUMMARY OF THE ARGUMENT</u>

The Court should deny Katana's combined motion to dismiss and motion for summary judgment and grant our cross motion for partial summary judgment.  As an initial matter, there is no merit to Katana's second motion to dismiss the complaint for failure to state a claim.  The

---

[3]  Pursuant to Rule 26(d), a party generally "may not seek discovery from any source before the parties have conferred as required by Rule 26(f)."  R. Ct. Int'l Trade 26(d).  Katana opposes engaging in discovery, *see* Def. Opp., ECF No. 41 (Nov. 14, 2023), and a party "cannot unilaterally conduct a Rule 26(f) conference."  *Moulvi v. Safety Holdings, Inc.*, No. 20:cv-595, 2021 WL 4494191, at *11–12 (E.D. Va. Sept. 30, 2021).

complaint states a claim for payment of unpaid duties pursuant to 19 U.S.C. § 1592(d), based on Katana's negligent violation of 19 U.S.C. § 1592(a).  Contrary to Katana's argument, the United States was not required to plead the elements of the claim with particularity, when the complaint alleges a *negligent* violation of section 1592(a), not a violation based on fraud.  Further, Katana's argument regarding failure to exhaust administrative remedies merely repackages its prior erroneous argument that the United States was required to exhaust pre-penalty procedures pursuant to 19 U.S.C. § 1592(b)—an argument squarely rejected by the Federal Circuit.

On the merits, the United States is entitled to partial summary judgment.  The undisputed facts demonstrate that Katana is the importer of record for all 386 entries of passenger vehicle and light truck tires at issue in this case.  These entries were made by means of false statements undervaluing the merchandise, resulting in $5,742,483.80 in lost revenue.  The false statements resulted from Katana's negligence in failing to ensure accurate valuation of the merchandise entered in its name.  Finally, the action is timely because Katana executed three waivers of the statute of limitations, to and including July 15, 2019, the date the complaint was filed.  Katana has not shown that any of the waivers are void.  Thus, the Court should deny Katana's motion for summary judgment and grant our cross motion for partial summary judgment on liability and quantum of duties and fees.

DISCUSSION

I.    <u>Katana's Renewed Motion To Dismiss Should Be Denied</u>

A.    <u>Standard Of Review For Motions To Dismiss Pursuant To Rule 12(b)(6)</u>

Pursuant to Rule 12(b)(6) of the Rules of this Court, a complaint that "fail[s] to state a claim upon which relief can be granted" shall be dismissed.  To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

6

relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

When deciding a motion to dismiss, the Court "primarily consider[s] the allegations in a complaint," but may also consider "'matters incorporated by reference or integral to the claim, items subject to judicial notice, and matters of public record.'"  *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)) (cleaned up).

B.    Katana's Second Motion To Dismiss Should Be Denied

Applying these standards, the well-pleaded allegations of the complaint state a claim for unpaid duties pursuant to 19 U.S.C. § 1592(d).  Contrary to Katana's arguments, moreover, the United States need not plead the elements of an unpaid duty claim "with particularity," and the administrative duty demand need not satisfy the procedural requirements for pre-penalty procedures pursuant to section 1592(b).  Thus, Katana's second motion to dismiss should be denied.

1.    The Well-Pleaded Allegations State A Claim For Unpaid Duties

The complaint states a claim for unpaid duties pursuant to 19 U.S.C. § 1592(d).  Section 1592(d) establishes an independent cause of action to make the United States whole for unpaid duties and fees resulting from violation of 19 U.S.C. § 1592(a).  19 U.S.C. § 1592(d); 19 C.F.R. § 162.79b; *United States v. Blum*, 858 F.2d 1566, 1568-70 (Fed. Cir. 1988).  A violation of section 1592(a), in turn, occurs when a person enters, introduces, or attempts to enter or introduce merchandise into the United States by means of a material and culpable false act or

statement, or material omission.  *See* 19 U.S.C. § 1592(a)(1); *United States v. Jac Natori Co.*, 108 F.3d 295, 298 (Fed. Cir. 1997).  Claims under section 1592(a) require "at most four elements," including:  "(1) act or omission, (2) materiality, (3) falsity (if the violation is not premised on an omission); and (4) culpability."  *United States v. Wanxiang Am. Corp.*, 654 F. Supp. 3d 1279, 1284–85 (Ct. Int'l Trade 2023).  Importers of record are "traditionally liable" for duties owed pursuant to 19 U.S.C. § 1592(d).  *Blum*, 858 F.2d at 1570.

The well-pleaded allegations of the complaint satisfy each of these required elements to assert a claim for unpaid duty pursuant to 19 U.S.C. § 1592(d).  As an initial matter, the complaint alleges that Katana is "the importer of record for all 386 entries" underlying the duty demand, Compl. at ¶¶ 3, 10, ECF No. 2 (July 15, 2019), and is thus "traditionally liable" for the unpaid duties, *Blum*, 858 F.2d at 1570.  Although Katana now disputes that it was the importer, the Court must "assume [the] veracity" of this allegation at the pleading stage, and proceed with the understanding that Katana was the importer of record for all relevant entries.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (stating that "{w}hen there are well-pleaded factual allegations, a court should assume their veracity").

The complaint also alleges each element of a violation of section 1592(a).  *Wanxiang Am. Corp.*, 654 F. Supp. 3d at 1284–85 (listing elements including (1) the act, (2) materiality, (3) falsity, and (4) culpability).  First, the relevant "act" was the submission of entry documents with undervalued prices for the merchandise.  As alleged in the complaint, "{t}he 386 entries were submitted to {Customs} with invoices that listed prices lower than what Katana actually paid its Chinese vendors" for the merchandise.  Compl.. at ¶ 11, ECF No. 2 (July 15, 2019).

Second, these prices were "material{}" to the imposition of duties and fees.  *See Wanxiang Am. Corp.*, 654 F. Supp. 3d at 1284–85.  A statement is "material if it has the natural

8

tendency to influence or is capable of influencing agency action including, but not limited to a {Customs} action regarding . . . determination of an importer's liability for duty{.}"  19 C.F.R. Part 171, App. B(B).  In this case, the undervaluation of the merchandise was "material" because it affected "the amount of safeguard duties, regular customs duties, Harbor Maintenance Fees, and Merchandise Processing Fees calculated as owed" on the merchandise.  Compl. ¶ 13, ECF No. 2 (July 15, 2019).  "As a result of this undervaluation scheme, Katana, as importer of record, caused the amount of safeguard duties, regular customs duties, Harbor Maintenance Fees, and Merchandise Processing Fees to be undercalculated by $5,742,483.80."  *Id.* at ¶¶ 13, 15.

Third, the undervalued pricing in the entry documents was false, listing "prices lower than what Katana actually paid its Chinese vendors" for the tires.  Compl. ¶ 11.  Indeed, Katana disclosed the false statements in the undervaluation scheme in a claimed prior disclosure, *id.* at ¶¶ 16-17, which by definition "discloses the circumstances of a violation of {1592} subsection (a)," 19 U.S.C. § 1592(c)(4).  As alleged in the complaint, "Katana disclosed the underpayment of duties and fees due to the undervaluation of entered merchandise."  Compl. ¶ 17.  Thus, by submitting the claimed prior disclosure, Katana conceded that the entry documents accompanying the relevant entries contained a material and false statement resulting in the underpayment of duties and fees.

Finally, the complaint alleges culpability—negligence—associated with the undervaluation scheme.  Compl. at ¶ 14.  A false statement or omission is deemed to be negligent if it results from a failure to exercise reasonable care and competence to ensure that statements made and information provided in connection with the importation of merchandise are complete and accurate, or to perform any material act required by statute or regulation.  *See* 19 C.F.R. Part 171, App. B(C)(1).  Importers of record have the duty to use "reasonable care" when entering

9

merchandise into the United States "either in person or by an agent authorized by the party in writing" to do so. 19 U.S.C. § 1484(a)(1). This includes the obligation to exercise reasonable care in "filing with the Customs Service the declared value" of the merchandise, to enable Customs to "properly assess duties on the merchandise."[4]  *Id.*  In violation of these obligations, the complaint alleges that "Katana did not exercise reasonable care to ensure that these entries, for which Katana is the importer of record, reflected accurate values of the merchandise," in violation of 1592(a). Compl. at ¶ 14. The complaint thus alleges that Katana committed a violation of 19 U.S.C. § 1592(a) by failing to exercise reasonable care in ensuring accurate valuation of merchandise in the entry documentation accompanying the 386 entries at issue. *Id.* ¶¶ 10-17.

Further, "{s}tatutory negligence under § 1592, unlike common-law negligence, shifts the burden of persuasion to the defendant to demonstrate lack of negligence." *United States v. Ford Motor Co.*, 463 F.3d 1267, 1279 (Fed. Cir. 2006) (citing 19 U.S.C. § 1592(e)(4)). "That is,

---

[4]  As summarized by the Federal Circuit:

> While leaving many details to agency specification, the statute imposes requirements regarding the submission of invoices, 19 U.S.C. § 1481; entry documents or information addressing value, among other facts, *id.* § 1484 (quoted supra n. 1); and accompanying declarations, *id.* § 1485. Regulations require all imported merchandise to be "entered" unless a specific exception exists, 19 C.F.R. § 141.4(a); define "entry" as certain documentation or its filing, *id.* § 141.0a; specify that CBP Form 7501, an "entry summary" containing value information, when accompanied by commercial invoices and other documents, satisfies the filing requirement, *id.* §§ 141.61, 142.3, 142.11; and impose requirements for filing invoices and/or related documentation showing "[t]he values or approximate values of the merchandise," *id.* § 142.6(a)(3); *see, e.g., id.* §§ 141.81, 141.83, 141.86, 141.88, 141.90. *See generally* CBP, What Every Member of the Trade Community Should Know About: Entry (2004).

*United States v. Trek Leather, Inc.*, 767 F.3d 1288, 1293 (Fed. Cir. 2014).

Customs has the burden merely to show that a materially false statement or omission occurred; once it has done so, the defendant must affirmatively demonstrate that it exercised reasonable care under the circumstances."  *Id.*  Thus, "in any proceeding based on negligence, such as the Government's claim here, 'the United States shall have the burden of proof to establish the act or omission constituting the violation,'" and the burden of proof then shifts to the defendant to prove "that the act or omission did not occur as a result of negligence."[5]  *United States v. Aegis Sec. Ins. Co.*, 422 F. Supp. 3d 1328, 1345 (Ct. Int'l Trade 2019) (quoting 19 U.S.C. § 1592(e)(4)) (holding that the United States was entitled to collect unpaid duties pursuant to 19 U.S.C. § 1592(d)); *see also United States v. Deladiep, Inc.*, 255 F. Supp. 3d 1326, 1336-1337 & n.21 (Ct. Int'l Trade 2017).  Thus, to the extent Katana wishes to show that it did exercise reasonable care as the importer of record—including that it had no knowledge or reason to know or complicity in the undervaluation, *see* Mot. at 17, ECF No. 40 (Nov. 14, 2023)—Katana has the burden to answer the complaint and demonstrate that the undervaluation "did not occur as a result of negligence."  19 U.S.C. § 1592(e)(4).

Katana argues that the complaint "never identifies actions taken by Defendants, the falsity or materiality of those actions, nor does it include any allegations as to Defendant's culpability."  Mot. at 6-7, ECF No. 40 (Nov. 14, 2023).  This argument ignores the allegations contained in the complaint, which allege (among other things) "Katana, as importer of record, caused the amount of safeguard duties, regular customs duties, Harbor Maintenance Fees, and Merchandise Processing Fees to be undercalculated by $5,742,483.80."  Compl. ¶ 13, ECF No. 2

---

[5]  Although section 1592(e)(4) refers to "monetary penalt[ies] . . . based on negligence," this Court has explained that the provision applies to "any proceeding based on negligence." *United States v. Aegis Sec. Ins. Co.*, 422 F. Supp. 3d 1328, 1345 (Ct. Int'l Trade 2019) (applying 19 U.S.C. § 1592(e)(4) in a duty demand case).  Katana concedes that the "burdens of proof set out in 19 U.S.C. § 1592(e)" apply in this case.  Mot. at 10, ECF No. 40 (Nov. 14, 2023).

(July 15, 2019).  The complaint further alleges that "Katana did not exercise reasonable care to ensure that these entries for which Katana is the importer of record reflected accurate values of the merchandise, and thus Katana violated 19 U.S.C. § 1592(a)."  *Id.* ¶ 14.  The complaint thus alleges Katana's actions and culpability as the importer of record for the 386 entries.

Katana also argues that the complaint "contains no allegations at all concerning 385 of the 386 entries which form the basis for the proposed duty assessment."  Mot. at 14, ECF No. 40 (Nov. 14, 2023).  But Attachment A to the complaint contains a detailed list of the undervaluation and resulting loss of revenue associated with each of the 386 entries.  Att. A, ECF No. 2-1 (July 15, 2019).  The loss of revenue from the material and false undervaluation of merchandise resulted from Katana's failure to exercise reasonable care as the importer of record. *See* Compl. ¶¶ 13-15.

Katana also argues that the allegations that it did not exercise reasonable care "at most impl{y} a theory of strict or vicarious liability attaching to {importers of record} for customs violations."  Mot. at 17, ECF No. 40 (Nov. 14, 2023).  Katana misunderstands the obligations associated with serving as importer of record.  The importer of record has a duty of care to ensure accurate statements in entry paperwork, regardless of whether the importer of record personally enters the merchandise or acts through "an agent authorized by the party in writing." *See* 19 U.S.C. § 1484(a)(1); *see also* 19 C.F.R. Pt. 171, App. B(C)(1), (D)(6) (defining negligence and lack of reasonable care).  The complaint alleges that Katana breached its duty by failing to act with reasonable care.  Compl. ¶ 13, ECF No. 2 (July 15, 2019).  This is not vicarious liability, but an affirmative duty of care held by the importer of record itself.

12

2.     The United States Is Not Required To Plead The Elements Of An Unpaid
       Duty Claim "With Specificity" For Negligent Violations Of Section
       1592(a)

Contrary to Katana's argument, the United States is not required to plead with particularity its unpaid duty claim pursuant to 19 U.S.C. § 1592(d).  Mot. at 14, ECF No. 40 (Nov. 14, 2023).  Section 1592(a) establishes three degrees of culpability—fraud, gross negligence, and negligence—for the making of false statements or omissions in the introduction of merchandise into the United States.  19 U.S.C. § 1592(a).  The complaint alleges negligence—not fraud—and there is no obligation to plead such a cause of action with particularity pursuant to Rule 9(b).  Instead, the notice pleading standard in Rule 8(a) applies.

Rule 9(a) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  R. Ct. Int'l Trade 9(a).  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  *Id.* Absent such allegations of fraud, the "general rules of pleading" apply, with Rule 8(a) requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief."  R. Ct. Int'l Trade 8(a)(2) (capitalization altered).  "Federal Rule of Civil Procedure 8(a)(2), generally requires only a plausible short plain statement of the plaintiff's claim, showing that the plaintiff is entitled to relief."  *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012) (quoting Fed. R. Civ. P. 8(a)(2); *Skinner v. Switzer*, 131 S. Ct. 1289, 1296, (2011)) (cleaned up).

The complaint alleges negligence, not fraud.  Katana admits that the complaint does not mention "the terms 'fraud' or 'conspiracy.'"  Mot. at 14, ECF No. 40 (Nov. 14, 2023). Nonetheless, Katana looks beyond the text of the complaint and argues that the complaint "articulates a *theory* of fraud."  Mot. at 14, ECF No. 40 (Nov. 14, 2023) (emphasis added).

According to Katana, the allegations in the complaint amount to "a 'double invoicing scheme,'" and purchasers are "susceptible to victimization" in such schemes "when engaged in international sales transactions governed by 'Delivered Duty Paid'" terms.  Mot. at 14, ECF No. 40 (Nov. 14, 2023) (capitalization altered).  But these allegations do not appear in the complaint.  Compl. ¶ 14, ECF No. 2 (July 15, 2019).  Katana's inferences about potential fraud claims that the United States could have brought are irrelevant when determining whether the complaint that was actually filed satisfies the Rule 8(a) standard.

Katana argues that several cases have "traditionally treated double-invoicing allegations as fraudulent violations of 19 U.S.C. § 1592(a)."  Mot. at 15 & n.9, ECF No. 40 (Nov. 14, 2023) (citing, *e.g.*, *United States v. Inn Foods, Inc*., 560 F.3d 1338 (Fed. Cir. 2009); *United States v. Greenlight Organic Inc*., 586 F. Supp. 3d 1342 (Ct. Int'l Tr. 2022); *United States v. Chu-Chaing Ho*., 582 F. Supp. 3d 1325 (Ct. Int'l Tr. 2022); *United States v. Spanish Foods*, 24 C.I.T. 1052 (2000); *United States v. Modes, Inc.*, 16 C.I.T. 879 (1992)).  But none of these cases support Katana's argument that allegations of negligence must be treated as claims of fraud and pleaded with particularity.

Instead, each of cases cited by Katana involved *actual allegations of fraud*.  In *Inn Foods*, for example, the United States sued the defendant "to recover unpaid customs duties and civil penalties *for the fraudulent entry* of frozen vegetables."  560 F.3d at 1340 (emphasis added).  The government contended "that the company had unlawfully deprived the government of duties through the *fraudulent use* of false importation documents."  *Id.* (emphasis added).  The same was true in the remaining cases cited by Katana, all of which involved Government allegations of

fraud.[6]  In this case, by contrast, the United States alleges a negligent violation of section 1592(a), resulting in unpaid duties pursuant to 19 U.S.C. § 1592(d).  Compl. ¶ 14, ECF No. 2 (July 15, 2019).

Katana argues that "the complaint includes no specific recitation of facts describing the *who, what, when, where, and how* of the alleged double invoicing scheme (*i.e.*, fraud) as required by Rule 9(b)."  Mot. at 16, ECF No. 40 (Nov. 14, 2023).  Again, however, the complaint does not allege a fraudulent violation of section 1592(a), and, thus, Rule 9(b) does not apply.  Compl. ¶ 14, ECF No. 2 (July 15, 2019).

Katana further claims that the complaint fails to satisfy "the standards of *Twombly* and *Iqbal*," claiming that "[n]o acts or omissions are identified and Plaintiff offers only a legal conclusion" that Katana did not exercise reasonable care.  Mot. at 17, ECF No. 40 (Nov. 14, 2023).  In arguing that more detail is required, Katana misunderstands both the plausibility standard and the standard for statutory negligence pursuant to 19 U.S.C. § 1592(e)(4).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  In this case, the United States alleged material falsity in the documents used to effect entry of merchandise for which Katana was the importer of record.  Compl. ¶¶ 11-14, ECF No. 2 (July 15, 2019).  Nothing more is required to assert a

---

[6]  *See Greenlight Organic Inc.*, 586 F. Supp. 3d at 1343-1344 (complaint alleging that "Greenlight misclassified and undervalued its subject merchandise fraudulently"); *Chu-Chaing Ho.*, 582 F. Supp. 3d at 1327 (complaint alleging "that defendants are jointly and severally liable for penalties for attempting to enter, or cause to be entered, merchandise *by fraud* . . . .") (emphasis added); *Spanish Foods*, 24 C.I.T. 1055 (complaint alleging "that defendants violated 19 U.S.C. § 1592 through their use of a double invoicing scheme and resulting false and fraudulent statements submitted to Customs"); *Modes, Inc.*, 16 C.I.T. at 881 (alleging "defendants' false invoices meet the most stringent level of culpability under § 1592, *viz.*, they were *fraudulent*").

"prima facie" case of statutory negligence pursuant to 19 U.S.C. § 1592(e)(4). *United States v. Ford Motor Co.*, 463 F.3d 1267, 1279 (Fed. Cir. 2006). Having alleged that "a materially false statement or omission occurred," the burden shifts to Katana "to demonstrate lack of negligence." 19 U.S.C. § 1592(e)(4).

Even absent the statutory negligence standard, the complaint states a plausible claim for negligence. As the importer, Katana was obligated to exercise reasonable care to ensure accurate valuation of the merchandise entered "in person or by an agent authorized by the party." 19 U.S.C. § 1484(a)(1). In light of the materially false statements in the entry documents, a reasonable inference is that despite its responsibilities as the importer of record, Katana failed to exercise reasonable care to ensure that the valuation of the merchandise in the entry paperwork was accurate and consistent with the amounts "actually paid" by Katana. *See* Compl. ¶¶ 12-14, ECF No. 2 (July 15, 2019); *see also* 19 C.F.R. Part 171, App. B(C)(1). Nothing more is required at the pleading stage.

3.     Claims For Unpaid Duties Pursuant To 19 U.S.C. § 1592(d) Do Not
       Require Exhaustion Of Administrative Remedies

Katana is also wrong in arguing that the complaint should be dismissed because "its administrative duty demand is fatally deficient." Mot. at 11, ECF No. 40 (Nov. 14, 2023). "[U]nlike with penalty claims, 'the government need not exhaust administrative remedies prior to seeking recovery of lost duties.'" *United States v. Aegis Sec. Ins. Co.*, 422 F. Supp. 3d 1328, 1344–45 (Ct. Int'l Trade 2019) (quoting, *e.g.*, *United States v. Nitek Elecs., Inc.*, 36 CIT 546, 557 (2012)).

Katana's exhaustion argument rests on the same theory already rejected by the Federal Circuit. *Katana Racing*, 75 F.4th at 1354. Specifically, Katana relies on penalty cases requiring an administrative finding of culpability as part of pre-penalty procedures pursuant to 19 U.S.C.

16

§ 1592(b).  Mot. at 7-9, ECF No. 40 (Nov. 14, 2023) (citing, *e.g.*, *United States v. Optrex Am., Inc.*, 29 C.I.T. 1494, 1498-1499 (2005); *United States v. Nitek Elecs., Inc.*, 806 F.3d 1376, 1380 (Fed. Cir. 2015)).  One of the cited cases, *Optrex*, addressed the administrative prerequisites for "each penalty claim [the Government] wishes to bring."  Mot. at 7, ECF No. 40 (Nov. 14, 2023) (quoting *Optrex Am., Inc.*, 29 C.I.T. 1494, 1498-1499 (2005)).  The second case, *Nitek*, likewise involves the administrative requirements for "penalty claim[s]."  *Id.* at 9 (quoting *Nitek*, 806 F.3d at 1380).

These authorities do not apply in this case, in which the United States seeks unpaid duties pursuant to section 1592(d), and does not seek any penalty against Katana.  As the Federal Circuit explained, "when a penalty is not assessed, as here, the statute does not mandate the performance of the procedures under § 1592(b)."  *Katana Racing*, 75 F.4th at 1354 (citation omitted).  Thus, "on remand, Katana will not be able to argue that Customs was required by statute to follow the penalty assessment procedures set forth in 19 U.S.C. § 1592(b)."  *Id.*

Katana concedes, as it must, that "Customs did not have to follow the procedures set out in 19 U.S.C. § 1592(b) to bring this action to recover withheld duties."  Mot. at 11, ECF No. 40 (Nov. 14, 2023).  But it nevertheless insists that "the level of culpability sued on must be the level of culpability *determined by Customs*," citing the Federal Circuit's decision in *Nitek* as supporting this proposition.  Mot. at 10, ECF No. 40 (Nov. 14, 2023) (citing *Nitek*, 806 F.3d at 1380).  But the reasoning in *Nitek* for requiring an agency-level determination of culpability was specific to pre-penalty procedures pursuant to 19 U.S.C. § 1592(b), which do not apply to duty demands pursuant to 19 U.S.C. § 1592(d).  As the Federal Circuit explained in *Nitek*, "[s]ubsection 1592(b) details the procedures for Customs whereas § 1592(e) addresses the court proceedings."  *Nitek*, 806 F.3d at 1380.  These pre-penalty procedures "enable{} Customs to

17

determine the level of culpability and require{} Customs to inform the importer if the culpability level changes throughout the administrative process." *Id.* "This indicates that notice of a penalty claim based on a specific culpability level does not put the importer on notice of claims based on the other culpability levels because Customs must inform the importer if the culpability changes." *Id.* Thus, the reasoning in *Nitek* for requiring an agency-level determination of culpability is specific to pre-penalty procedures pursuant to section 1592(b), which do not apply to independent claims for unpaid duties pursuant to 19 U.S.C. § 1592(d).

Indeed, in the trial level decision reviewed by the Federal Circuit in *Nitek*, this Court allowed the duty claim pursuant to 1592(d) to proceed, despite dismissing the penalty claim due to the absence of required agency-level culpability finding. *United States v. Nitek Elecs., Inc*., 844 F. Supp. 2d 1298, 1309 (Ct. Int'l Trade 2012), *aff'd*, 806 F.3d 1376 (Fed. Cir. 2015). As this Court explained, "[s]ection 1592 does not provide any administrative process for imposing lost duty claims, and Defendant cites no authority (statutory or otherwise) that indicates § 1592(d) claims are subject to an exhaustion requirement." *Nitek*, 844 F. Supp. 2d at 1309 (citing 19 U.S.C. § 1592(d)). The Court found a "plausible claim for recovery of duties lost on the entries listed in {the} complaint," based on allegations of "a violation of § 1592(a) that deprived the United States of lawful duties and antidumping duties, the payment for which {the defendant} is responsible." *Id.* (citing *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570)). The complaint in this case makes the same allegations. Katana's attempts to insert additional elements for a section 1592(d) claim are unconvincing.

Katana's argument based on section 1592(e) is no more persuasive. Specifically, Katana relies on the burden-shifting provisions in section 1592(e) to argue that Customs is required "to prove the existence of a Section 592(a) violation *at the level of culpability found by Customs*."

Mot. at 9-10, ECF No. 40 (Nov. 14, 2023) (citing *Aegis Sec. Ins. Co.*, 422 F. Supp. at 1344-1345) (emphasis added).  But section 1592(e)—titled "Court of International Trade proceedings"—  merely establishes procedures governing proceedings in this Court.  19 U.S.C. § 1592(e).  The provision does not require an agency-level determination of culpability as an element of a claim pursuant to 1592(d).

For these reasons, the Court should deny Katana's second motion to dismiss.  The remainder of Katana's arguments rely on the Rule 56.3 statement of material facts, and thus arise pursuant to Rule 56 governing summary judgment.  *See* Mot. at 19-28, ECF No. 40.

II.    The Court Should Grant The Plaintiff's Cross Motion For Partial Summary Judgment And Deny Katana's Motion For Summary Judgment

The Court should deny Katana's motion for summary judgment, grant our cross motion for partial judgment, and find Katana liable for $5,742,483.80 in unpaid duties.  As discussed below, there is no genuine dispute of fact that Katana is the importer of record for the 386 subject entries.  The undisputed facts further establish that the 386 entries were entered by means of material and false undervaluation of the merchandise, and that Katana failed to exercise reasonable care to ensure accurate valuation in the entries, resulting in $5,742,483.80 in unpaid duties.  Finally, the undisputed facts show that Katana cannot prevail on its affirmative defenses of untimeliness and laches.  Each of these points is discussed in further detail below.[7]

---

[7] Our opposition to Katana's motion to summary judgment and cross motion for partial summary judgment relies on the facts in the plaintiff's appendix and materials attached to Katana's first motion to dismiss, ECF No. 12-3 (Aug. 30, 2019).  Relevant facts are set forth in the attached Statement of Material Facts (SMF).

SMF ¶ __ cites to paragraphs in the Rule 56.3 statement of material facts accompanying this filing.  Appx__ refers to pages in the plaintiff's appendix also accompanying this filing.

A.      Standard Of Review For Summary Judgment

Summary judgment is appropriate pursuant to Rule 56 where there are no genuine

disputes as to any material fact and the movant is entitled to judgment as a matter of law.  R. Ct.

Int'l Trade 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-8 (1986); *Mingus*

*Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987).  The party "seeking

summary judgment always bears the initial responsibility of informing the district court of the

basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)); *compare with* R. Ct. Int'l Trade 56(c)

(establishing procedures governing summary judgment in this Court).  In evaluating a motion for

summary judgment, the Court's "task is to discern whether 'the record taken as a whole could

not lead a rational trier of fact to find for the non-moving party.'"  *Rothe Dev. Corp. v. United*

*States Dep't of Defense*, 262 F.3d 1306, 1316 (Fed. Cir. 2001) (quoting *Matsushita Elec. Indus.*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)).

B.      There Is No Genuine Dispute That Katana Is The Importer Of Record For The
        Subject 386 Entries And Thus Liable For Unpaid Duties

The undisputed facts demonstrate that Katana is the importer of record for the subject 386

entries.  Pursuant to section 1484(a)(2)(B), "the importer of record must be one of the parties

who is eligible to file the documentation or information required by this section."  19 U.S.C.

§ 1484(a)(2)(B).  This includes "the owner or purchaser of the merchandise or, when

appropriately designated by the owner, purchaser, or consignee of the merchandise, a person

holding a valid license under section 1641 of this title," governing customs brokers.  19 U.S.C.

§ 1484(a)(2)(B).  The importer of record may enter the merchandise "either in person or by an

agent authorized by the party in writing."  19 U.S.C. § 1484(a)(1).  "Customs Form 5291 may be used for giving power of attorney to transact Customs business."  19 C.F.R. § 141.32.  Duties on imports are a personal debt of the importer of record.  19 C.F.R. § 141.1.

Katana is listed in each of the entries as the importer of record.  SMF ¶ 28.  Consistent with the definition of an importer, 19 U.S.C. § 1484(a)(2)(B), Katana was the United States purchaser for the merchandise in all 386 entries and paid its Chinese suppliers for the merchandise, SMF ¶¶ 26-27.  Further, consistent with the statute allowing the importer of record to enter the merchandise "either in person or by an agent," 19 U.S.C. § 1484(a)(1), Katana used customs brokers as agents to facilitate the subject 386 entries.  *See, e.g.*, SMF ¶ 29.  For example, the entry summary for entry number DZ1-31531839 reflects Katana as the "Importer of Record," with EWI, Inc. as the broker completing the required declaration as Katana's "agent."  *See* Appx459.  Indeed, Katana admitted providing "Powers of Attorney" to customhouse brokers.  SMF ¶ 29.  Katana sent letters to the "the Customs brokers listed as having filed entries," admitting that the entries were "made on Katana's behalf."  SMF ¶ 29.[8]

Katana's submission, through counsel, of the claimed prior disclosure is also consistent with Katana's status as the importer of record.  By statute, prior disclosures may be filed by "the person concerned" with a violation of section 1592(a).  19 U.S.C. § 1592(c)(4).  As the importer of record, Katana was "the person concerned" with the unpaid duties on the subject entries, *see id.*, not least because import duties are a "personal debt" of the importer of record.  19 C.F.R. § 141.1.  Katana's communications with Customs acknowledged Katana's liability for unpaid duties associated with the entries.  For example, in August 2013, Katana submitted a letter to

---

[8] Examples of the powers of attorney for three brokers, EWI, Bing Chu, and World Express Shipping, Transportation and Forwarding Services are provided in the appendix. Appx223-232.

Customs attempting to perfect its claimed prior disclosure, calculating a loss of revenue associated with the "entries made in [its] name during the period 2009-2011." SMF ¶ 40. Implicitly conceding that it was liable for the unpaid duties, Katana stated that it lacked "the ability to pay the calculated loss of revenue," and "wish[ed] to discuss with Customs the possibility of reducing the amounts owed by means of duty drawback, or Offer in Compromise." SMF ¶ 45.

Katana has not established any genuine factual dispute regarding its status as importer of record. In its statement of proposed facts, Katana states that it "never received a bill for Customs brokerage services for any of the entries, never advanced any duties in connection with the entries, and had not engaged the many different Customs brokers who filed the entries." SMF ¶ 8 (Katana proposed fact). But it provides no admissible evidence to support this factual claim, and the evidence shows the contrary. SMF ¶ 8 (United States response). For example, contrary to Katana's claim that it "never received a bill for Customs brokerage services" for the 386 entries, Katana's own records shows that Katana received bills from customs brokers for multiple entries, SMF ¶ 8 (United States response) (citing Appx7-8 (Andren Decl. ¶ 28)). And contrary to Katana's claim that it never "engaged" the customs brokers, Katana admits that it provided powers of attorney and that brokers made entry "on Katana's behalf." SMF ¶ 8 (United States response) (citing Appx5 (Andren Decl. ¶ 21)).

To the extent Katana contends that it had no reason to know that it was listed as the importer of record for the relevant entries, undisputed record evidence again belies that claim. In one email exchange in which Katana was copied in 2010, the broker explained that "Wheels and Tires" (Katana's doing business name) "wants us to do the customs clearance," and that even though the "shipment {was} DDP," the "*importer has {the} authority to choose the broker*

*because they are the importer of record and liable to customs and it's their bond.*"  Appx260 (emphasis added); Appx7-8 (Andren Decl. ¶ 28).  Further, as the importer of record, Katana received Form 28 requests for information and Form 29 notices of action from CBP for multiple entries, including as early as 2010 and 2011.  Appx6-7 (Andren Decl. ¶¶ 23-24, 26-27).  These examples show that at a minimum, Katana had reason to know as early as 2010 that the powers of attorney that it provided were being used to enter merchandise and that it was acting as importer of record for its purchases of tires from Chinese suppliers.  *See* Appx6-7 (Andren Decl. ¶¶ 23-24, 26-27).  Additionally, Katana received multiple demands to increase the continuous bond used to import merchandise from 2009 to 2012, providing further notice that Katana's importer of record number and bond were being used to enter merchandise into the United States.  Appx10085-10089 (Staudt Decl. & Exs. A, B).

Katana's statements that it was "invoiced for the tires on DDP terms and . . . paid its vendors the stated DDP prices" is irrelevant to whether Katana was the importer of record.  *See* SMF ¶ 8 (Katana's proposed fact).  "[T]he Anglo-American doctrine of freedom of contract implies the possibility of contracting foolishly."  *Reed v. Robilio*, 273 F. Supp. 954, 959 (W.D. Tenn. 1967), *aff'd*, 400 F.2d 730 (6th Cir. 1968) (citing Pound, An Introduction to the Philosophy of Law, 167 (3d ed. 1961)).  The business arrangements between Katana and its suppliers does not alter the fact that Katana acted as importer of record and provided powers of attorney authorizing brokers to act on its behalf.  SMF ¶ 26-29, 43.  Even assuming that Katana's Chinese suppliers may have participated in wrongdoing, that would not immunize Katana from liability to pay unpaid duties as the importer of record.  Indeed, "the United States Court of Appeals for the Federal Circuit has previously indicated that, rather than force the government (as third party) to bear the loss resulting from unpaid duties, it is preferable to extend liability for

unpaid duties to an innocent party who is nonetheless 'traditionally liable' for such payment."
*United States v. Pan Pac. Textile Grp., Inc.*, 395 F. Supp. 2d 1244, 1254 (Ct. Int'l Trade 2005)
(quoting *United States v. Blum,* 858 F.2d 1566, 1570 (Fed. Cir. 1988)).  To the extent Katana
believed that its Chinese suppliers should be liable for indemnification, it could have filed a third
party complaint against them for indemnification, as defendants have done in other cases.  *See,
e.g.*, *United States v. Aegis Sec. Ins. Co*., 422 F. Supp. 3d 1328, 1341 (Ct. Int'l Trade 2019)
(explaining that the defendant in a case pursuant to 19 U.S.C. § 1592 "filed its answer and a
third-party complaint" seeking "indemnification of any amount" the defendant was required to
pay).  None of Katana's allegations regarding its Chinese suppliers, however, alter Katana's own
status as importer of record.

Accordingly, consistent with the entry records, Katana is the importer of record for the
subject 386 entries.

C.   There Is No Genuine Dispute That Unpaid Duties Are Owed On 386 Entries
Resulting From A Negligent Violation Of Section 1592(a)

There is further no genuine dispute that a loss of revenue resulted from a violation of 19
U.S.C. § 1592(a) with respect to the subject 386 entries.  As relevant here, a violation of section
1592(a) requires "four elements" including (1) the act, (2) materiality, (3) falsity, and
(4) culpability.  *Wanxiang Am. Corp*., 654 F. Supp. 3d at 1284–85; 19 U.S.C. § 1592(a)*.*  With
regard to the first three elements, the undisputed facts show that the 386 entries contained
material and false statements regarding the value of the merchandise, resulting in loss of revenue
of $5,742,483.80.

The final element—negligence—is also established by the undisputed material facts.
Katana, as the importer of record, failed to exercise reasonable care in ensuring the accuracy of
the entry paperwork.  In the alternative, Katana is unable to demonstrate that the false statements

"did not occur as a result of negligence."  19 U.S.C. § 1592(e)(4).  Thus, all elements of a section

1592(a) violation are established.

> 1.    There Is No Genuine Dispute That The 386 Entries Contained Material, False Statements Undervaluing The Merchandise, Resulting In Loss Of Revenue Of $5,742,483.80

The undisputed facts demonstrate that Katana, through its agents, entered the

merchandise by means of material and false statements, namely, undervaluation and

misclassification of the merchandise resulting in millions of dollars in lost revenue.

The entry summaries for the 386 entries at issue in this case "contained false statements

that resulted in the undervaluation of duties to the United States."  Appx8 (Andren Decl. ¶ 29).

The false statements can be seen by contrasting the valuation listed in the entry documents with

the amount paid by Katana, as reflected by Katana's invoices and ledgers.  Appx8 (Andren Decl.

¶ 30).  Indeed, Katana's claimed prior disclosure concedes that "[f]alse statements were made to

Customs in Katana's name."  Appx23 (Andren Decl. Ex. 4, Aug. 31, 2013 Supplemental to

Claimed Prior Disclosure).  The false statements included undervaluation of the merchandise

sold to Katana and misclassification of tires to avoid the safeguard duties.  Appx22-23.

These false statements were material to the calculation of duties owed.  As Katana

admitted, "the commercial invoices presented to Customs with the entry documents were

*materially different* from the DDP invoices which had been sent to Katana."  Appx22 (emphasis

added).  The discrepancies were "*material to the assessment of Customs duties*."  Appx22

(emphasis added).  The false statements and undervaluation resulted "in underpayment of duties

(both regular and safeguard) and numerous instances where foreign vendors had misclassified

tires, improperly avoiding the safeguard duties."  Appx22.  Although Katana's prior disclosures

claimed that the Chinese suppliers submitted the false invoices, Katana, as the importer of record, "entered" the merchandise through its customs brokers. *See* 19 U.S.C. § 1484(a)(1).

CBP audited the specified loss of revenue associated with the false statements. *See* Appx3-4 (Andren Decl. ¶¶ 9, 12-14); Appx147-157 (Andren Decl. Ex. 6); Appx191-201 (Andren Decl. Exs. 9, 9-1). In the offsetting evaluation, CBP determined loss of revenue of $5,742,483.80. Appx196. This value is in the same ballpark as the loss of revenue calculated by Katana, $5,393,570.89. Appx196. The audit reflected the loss of revenue associated with each of the 386 entries at issue. Appx197-201 (calculating the "LOR" or loss of revenue for each of the 386 entries at issue). The audited values confirm the "materiality" of the false statements, which resulted in the loss of revenue.

Finally, there is no genuine dispute of fact that the correct amount of unpaid duties is $5,742,483.80, as asserted in the duty demand. The calculation supporting this amount of unpaid duties is provided in the duty demand, which reflects the amount of the undervaluation compared to the invoices paid by Katana. *See* Appx4 (Andren Decl. ¶ 17); Appx210-215 (Andren Decl. Ex. 12-1)

> 2. There Is No Genuine Dispute That The Material And False Statements Resulted From Katana's Negligence In Violation Of 19 U.S.C. § 1592(a)

Having established a material and false statement for each of the 386 entries, the United States has also established a prima facie case for negligence. "Statutory negligence under § 1592, unlike common-law negligence, shifts the burden of persuasion to the defendant to demonstrate lack of negligence." *United States v. Ford Motor Co.*, 463 F.3d 1267, 1279 (Fed. Cir. 2006) (citing 19 U.S.C. § 1592(e)(4)). In one case, for example, the Court found that the United States had established that the defendants "made statements and provided information that were material and false in violation of 19 U.S.C. § 1592(a)," and, thus, "[t]he Government

26

has met its burden of proof to support the negligent violations of the statute." *United States v. Deladiep, Inc*., 255 F. Supp. 3d 1326, 1338 (Ct. Int'l Trade 2017).  In this case, likewise, the United States has demonstrated that as importer of record, Katana entered the 386 entries by means of material and false statements—including statements undervaluing the merchandise and misclassifying the merchandise.  *See* Sections II.B, II.C.1.  Such material and false statements establish statutory negligence, shifting the burden to Katana to demonstrate that the false statements did not result from negligence.

Katana has not demonstrated that it acted with reasonable care, and thus fails to rebut the Government's showing.  Congress enacted the current requirement for importers to exercise reasonable care in entering merchandise into the United States in the Customs Modernization and Informed Compliance Act.  *United States v. Optrex Am., Inc*., 560 F. Supp. 2d 1326, 1335–36 (Ct. Int'l Trade 2008) (H. Rep. No. 103–361 at 120–21, reprinted in 1993 U.S.C.C.A.N. 2552, 2670–71 (1993)).  To establish a reasonable care defense, the legislative history reflects "that an importer should consider utilization of one or more of the following aids to establish evidence of proper compliance" including "if valuation is an issue," consultation with a corporate controller, who has "experience and knowledge of customs laws, regulations, and procedures."  *Id.* (quoting H. Rep. No. 103–361 at 120).  Katana has presented no such evidence of reasonable care.

The undisputed facts establish Katana's negligence even absent the statutory burden-shifting pursuant to 1592(e)(4).  As the importer of record, Katana was required to exercise reasonable care in effecting the entries and is liable for any unpaid duties owed on the merchandise.  The importer of record must "either in person or by an agent authorized by the party in writing" use "reasonable care" in filing with Customs "the declared value" and other information about the merchandise.  19 U.S.C. § 1484(a)(1).  "Pursuant to 19 U.S.C. § 1484

27

(1999), an importer is required, as part of the shared responsibility between Customs and the trade community, to use reasonable care in providing Customs with information necessary for the proper assessment of duties." *Heng Ngai Jewelry, Inc. v. United States*, 318 F. Supp. 2d 1291, 1301 (Ct. Int'l Trade 2004).[9] Importers of record "are required to exercise reasonable care in fulfilling their responsibilities involving entry of merchandise," including providing a "classification and value for the merchandise; furnishing information sufficient to permit Customs to determine the final classification and valuation of merchandise; taking measures that will lead to and assure the preparation of accurate documentation, and determining whether any applicable requirements of law with respect to these issues are met." 19 C.F.R. pt. 171 app. B(D)(6).

A reasonable importer in Katana's position would ensure that the entries being made in its name contained accurate information. Katana did not take this basic step. Instead, having provided powers of attorney to authorize customs brokers to enter merchandise in its name, SMF ¶ 29, Katana failed to exercise reasonable care to ensure accuracy in the resulting entries. By its own admission, Katana did not obtain entry records from its customs brokers until *after* entries had been made for years. Appx22 (Andren Decl. Ex. 4, Aug. 31, 2013 Supplemental Claimed

---

[9] "The legislative history for the North American Free Trade Agreement Implementation Act states that":

> In the view of the Committee, it is essential that this "shared responsibility" assure that, at a minimum, "reasonable care" is used in discharging those activities for which the importer has responsibility. These include, but are not limited to: furnishing information sufficient to allow Customs to fix the final classification and appraisal of merchandise; taking measures that will lead to and assure the preparation of accurate information to permit proper valuation of merchandise.

*Heng Ngai Jewelry, Inc. v. United States*, 318 F. Supp. 2d 1291, 1301 n.14 (Ct. Int'l Trade 2004) (quoting P.L. 103–182, 107 Stat. 2057 (1993)).

Prior Disclosure).  And once Katana took the steps of obtaining the relevant entry summaries—something it could have done at any time—"it immediately became clear to Katana that the commercial invoices presented to Customs with the entry documents were materially different from the DDP invoices which had been sent to Katana."  Appx22.  Rather than presenting any evidence of such reasonable care, Katana maintains that it had no reason to know that the entries were made in its name, despite conceding that it provided powers of attorneys to customs brokers allowing entries to be made "on Katana's behalf."  *See, e.g.*, SMF ¶¶ 29, 43.  By failing to even review the entry summaries being made in its name, Katana failed to exercise reasonable care.

Thus, the undisputed facts establish all elements of a violation of 19 U.S.C. § 1592(a), resulting in a loss of revenue of $5,742,483.80.  As the importer of record, Katana is liable for the unpaid duties pursuant to 19 U.S.C. § 1592(d).  *See* 19 C.F.R. § 141.1 (explaining that Customs duties are a "personal debt" of the importer of record).

D.   There Is No Genuine Dispute Of Fact That The Section 1592(d) Claim Is Timely Filed And Not Barred By Laches

Finally, there is no genuine dispute that the complaint for a duty demand was timely filed and is not barred by laches.

1.   The Complaint Was Timely Filed

The applicable statute of limitations in 19 U.S.C. § 1621 is not jurisdictional and may be waived.  *Katana Racing, Inc.*, 75 F.4th at 1354 n.6.  Katana executed three statute of limitations waivers, extending the statute of limitations to and including July 15, 2019.  SMF ¶¶ 46, 53, 56-58.  The complaint was filed on July 15, 2019.  Compl., ECF No. 2 (July 15, 2019).  Although Katana purported to "revoke" the third statute of limitations waiver, the Federal Circuit explained that statute of limitations waivers may not be revoked.  *Katana Racing, Inc.*, 75 F.4th at 1354 n.6.  "The waiver of an applicable statute of limitations is not a contract, but instead a

voluntary, unilateral action that, once executed, may be relied upon by the government and therefore cannot be revoked." *Id.* (citing *Ford*, 497 F.3d at 1336; *Stange v. United States*, 282 U.S. 270, 276 (1931)).

All three of Katana's statute of limitations waivers were made knowingly and voluntarily. "Waiver requires only that the party waiving such right do so 'voluntarily' and 'knowingly' based on the facts of the case." *Seaboard Lumber Co. v. United States*, 903 F.2d 1560, 1563 (1990) (citing *Brookhart v. Janis*, 384 U.S. 1, 4, 5 (1966)). "Waiver can be either express or implied." *Id.* (citations omitted)). In this case, Katana expressly waived the statute of limitations defense to and including July 15, 2019. SMF ¶ 56. After signing two prior waivers, Katana executed the third statute of limitations waiver on October 25, 2016, extending the statute of limitations for a period of two years from the expiration of its existing waiver, up to and including July 15, 2019. SMF ¶ 56. All three signed waivers stated that they were "made knowingly and voluntarily by Katana Racing, Inc." SMF ¶ 46, 53, 56. When reviewing the same language "'knowingly and voluntarily'" waiving the statute of limitations, the Federal Circuit held that the waiver "was an express, voluntary, and unilateral act that alone was sufficient to extend the § 1621 statute of limitations period." *United States v. Ford Motor Co*., 497 F.3d 1331, 1336-1337 (Fed. Cir. 2007).[10]

---

[10] *United States v. Ford Motor Co*., 497 F.3d 1331, 1336 (Fed. Cir. 2007) (explaining that defendant "stated in its tenth waiver letter that it 'knowingly and voluntarily' 'waive[d] the period of limitations contained in title 19, United States Code, section 1621 . . . with respect to the eleven (11) Customs entries . . . for a period of twenty-four (24) months, commencing April 7, 2003, or until April 7, 2005'").

Further, each statute of limitations waiver was made during a period when Katana was represented by counsel, with Katana's attorney, John Peterson, mailing the third statute of limitations waiver to Customs.  SMF ¶ 58.  The third statute of limitations waiver was not only signed by the president of the company, but also adopted by unanimous consent by the board of directors.  SMF ¶ 57.  "Judges should not undermine so clear an agreement reached by such sophisticated parties as these."  *United States v. Hitachi Am., Ltd*., 172 F.3d 1319, 1334 (Fed. Cir. 1999).

2.   <u>The Third Statute Of Limitations Waiver Is Not Void</u>

There is no factual or legal support for Katana's claim that the third statute of limitations waiver was void as obtained "by deception."  Mot. at 19, ECF No. 40 (Nov. 14, 2023).  In support of its argument, Katana relies on *Heckler v. Community Health Services of Crawford County, Inc.*, a case addressing estoppel against the United States.  Mot. at 26, ECF No. 40 (Nov. 14, 2023) (citing *Heckler*, 467 U.S. 51, 60-61 (1984)).  To the extent Katana argues that the United States should be estopped from relying on Katana's third statute of limitations waiver, Katana is wrong.  "[I]t is well settled that the Government may not be estopped on the same terms as any other litigant."  *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 60 (1984); *see also Zacharin v. United States*, 213 F.3d 1366, 1371 (Fed. Cir. 2000).  This is because "the interest of the citizenry as a whole in obedience to the rule of law is undermined" when the United States "is unable to enforce the law because the conduct of its agents has given rise to an estoppel."  *Heckler*, 467 U.S. at 60.  The Supreme Court has left "open" the issue of whether estoppel may ever be asserted against the United States.  *Id.*

The Federal Circuit, meanwhile, has held that principles of estoppel against the United States are simply unavailable in cases, like this one, seeking to recover unpaid customs duties.

31

*United States v. Fed. Ins. Co.*, 805 F.2d 1012, 1016 (Fed. Cir. 1986) (quoting *Air and Sea Brokers, Inc. v. United States*, 596 F.2d 1008, 1011 (1979)).  "[E]quitable estoppel . . . is not available against the Government in cases involving the collection or refund of duties on imports."  *United States v. Fed. Ins. Co.*, 805 F.2d 1012, 1016 (Fed. Cir. 1986) (quoting *Air and Sea Brokers, Inc. v. United States*, 596 F.2d 1008, 1011 (1979)) (emphasis added).

Further, even assuming that estoppel could be available at all, "affirmative misconduct is a prerequisite for invoking equitable estoppel against the government." *Zacharin*, 213 F.3d at 1371.  Katana has not presented evidence that the United States engaged in "affirmative misconduct" to procure the statute of limitations waiver. *See, e.g.*, Mot. at 19-20, ECF No. 40 (Nov. 14, 2023).  Katana claims that Customs engaged in misconduct by promising Katana that it could "make a presentation in responding to the duty demand and articulating its claims of identity theft," and then failing to allow Katana to make such a presentation.  Mot. at 20, ECF No. 40 (Nov. 14, 2023).  But Katana cannot support either factual claim.

On the first point, Katana relies on a follow-up letter sent after a meeting with Assistant Port Director Garcia, after Customs issued a letter on February 10, 2016, asking Katana to pay the required $5,742,483.80 in unpaid duties. *See* Mar. 22, 2016 Ltr., ECF No. 12-3 at 182.  This letter does not support Katana's claim of any affirmative misconduct by the United States.  The only reference to any alleged statement by Assistant Port Director Garcia appears at the end of the letter, in which Katana states that Assistant Port Director Garcia "indicated that Customs will issue a Section 592(d) demand for the $5.7 million in controversy, and Katana will have a right to make presentations in response to that demand and in accordance with 19 U.S.C. § 1618." *See id*.

Even if Assistant Port Director Garcia made such a statement, it reflects no "affirmative misconduct."  Customs *did* issue a duty demand and Katana made a written presentation in response.  SMF ¶¶ 61-64.  Specifically, Customs issued a section 1592(d) duty demand "for the 5.7 million in controversy," in June 2019.  SMF ¶ 61.  On June 26, 2019, Katana submitted a written response to the demand for payment of duty.  SMF ¶ 62.  In its July 2, 2019 letter, Katana acknowledged that it had "presented [its] defenses, and awaits CBP's response and final determination."  July 2, 2019 Ltr., ECF No. 12-3 at 417.  Moreover, even before the duty demand and Katana's written response, Customs had contacted Katana in March 2019, requesting documentation regarding its claimed "inability to pay" and offering to discuss a potential "pathway" for Katana to present an offer in compromise.  Mar. 28, 2019 email, ECF No. 12-3 at 190.[11]

Although Customs ultimately rejected the arguments made in Katana's written presentation, even Katana's letter never suggested that Assistant Port Director bound himself to *accept* whatever arguments Katana made.  Yet that appears to be Katana's current claim.  At bottom, Katana maintains that it was reasonable to believe that once Katana presented its claimed "evidence of identity theft," it would be able to "avoid suit."  Mot. at 25, ECF No. 40 (Nov. 14, 2023).  According to Katana, a "reasonable person" would believe "that Katana would receive the meeting and a meaningful opportunity to make its presentation, present its evidence of identity theft, *and avoid suit*."  *Id.* (emphasis added).  To state the obvious, however, Customs never represented to Katana that it would agree with Katana's defenses and immunize Katana from liability for the unpaid duties.

---

[11]  Notably, Katana had no need to make any "presentation . . . in accordance with 19 U.S.C. § 1618" because no penalty was issued.  *See* Mar. 22, 2016 Ltr., ECF No. 12-3 at 182.

This Court has previously rejected a similar argument that a statute of limitations waiver was invalid when a hoped-for settlement did not materialize. *United States v. Daewoo Int'l (Am.) Corp.*, 696 F. Supp. 1534, 1544 (Ct. Int'l Trade), *opinion vacated in part on reh'g on other grounds*, 704 F. Supp. 1067 (Ct. Int'l Trade 1988). The waiver was "not conditioned upon a settlement being reached," but instead expressed the purpose to "obtain the orderly continuation of administrative proceedings currently being conducted by the Customs Service." *Id.* (citation omitted). The waiver offered "no assurance of the outcome." *Id.* In this case, similarly, the waiver contemplated further administrative proceedings, with no assurance of the outcome. Appx203. The fact that Katana wished or hoped to "avoid suit" does not mean that Customs promised to reach such a result.

### 3.   Katana's Arguments Misunderstand The Difference Between Penalties And Unpaid Duties

Katana argues that "Customs refused to provide" an opportunity to make a presentation regarding the duty demand, despite purportedly promising to do so in the March 22, 2016 letter. Mot. at 25, ECF No. 40 (Nov. 14, 2023). As an initial matter, this argument misunderstands the difference between penalties and unpaid duties. In the March 22, 2016 letter, Katana argued that it should receive the benefits of its prior disclosure—establishing maximum penalties for any section 1592(a) violation—despite being "presently without funds to pay the approximately $5.7 million in 19 U.S.C. § 1592(d) withheld duties." Mar. 22, 2016 Ltr., ECF No. 12-3 at 182. Katana also cited Assistant Port Director Garcia's alleged statement that "Katana will have a right to make presentations in response to that demand and *in accordance with 19 U.S.C. § 1618*," which relates to mitigation of penalties. Mar. 22, 2016 Ltr., ECF No. 12-3 at 182 (emphasis added).

These arguments are focused on limiting liability for *penalties*, and would not eliminate Katana's liability for unpaid duties.  Even if Katana received the benefit of the prior disclosure, that would only limit the penalties that may be imposed, not the underlying liability for unpaid duties.  *See* 19 U.S.C. § 1592(c)(4); 19 C.F.R. § 162.74(a).[12]  Likewise, Katana's request for the opportunity to seek mitigation pursuant to 19 U.S.C. § 1618, could not have reduced Katana's obligation to pay unpaid duties.  Any penalty mitigation "is conditioned upon payment of any actual loss of duty." 19 C.F.R. Pt. 171, Appendix B, § F(1).  When it comes to "actual loss of duty," Customs "shall require that such lawful duties, taxes, and fees be restored, whether or not a monetary penalty is assessed." 19 U.S.C. § 1592(d) (emphasis added).

Even Katana's reference to purported "identity theft and misappropriation by various Customs brokers" would not eliminate its liability for unpaid duties.  *See* Mar. 22, 2016 Ltr., ECF No. 12-3 at 182.  The importer of record remains liable for unpaid duties resulting from wrongdoing by a different party, *Blum*, 858 F.2d at 1570, which are a "personal debt" of the importer, 19 C.F.R. § 141.1.  Indeed, "rather than force the government (as third party) to bear the loss resulting from unpaid duties, it is preferable to extend liability for unpaid duties to an innocent party who is nonetheless 'traditionally liable' for such payment." *Pan Pac. Textile Grp., Inc.*, 395 F. Supp. 2d at 1254 (quoting *Blum*, 858 F.2d at 1570).[13]

---

[12]  "A person who discloses the circumstances of the violation [in a prior disclosure] shall tender any actual loss of duties, taxes and fees or actual loss of revenue."  19 C.F.R. § 162.74(c).

[13]  Katana has not demonstrated that it may rely on its own statements in the March 22, 2016 letter for their truth, which would be a hearsay.  Fed. R. Evid. 801.  In any event, Katana's reference in the March 22, 2016 letter to alleged "identity theft and misappropriation by various *Customs brokers*," Mar. 22, 2016 Ltr., ECF No. 12-3 at 182 (emphasis added), conflicts with its letters to the same brokers acknowledging that the brokers made entry "on Katana's behalf," Att. C, Aug. 31, 2013 Ltr., ECF No. 12-3 at 65-149; Appx28-115 (Andren Decl. Ex. 4-1).

In any event, as discussed above, Katana did have the opportunity to present written argument to Customs after receiving the duty demand.  SMF ¶¶ 61-64.  Although Customs did not offer the opportunity for an oral conference, no such opportunity was required for a duty demand.  *See* 19 C.F.R. § 171.3; July 8, 2019 Ltr., ECF No. 12-3 at 423-426.  Indeed, Customs correctly explained that Katana's request for an oral conference pursuant to 19 C.F.R. § 171.3 was "misplaced," because Customs had "not issued an accompanying penalty under 19 U.S.C. § 1592(a)."  July 8, 2019 Ltr., ECF No. 12-3 at 423-426.  Thus, Katana was "not entitled to an oral conference pursuant to 19 C.F.R. § 171.3 (oral presentations seeking relief from 1592 penalties)."  *Id.* at 425-426.

Katana argues that it "reasonably believed" it would have the opportunity to present defenses pursuant to pre-penalty procedures.  Mot. at 23, ECF No. 40 (Nov. 14, 2023).  This is yet another attempt to repackage an argument rejected by the Federal Circuit.  As the Federal Circuit explained, there is no requirement for Customs to follow pre-penalty procedures when seeking to recover unpaid duties pursuant to 19 U.S.C. § 1592(d).  *Katana Racing, Inc.*, 75 F.4th at 1354.  Katana's reference to the Customs' Office of Investigation is similarly inapposite.  Mot. at 23, ECF No. 40 (Nov. 14, 2023) (citing 19 C.F.R. § 162.74(f)).  Whether or not Customs made such a referral is not public information.  Katana speculates that "[i]t appears . . . that Customs never referred its prior disclosure to the Office of Investigations," *id.*, but Katana's speculation on the topic does not reflect any affirmative misconduct by Customs.

Katana also argues that "the language of the waiver itself . . . would have induced a reasonable person to believe that Katana would receive the meeting and a meaningful opportunity to make its presentation, present its evidence of identity theft, and avoid suit."  Mot. at 25, ECF No. 40 (Nov. 14, 2023).  But the language of the waiver does not support Katana's

argument.  To the contrary, the third statute of limitations waiver contains the same general

language as the form waiver.  The form waiver states:

> This waiver is made knowingly and voluntarily by (Name of Party)
> in order that (Name of Party) *might obtain the benefits of the orderly*
> *continuation and conclusions of an administrative proceeding*
> currently being conducted or contemplated by the United States
> Customs Service, in which the Customs Service is reviewing all of
> the formal Customs entries, including the (Number of Entries)
> entries designated above of (Description of Article(s) Entered) from
> (Date of Earliest Entry) to the present.

June 22, 2015 Duty Demand, ECF No. 12-3 at 392 (emphasis added).  The same language

appears in the first, second, and third statute of limitations waivers.  SMF ¶¶ 43, 53, 56.  The

language means nothing more than what it says—that the signing party that the signing party

"might obtain" the benefits of further administrative proceedings.  *Id.*  It does not guarantee

Katana the opportunity to "avoid suit," as Katana now contends.  *See* Mot. at 25, ECF No. 25

(Nov. 14, 2023); *see also Ford Motor Co*., 497 F.3d 1331, 1337 (Fed. Cir. 2007) (approving

waiver as "express, voluntary, and unilateral" act); *Daewoo Int'l (Am.) Corp*., 696 F. Supp. at

1544 (explaining the waiver offered "no assurance of the outcome").

    4.    Katana's Arguments Regarding Alleged Misrepresentation Are
            Unpersuasive

Katana's remaining arguments for voiding the third statute of limitations are

unpersuasive.  For example, Katana relies on the discussion of waiver in several criminal cases,

none of which supports finding the statute of limitations waiver in this civil case to be

involuntary.  Katana Mot. at 19, 26, ECF No. 40 (Nov. 14, 2023).  In *Brady v. United States*, for

example, the Supreme Court held that a guilty plea in a criminal case was intelligently made,

explaining that the defendant was "advised by competent counsel," "made aware of the nature of

the charge against him," and was not "incompetent or otherwise not in control of his mental

faculties." *Id.*  In this case, Katana has not presented any evidence contradicting the clear statement in the waiver itself that Katana signed the waiver "knowingly and voluntarily."  SMF 43, 53, 56.

In another case cited by Katana, the Court held that a plea agreement "waiving any and all defenses based on the statute of limitations" was not made knowingly and voluntarily when the defendant submitted an affidavit stating that he did not "understand the consequences of the waiver."  *United States v. Koh*, 968 F. Supp. 136, 138 (S.D.N.Y. 1997).  In this case, by contrast, Katana's president not only signed a written statement confirming that the waiver was "made knowingly and voluntarily," but Katana also submitted a corporate resolution confirming that Katana's board of directors authorized the president "to execute, on behalf of the Corporation, waivers of the 19 U.S.C. [§] 1621 statute of limitations[.]"  Appx206; SMF ¶¶ 56-58.[14]

Katana also relies on the Federal Circuit's decision in *Scharf v. Department of the Air Force*.  Katana Mot. at 22, ECF No. 40 (Nov. 14, 2023) (citing 710 F.2d 1572, 1575 (Fed. Cir. 1983)).  But *Scharf* is not a case about waiver of a statute of limitations, and instead involves the question of whether a former Federal employee's optional retirement was "involuntary" and therefore qualified as an adverse action.  *Scharf v. Dep't of the Air Force*, 710 F.2d 1572, 1575

---

[14] Further, Katana has not demonstrated that the cited cases assessing the voluntariness of a guilty plea are persuasive in this civil case involving waiver of a statutory defense.  *See, e.g.*, Mot. at 26, ECF No. 40 (Nov. 14, 2023) (citing *United States v. Guerra*, 94 F.3d 989, 995 (5th Cir. 1996) (another case involving the voluntariness of a guilty plea).  Even if the reasoning from the criminal cases is relevant, the cases cited by Katana confirm that Katana is bound by its voluntary statute of limitations waiver.  In one criminal case cited by Katana, for example, the court explained that although the defendant's "waiver may prove to have unfavorable consequences, he cannot subsequently repudiate his bargain simply because hindsight indicates that a different strategy might have occasioned more desirable results."  *United States v. Levine*, 658 F.2d 113, 121-122 (3d Cir. 1981).

(Fed. Cir. 1983).  In any event, *Scharf* is distinguishable because the Federal employee relied on affirmatively misleading advice, *id.* which is not the case here.  In sum, Katana has not presented any dispute of fact regarding the validity of the statute of limitations waivers extending the limitations period to and including July 15, 2019, the date that the complaint was timely filed.

### 5.   This Action Is Not Barred By Laches

Finally, there is no genuine dispute that this duty demand is not barred by laches.  There is a presumption against the use of laches to shorten the statute of limitations, which is precisely what Katana seeks here. *See Herman Miller, Inc v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 312 (6th Cir. 2001); *United States v. Rodriguez Aguirre*, 264 F.3d 1195, 1207-08 (10th Cir. 2001); *Lyons Partnership v. Morris Costumes, Inc.*, 243 F.3d 789, 799 (4th Cir. 2001); *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 259-61 (2d Cir. 1997).  "Laches is 'a defense developed by courts of equity' to protect defendants against 'unreasonable, prejudicial delay in commencing suit.'"  *SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC,* 580 U.S. 328, 333–34 (2017) (citations omitted).  "Laches provides a shield against untimely claims, and statutes of limitations serve a similar function."  *Id.* at 334–35 (citation omitted) (cleaned up).  "The enactment of a statute of limitations necessarily reflects a congressional decision that the timeliness of covered claims is better judged on the basis of a generally hard and fast rule rather than the sort of case-specific judicial determination that occurs when a laches defense is asserted."  *Id.*  Thus, laches generally "cannot be invoked to bar legal relief in the face of a statute of limitations enacted by Congress."  *Id.* (cleaned up) (citation omitted).  In this case, the lawsuit was timely filed within the time provided by the statute of limitations waiver. Because Katana provides no basis to depart from the general rule, the Court should reject Katana's laches argument.

Even if the Court engages in a separate analysis for Katana's laches defense, there is no genuine dispute of fact that Katana cannot establish any "unreasonable, prejudicial delay in commencing suit." *See SCA Hygiene*, 580 U.S. at 333 (articulating the applicable standard). Katana signed a statute of limitations waiver "knowingly and voluntarily" extending the statute of limitations to and including July 15, 2019. SMF ¶¶ 56. The complaint was filed within that extended period. Compl., ECF No. 2 (July 15, 2019). Katana signed the waiver while represented by counsel and after obtaining the unanimous approval of its board of directors. SMF ¶¶ 56-58.

Having agreed to the extension of the statute of limitations waiver until July 15, 2019, Katana cannot demonstrate any "unreasonable, prejudicial delay" in the United States filing suit on July 15, 2019. *See SCA Hygiene., LLC,* 580 U.S. at 333–34. Katana argues that Customs "failed for several years to initiate administrative proceedings it promised to Katana," and that, in the intervening time, Katana's general manager retired. Mot. at 28, ECF No. 40 (Nov. 14, 2023). But not only has Katana failed to show that Customs "promised" Katana any specific proceedings or outcome, Katana's argument ignores that it consented to the extension of the statute of limitations to and including July 15, 2019, and no unfair prejudice results from the foreseeable consequence that (as Katana contends) "recollections may have dimmed with the passage of time." *Id.*

Katana also argues that it "will be difficult for Katana to obtain materials from the dozens of customs brokers who unlawfully filed the entries," and that "records of entries made between 2009 and 2012 are by now far outside the mandatory 5-year period for which brokers must keep records of 'customs business' transacted." *Id.* (citing 19 U.S.C. § 1508(c)). But Katana has been on notice of unpaid duties *since at least 2012.* There has been nothing preventing Katana from

40

seeking information from the "dozens of customs brokers" with whom it signed powers of attorney in the intervening years.  In any event, for entries made before July 15, 2012, the five-year period cited by Katana would have elapsed by the end of the *second* statute of limitations waiver, by July 15, 2017.  Despite this, Katana knowingly and voluntarily agreed to the third statute of limitations waiver.  SMF ¶¶ 56-58.  Equity does not support disregarding "so clear an agreement reached by such sophisticated parties as these."  *Hitachi Am.*, 172 F.3d at 1334.  In sum, there is no basis in equity or law for undermining the valid statute of limitations waiver signed by Katana, extending the statute of limitations to July 15, 2019.

<u>CONCLUSION</u>

For these reasons, we respectfully request that the Court deny Katana's combined motion to dismiss and for summary judgment and grant our cross motion for partial summary judgment, awarding the United States $5,742,483.80 in unpaid duties.  We respectfully request that the Court allow the case to proceed regarding entitlement to prejudgment interest.

41

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. McCARTHY
Director

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

/s/ Emma E. Bond
EMMA E. BOND
Trial Attorney
U.S. Department of Justice
Civil Division
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-2034
Email: Emma.E.Bond@usdoj.gov

January 19, 2024                              *Attorneys for Plaintiff*

**<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to Chambers Procedures 2(B)(1) and (2), I hereby certify that the attached

PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT AND

OPPOSITION TO DEFENDANT'S COMBINED MOTION TO DISMISS AND MOTION

FOR SUMMARY JUDGMENT contains 13,110 words, according to the word-count function of

the word processing system used to prepare this brief (Microsoft Office for Microsoft 365).

Dated: January 19, 2024                     /s/ Emma E. Bond
                                            Emma E. Bond