**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. THOMAS J. AQUILINO, SENIOR JUDGE**

```
----------------------------------------------------------------- X
UNITED STATES                           :
                                        :
                Plaintiff,              :
                                        :
        v.                              :
                                        :              No. 19-cv-00125
KATANA RACING, INC. d/b/a WHEEL & TIRE  :
DISTRIBUTORS,                           :
                                        :
                Defendant.              :
----------------------------------------------------------------- X
```

<u>**DEFENDANT'S RESPONSE IN OPPPOSITION TO PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS**</u>

NEVILLE PETERSON LLP
John M. Peterson
Richard F. O'Neill
Patrick B. Klein
55 Broadway, Ste. 2602
New York, NY 10004
(212) 635-2730
jpeterson@npwny.com

February 23, 2024

*Counsel to Defendant,*
*Katana Racing, Inc.*
*d/b/a Wheel & Tire Distributors*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... ii

DEFENDANT'S RESPONSE IN OPPPOSITION TO PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANT'S
COMBINED MOTION TO DISMISS AND FOR SUMMARY JUDGMENT ............................1

SUMMARY OF ARGUMENT ...................................................................................... 2

ARGUMENT ................................................................................................................. 4

I.    Defendant's Reply in Support of Motion to Dismiss.......................................... 4

    A.    The Complaint Does Not Identify the "Person" Who Committed a Violation
          of 19 U.S.C. § 1592(a) ........................................................................... 7

    B.    The Complaint Does Not Properly Allege Culpability, an Essential Element of
          a 19 U.S.C. § 1592(a) Violation. ........................................................... 10

    C.    The Government Failed to Exhaust its Administrative Remedies. ....................... 15

    D.    Customs' Action is Barred by the Statute of Limitations because the Third
          Statute of Limitation Waiver was Procured by Deception. ............................ 18

    E.    This Action is Barred by Laches. .......................................................... 22

II.   Response in Opposition to Plaintiff's Cross-Motion for Summary Judgment and in
      Support of Defendant's Motion for Summary Judgment. ................................. 23

    A.    Summary Judgment Without Discovery is Not Appropriate. .............................. 23

    B.    The Government Assumes Incorrectly That There are No Genuine Issues of
          Material Fact. ..................................................................................... 27

    C.    Seeking Withheld Duties Under 19 U.S.C. § 1592(d) is Tied to the
          Sufficiency of Allegations of a Violation Under § 1592(a)................................ 32

    D.    The Finality of Liquidation in 19 U.S.C. § 1514(a) Protects Innocent
          Importers from Liability Under Section 1592. ........................................... 33

    CONCLUSION................................................................................................. 36

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 7, 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................... 6, 14

*Belmont Wine Exch., LLC v. Nascarella (In re Nascarella)*, 492 B.R. 327 (Bankr. M.D. Fla. 2013). .............................................................................................................. 9

*Corus Staal BV v. United States,* 502 F.3d 1370 (Fed. Cir. 2007). ............................. 16

*Cyber Power Systems (USA) Inc v. United States,* 586 F. Supp. 3d 1325 (Ct. Int'l Tr. 2022). ................................................................................................................. 35

*Estate of Feuer v. Commissioner*, T.C. Memo 1978-309 (Tax Court 1978) ............... 13

*Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F.3d 1312 (Fed. Cir. 2009) ................. 14

*First Mercury Ins. Co. v. First Fla. Building Corp.*, 2022 U.S. Dist. LEXIS 159264 (M.D. Fl. 2002) ..................................................................................................... 31

*Freeport Minerals Co. v. United States*, 758 F.2d 629 (Fed. Cir. 1985). .................. 22

*Global Bio. Res. v, Cantrell*, 2023 U.S. Dist. LEXIS 103897 (D. Wyo. 2023)............ 30

*Gordon Altman Butowsky Weitzen Shalov & Wein v. RWS Support Services*, 1997 U.S. Dist. LEXIS 1684 (S.D.N.Y. 1997) ..................................................................... 31

*Guardian Ins. & Annuity Co. v. White*, 2014 U.S. Dist. LEXIS 24305 (S.D. Oh 2014)............. 31

*Heckler v. Cmty. Health Servs. Of Crawford Cnty., Inc.*, 467 U.S. 51  (1984) ............ 20

*Hellstrom v. U.S. Department of Veterans Affairs*, 201 F.3d 94 (2d Cir. 2000)............ 24

*Hudson v. Babilonia,* 2015 U.S. Dist. LEXIS 51249 (D. Conn. 2015) ....................... 31

*In re BP Lubricants USA Inc.,* 637 F.3d 1307 (Fed. Cir. 2011) ................................ 14

*Lincoln Logs Ltd. v. Lincoln Pre-Cut Log Homes, Inc.*, 971 F.2d 732 (Fed. Cir. 1992)............ 22

*Manella v. Barry*, 7 U.S. 415 (1806) ...................................................................... 13

*Maple Leaf Mktg. v. United States*, 639 F. Supp. 3d 1363 (Ct. Int'l Tr. 2023) .......... 35

*Oaster v. Robsertson,* 173 F. Supp. 3d 1160 (D. Co. 2016) ..................................... 31

*Scharf v. Department of the Air Force*, 710 F.2d 1572 (Fed. Cir. 1983)................... 20

*Scheuneman v. J.C. Christensen & Assoc.*, 802 F. Supp. 2d 981 (E.D. Wi. 2011) ...... 31

*Second Nature Designs Inc. v. United States*, 586 F. Supp. 3d 1334 (Ct. Int'l Tr. 2022) ........... 35

*Second Nature Designs, Inc. v. United States*, 654 F. Supp. 3d 1301 (Ct. Int'l Tr. 2023) .......... 35

*Texas Instruments, Inc. v. United States*, 1 C.I.T. 236 (1981). ................................ 28

*United States v. Aegis Sec. Ins. Co.*, 301 F. Supp. 3d 1359 (Ct. Int'l Tr. 2018)................... 4, 15

*United States v. Aegis Sec. Ins. Co.*, 422 F. Supp. 3d 1328 (Ct. Int'l Tr. 2019)................ 3, 10, 32

*United States v. Blum*, 858 F.2d 1566 (Fed. Cir. 1988) ....................................... 8, 26

*United States v. Chu-Chaing Ho.*, 582 F. Supp. 3d 1325 (Ct. Int'l Tr. 2022) ............ 13

*United States v. Daewoo Int'l (America) Corp.,* 696 F. Supp. 1534 (Ct. Int'l Trade 1988)........ 21

*United States v. Dantzler Lumber & Export Co.*, 16 C.I.T. 1050 (1992) ...................... 5

*United States v. Ford Motor Co.,* 29 C.I.T. 827 (2005)............................................. 12

*United States v. Ford Motor Co.*, 463 F.3d 1267  (Fed. Cir. 2006)........................... 20

*United States v. Greenlight Organic Inc.*, 586 F. Supp. 3d 1342 (Ct. Int'l Tr. 2022) ................ 13

*United States v. Hitachi Am., Ltd.*, 172 F.3d 1319 (Fed. Cir. 1999)............................ 7

*United States v. Inn Foods, Inc.*, 560 F.3d 1338 (Fed. Cir. 2009)....................... 3, 9, 13

*United States v. Katana Racing, Inc.*, 569 F. Supp. 3d 1296 (Ct. Int'l Tr. 2022)....... 10, 19, 21, 24

*United States v. Katana Racing, Inc.*, 75 F.4th 1346 (Fed. Cir. 2023). ....................... 20

*United States v. Modes, Inc.*, 16 C.I.T. 879 (1992) .................................................. 13

*United States v. National Semiconductor Corp.*, 496 F.3d 1354 (Fed. Cir. 2007). ....................... 4
*United States v. Nitek Elecs., Inc.*, 806 F.3d 1376 (Fed Cir. 2015). .................................... passim
*United States v. Optrex America Inc.*, 30 C.I.T. 650 (2006) ....................................... 12, 15
*United States v. Pan Pac. Textile Grp., Inc.*, 395 F. Supp. 2d 1244 (Ct. Int'l Trade 2005) ......... 26
*United States v. Priority Products*, 799 F.2d 296 (Fed. Cir. 1986) ............................. 15
*United States v. Quintin*, 7 C.I.T. 153 (1984). ............................................... 5
*United States v. Spanish Foods*, 24 C.I.T. 1052 (2000).......................................... 13
*United States v. Univar USA, Inc.*, 195 F. Supp. 3d 1312 (Ct. Int'l Tr. 2016). ........................... 24
*Vance v. Pekin Ins. Co.*, 457 N.W.2d 589 (Iowa 1990).................................................. 9
*Whitley v. Kion N. Am. Corp.*, 2017 U.S. Dist. LEXIS 41441 (D. Ma. 2017)............................ 31
*Zenith Radio Corp. v. Matsushita Elec. Ind. Co.* 513 F. Supp. 1100, (E.D. Pa. 1981) ............... 13

**Statutes**
19 U.S.C. § 1484 ........................................................................... 11, 25
19 U.S.C. § 1508 ............................................................................... 23
19 U.S.C. § 1514 ........................................................................ passim
19 U.S.C. § 1592 ........................................................................ passim
19 U.S.C. § 1621 ........................................................................ 4, 18, 22
28 U.S.C. § 1582 .............................................................................. 2
28 U.S.C. § 2637 ............................................................................. 15
Customs Procedural Reform and Simplification Act of 1978, Pub. L. 95-410, 1978, 92
    Stat. 888 (95ᵗʰ Cong., 2d Sess. 1978)................................................ 5, 7, 9
N.Y. C.P.L.R. § 3212 ......................................................................... 24

**Other Authorities**
H.R. Rep. No. 95-1517 (1978)................................................................. 9, 27
Modernization of the Customs Broker Regulations, 87 Fed. Reg. 63267, (U.S. Customs
    and Border Protection 2022)............................................................... 26
U.S. Customs and Border Protection, Mitigation Guidelines: Fines, Penalties, Forfeitures
    and Liquidated Damages: Commercial Fraud – 19 U.S.C. 1592 Negligence, Gross
    Negligence and Fraud (2004) ........................................................ 3, 11, 12
U.S. Customs and Border Protection, What Every Member of the Importing Community
    Should Know: Reasonable Care; An Informed Compliance Publication (2017) ..................... 11
William L. Dickey, *Survivals from More Primitive Times: Customs Forfeitures in the
    Modern Commercial Setting under Sections 592 and 618 of the Tariff Act of 1930,* 7
    Law and Policy in Int'l Bus. 691 (1975). ................................................... 5

**Treatises**
5 Wright & Miller, Federal Practice and Procedure § 1202 (3d ed. 2004).................................. 7

**Regulations**
19 C.F.R. § 111.36 ........................................................................... 25
19 C.F.R. § 162.74 ........................................................................ 3, 8, 16
19 C.F.R. Pt. 171, App. B ................................................................... 25

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. THOMAS J. AQUILINO, SENIOR JUDGE**

-------------------------------------------------------------------- X

UNITED STATES                                    :
                                                 :
              Plaintiff,                         :
                                                 :
        v.                                       :
                                                 :              No. 19-cv-00125
KATANA RACING, INC. d/b/a WHEEL & TIRE           :
DISTRIBUTORS,                                    :
                                                 :
              Defendant.                         :

-------------------------------------------------------------------- X

<u>**DEFENDANT'S RESPONSE IN OPPPOSITION TO PLAINTIFF'S MOTION FOR**
**PARTIAL SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANT'S**
**COMBINED MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**</u>

In accordance with Rules 7, 12(b)(6), and 56 of the Rules of the U.S. Court of International

Trade ("USCIT R."), Defendant Katana Racing, Inc., d/b/a Wheel & Tire Distributors ("Katana"),

hereby Responds in Opposition to the Motion of Plaintiff, United States, for Partial Summary

Judgment (ECF 46), and Replies in Support of Defendant's Rule 12(b)(6) Motion to Dismiss,

which plaintiff has asked be treated as a  Motion for Summary Judgment (ECF 40).[1] In addition,

---

[1] Katana submits in its Motion (ECF 40) that, pursuant to USCIT Rule 12(d), to the extent the Court needs to consider matters outside the pleadings, Katana moves for entry of summary judgment in its favor.

Ordinarily, a court will judge such a motion by looking to the four corners of the Complaint, and it could certainly do so here. The Court might determine that the Complaint is facially defective because it fails to assert that Katana violated 19 U.S.C. § 1592(a), or that it is defective because it fails to allege a level of culpability.

Katana has referred to matters outside the Complaint for the assistance of the Court. Thus, while the Complaint fails to identify a level of culpability, it may be helpful for the Court to know that CBP administratively failed to allege culpability, rendering the defect in the pleading incurable, and dictating dismissal of the Complaint with prejudice.. Referral to matters outside the Complaint will assist the Court in understanding Katana's arguments that the case must be dismissed because the government failed to exhaust administrative remedies before bringing suit, and is untimely, because the plaintiff procured defendant's third statute of limitations waiver by deception.

included with this brief is a Response to the Plaintiff's Rule 56.3 Statement of Material Facts Not in Dispute.

## SUMMARY OF ARGUMENT

The United States brought this action against Katana pursuant to 28 U.S.C. § 1582, to recover $5,742,483.80 in 19 U.S.C. § 1592(d) "withheld duties" on passenger car and light truck tires ("PVLT") imported from China into the United States between September 2009 and September 2012. The duties were allegedly "withheld" as a result of violations of 19 U.S.C. § 1592(a). Neither Customs' withheld duties demand nor the Complaint in this action accuse Katana of those violations. Rather, CBP's duty demand merely says that the $5,742,483.80 "represents duties deprived the United States due to violation of Title 19, United States Code, Section 1592(a)," (ECF 2 at ¶ 13), but the demand neither names Katana as the violator nor asserts any level of culpability attaching to the alleged violation. The Complaint states only that Katana owes the duty as "importer of record" (*id.*), and refers to "its violation of 19 U.S.C. § 1592(a)" (*id.* at ¶ 29), but never identifies the act(s) or omission(s) committed by Katana constituting the violation, nor states a level of culpability.[2]

These defects are fatal to the Government's cause of action, since 19 U.S.C. § 1592(d) only allows recovery of sums which are withheld "as a result of a violation of subsection (a) of this section." Even in an action solely to recover § 1592(d) duties, the government is required to plead and prove one or more violations of 19 U.S.C. § 1592(a) according to the level of culpability alleged by Customs and the appropriate burden of proof identified in 19 U.S.C. § 1592(c). *See*

---

[2] Pointedly, the Complaint alleges that an invoice with an incorrect value was "supplied by a Customs broker to CBP," but indicates that a *correct* commercial invoice was "supplied *by Katana* to CBP during a regulatory audit." (ECF 2 at ¶ 12). At no point does the Complaint ever accuse Katana of supplying a false document or statement to CBP.

*United States v. Aegis Sec. Ins. Co.*, 422 F. Supp. 3d 1328, 1350 (Ct. Int'l Tr. 2019). The Court of Appeals has found that the level of culpability—wholly absent from either the duty demand or Complaint in this action—must be that identified administratively by CBP, not in this Court by the Justice Department. *United States v. Nitek Elecs., Inc*., 806 F.3d 1376, 1380 (Fed Cir. 2015). And identifying the party who violated 19 U.S.C. § 1592(a) is essential, since the Court of Appeals has held that § 1592(d) permits "recovery of unpaid duty from any party **liable under subsection (a)**," or their sureties. *United States v. Inn Foods, Inc.,* 560 F.3d 1338, 1346 (Fed. Cir. 2009) (emphasis added).

The Government's Complaint suffers from additional fatal deficiencies. To the extent it suggests that any violation of § 1592(a) involved "double invoicing," this is an allegation of fraud under 19 U.S.C. § 1592(c)(3), which, according to USCIT R. 9(b), must be pleaded with particularity and must be proven by "clear and convincing evidence," 19 U.S.C. § 1592(c)(3). Contrary to the government's assertion, the allegation in the Complaint that Defendant failed to exercise "reasonable care" (Compl. at ¶ 14), does not constitute an allegation of culpability (much less simple "negligence"), since the government's own publications indicate that all culpability levels of a 19 U.S.C. § 1592(a) violation—negligence, gross negligence and fraud—reflect a failure to use "reasonable care." *See* U.S. Customs and Border Protection, Mitigation Guidelines: Fines, Penalties, Forfeitures and Liquidated Damages: Commercial Fraud – 19 U.S.C. 1592 Negligence, Gross Negligence and Fraud (2004), at 86.

The Complaint must also be dismissed because the government failed to exhaust its administrative remedies—in particular, it never referred defendant's 19 U.S.C. § 1592(c)(4) "prior disclosure" to CBP's Office of Investigations for validation, as required by CBP's own regulations, see 19 C.F.R. § 162.74(f). This is not a trivial omission: because Katana's disclosure was not

referred for investigation, no CBP investigators made any attempt to validate Katana's claims of "identity theft" set out in the prior disclosure, nor to investigate the case or discover the identities of the persons who *had* submitted false invoices with Customs entries. Indeed, it appears that the matter was only considered by CBP's Office of Regulatory Audit, whose personnel are not authorized or qualified to investigate violations of 19 U.S.C. § 1592(a).[3] The requirement for validation of a prior disclosure applies whether the disclosure results in the assessment of a penalty, or merely in a demand for repayment of withheld duties.[4] Customs' failure to exhaust its administrative remedies provides an independent reason for the Court to dismiss the Complaint. *See United States v. Aegis Sec. Ins. Co.*, 301 F. Supp. 3d 1359 (Ct. Int'l Tr. 2018).

The action is also barred by the applicable statute of limitations, 19 U.S.C. § 1621, because the third statute of limitations waiver Katana furnished to Customs was procured by agency misrepresentation and was void.

## **ARGUMENT**

**I.    Defendant's Reply in Support of Motion to Dismiss.**

Section 592(a) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1592(a), provides:

**(a) Prohibition**

(1) General rule

---

[3] This is evidenced by the fact that the Plaintiff's Cross-Motion for Summary Judgment is not supported by any statements from investigators, but only by statements from Denise Andren, whose role at all relevant times was within CBP's Office of Regulatory Audit as "assistant to the lead auditor," and from Judy Staudt, who only assumed an Enforcement role with Customs in 2016 (not in the Office of Investigations) and who provided statements regarding the status of Katana's Customs bonds. *See* ECF 47, Appx1-8 and Appx10085-10087.

[4] Where a valid prior disclosure is made in cases involving negligence or gross negligence, the penalty is limited to interest on any underpaid duties. The interest penalty, where assessed, is generally not amenable to mitigation. *See United States v. National Semiconductor Corp.*, 496 F.3d 1354, 1359-61 (Fed. Cir. 2007). Thus the principal, or only, result of many prior disclosures will be a demand for 19 U.S.C. § 1592(d) withheld duties.

Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty, tax, or fee thereby, **no person**, by fraud, gross negligence, or negligence—

(A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of—

(i) any document or electronically transmitted data or information, written or oral statement, or act which is material and false, or

(ii) any omission which is material, or

(B) may aid or abet any other person to violate subparagraph (A).

(Emphasis added). The reference to "person" reflects that Section 110 of the Customs Procedural Reform and Simplification Act of 1978, Pub. L. 95-410, 1978, 92 Stat. 888 (95th Cong., 2d Sess. 1978), converted Section 592 from an *in rem* forfeiture remedy to an *in personam* monetary penalty provision.[5]

Section 592(d) of the Tariff Act of 1930, 19 U.S.C. § 1592(d), provides:

(d) Deprivation of lawful duties, taxes, or fees

Notwithstanding section 1514 of this title, if the United States has been deprived of lawful duties, taxes, or fees as a result of a violation of subsection (a), the Customs Service shall require that such lawful duties, taxes, and fees be restored, whether or not a monetary penalty is assessed.

---

[5] *See United States v. Dantzler Lumber & Export Co*., 16 C.I.T. 1050 (1992); *United States v. Quintin*, 7 C.I.T. 153 (1984). The purpose of converting the statute from an *in rem* forfeiture provision to an *in personam* monetary penalty provision was to ameliorate the harshness of forfeiture by providing for a judicial determination of the penalty amount based on the degree of proven culpability, as well as a mechanism for recovering the monetary equivalent of forfeiture when the goods involved have passed beyond seizure.

The resuscitation and modernization of Section 592 resulted largely from the work of William L. Dickey, Deputy Assistant Secretary of the Treasury, who in the 1970s developed the concept of determining a monetary "forfeiture value" for goods involved in Section 592 violations, devised the levels of culpability, and created guidelines for considering petitions for mitigation under 19 U.S.C. § 1618. *See* William L. Dickey, *Survivals from More Primitive Times: Customs Forfeitures in the Modern Commercial Setting under Sections 592 and 618 of the Tariff Act of 1930,* 7 Law and Policy in Int'l Bus. 691 (1975).  In 1978, Congress largely codified Mr. Dickey's work.

The elements which the government must establish in order to sustain a cause of action for withheld duties may be summarized as follows:

1. The loss of revenue must be as a result of a violation of subsection (a) of 19 U.S.C. § 1592.
2. To show the prerequisite violation of 19 U.S.C. § 1592(a), the government must:
    a. identify a person (natural or legal) who committed the violation;
    b. identify one or more statements or acts which are false and material, or an omission which is material; **and**
    c. identify the level of culpability associated with the violation (fraud, gross negligence, or negligence).

Additional requirements may apply if the § 1592(a) violation results from fraud. According to USCIT R. 9(b), a complaint must always plead allegations of fraud with particularity; and § 1592(c)(3) requires that fraud must be proven in this Court by "clear and convincing evidence." Allegations of double-invoicing are unavoidably allegations of fraud.[6]

A Complaint must contain a short, concise statement of the basis for this Court's jurisdiction, and a statement of facts showing that the plaintiff is entitled to the relief sought. The Supreme Court, in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), held that to survive a motion to dismiss under Rule 12(b)(6), a complaint requires more than labels, conclusions or a formulaic recitation of the elements of a cause of action. It must contain factual allegations sufficient to raise a right to relief above the speculative level, assuming that all the allegations in

---

[6] Fraud, in a broad legal sense, involves a willful misrepresentation of a material fact, with the intent to deceive, upon which the victim relies to their detriment. When applying these principles to a double invoicing scheme, as alleged here, the misrepresentation is the presentation of false invoice(s) to customs authorities or other parties. The individuals or entities involved in the scheme act with intent to deceive or defraud, as demonstrated by the deliberate creation of false documentation and the knowing submission of such documentation to customs authorities. The intent to deceive is a critical element, but there must also be reliance on the false representation by CBP and resulting harm from the fraudulent activity. The elements of fraud are clearly present in alleging a double invoicing scheme, and yet, the "person" who committed the violation, and the acts or omissions constituting the violation, must be clearly identified for such claims to be actionable. USCIT R. 9(b).

the complaint are true. In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Court elaborated that a Complaint must articulate enough factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal* confirms that mere conclusory allegations are insufficient; instead, there must be factual allegations that are plausible, not just possible. *Ashcroft,* at 678; *see also*, 5 Wright & Miller, Federal Practice and Procedure § 1202, p. 94-95 (3d ed. 2004). (Rule 8(a) "contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented" and does not authorize a pleader's "bare averment that he wants relief and is entitled to it.").

Viewed against these standards, and the requirements for pleading a violation sufficient to entitle the government to "withheld duties" under 19 U.S.C. § 1592(d), the Complaint in this action falls far short of stating a claim on which relief may be granted.

### A.    The Complaint Does Not Identify the "Person" Who Committed a Violation of 19 U.S.C. § 1592(a)

As noted above, the *Customs Procedural Reform and Simplification Act of 1978* converted 19 U.S.C. § 1592 from an *in rem* maritime forfeiture statute to one which imposes *in personam* monetary penalties on persons who perform certain acts of commission or omission or, in the case of fraud, who aid and abet such acts.[7] Because 19 U.S.C. § 1592(d) requires that there first be a showing of a violation of 19 U.S.C. § 1592(a), the government must necessarily plead and prove *who* violated the statutory proscription. As noted *supra,* CBP's duty demand merely asserts that the $5,742,483.80 sought here "represents duties deprived the United States due to violation of Title 19, United States Code, Section 1592(a)," *see* Complaint Ex. B, ECF 2-2. The Complaint

---

[7] When fraud is alleged under section 592, "liability for aiding or abetting [that fraud] requires … proof of knowledge of unlawfulness," or "intent to violate the law." *United States v. Hitachi Am., Ltd.*, 172 F.3d 1319, 1338 (Fed. Cir. 1999).

does not identify Katana, or any other "person," as the violator. The Complaint states only that Katana owes the duty as "importer of record," *see* Complaint at ¶13, ECF 2, and refers in conclusory, label fashion to its unspecified "violation of 19 U.S.C. § 1592(a)." *Id.* at ¶ 29.

Just as the Justice Department may not initiate suit on a level of culpability not asserted by Customs, see *Nitek, supra,* it surely may not commence suit to establish a violation of § 1592(a) by a person not identified by CBP as violating that statute. When presented with a 19 U.S.C. § 1592(c)(4)/ 19 C.F.R. § 162.74, "prior disclosure"—as here—Customs has a mandatory duty to refer the disclosure to its Office of Investigations for validation. Since the prior disclosure specifically alleged that Katana's identity had been stolen, this mandatory regulatory referral, 19 C.F.R. § 162.74(f), would necessarily have included a referral for validation that Katana's identity had indeed been stolen with respect to the entries at issue. But the required referral was apparently never made in this case (and the government does not contend otherwise). Apparently the government intends to have the investigation carried out by the court in this proceeding.

As the Complaint does not sufficiently identify the "person" who violated 19 U.S.C. § 1592(a) in this case, it does not sufficiently plead a violation of said § 1592(a)—an essential element to pursuing this suit for "withheld duties" under § 1592(d).

Defendant recognizes that liability for "withheld duties" under 19 U.S.C. § 1592(d) is not limited to persons who violate § 1592(a). *United States v. Blum*, 858 F.2d 1566, 1570 (Fed. Cir. 1988). The Federal Circuit has, however, clarified that:

> [T]he language and structure of § 1592 indicates that subsection (d) is not limited to only importers and their sureties, but is intended to apply to further the mandatory **recovery of unpaid duty from any party liable under subsection (a).**

*United States v. Inn Foods, Inc*., 560 F.3d 1338, 1346 (Fed. Cir. 2009). "This suggests that the party liable for penalties under (a) would also be liable under (d) for the lost duty."[8] *Id.* We have found no case where a party not shown to have violated § 1592(a), or to not have a contractual obligation to pay for another's violation of § 1592(a), has been held liable for § 1592(d) withheld duties.[9]

The legislative history to 19 U.S.C. § 1592 shows that Congress intended to shelter innocent parties from liability under the statute. During Congressional consideration of the *Customs Procedural Reform and Simplification Act of 1978,* Pub. L. 95-410, the reference in 19 U.S.C. § 1592(b)(1)(A)(ii) was amended to ensure that persons accused of "aiding or procuring" the false entry of merchandise were tied to the violation The Conference Report accompanying P.L. 95-410, indicates:

> Second, the language regarding "aiding or procuring" is recast in such a way that it relates to a material and false statement or act, and not merely the entry of merchandise. **This is meant to prevent innocent parties who are somehow involved in the entry from being charged with a 592 violation.**

H.R. Rep. No. 95-1517, at 11-12 (1978) (emphasis added). This Court has already noted that Defendant Katana, "was at least defalcated with respect to the imported tires it actually received

---

[8] Like the instant case, *Inn Foods* involved a claim that there had been fraudulent "double invoicing" of imported goods in violation of 19 U.S.C. § 1592(a) by a defunct importer of record, SeaVeg. However, Inn Foods was a sister company of SeaVeg, and was found to have "aided and abetted" the violations, thus violating §1592(a). *United States v. Inn Foods, Inc*., 560 F.3d 1340-1341 (Fed. Cir. 2009).

[9] Courts have found that imputing liability for fraud on an innocent party is simply unlawful and contrary to public policy. *Belmont Wine Exch., LLC v. Nascarella (In re Nascarella)*, 492 B.R. 327, 329-30 (Bankr. M.D. Fla. 2013). *See also Vance v. Pekin Ins. Co*., 457 N.W.2d 589, 592 (Iowa 1990) ("the policy against imputing liability for fraud on an innocent person is significantly more important than the possibility of a potential benefit to the wrongdoer. Courts recognize the fundamental injustice of barring recovery under the circumstances because the reasonable person does not expect arson to be imputed as a result of the intentional acts of the spouse. Hence, liability under the fraud clause is several as to each insured under the policy").

through the misuse of its good name." *United States v. Katana Racing, Inc.*, 569 F. Supp. 3d 1296, 1308 (Ct. Int'l Tr. 2022), *reversed and remanded, other grounds*, 75 F.4ᵗʰ 1346 (Fed. Cir. 2023).

Moreover, the government asserts that Katana is liable for the withheld duties because it was named (without its authorization) as "importer of record." But this Court has already held that "merely stating that the Defendant is named on the entry papers as the 'importer of record' is insufficient," 569 F. Supp. 3d at 1311 (emphasis added), and that there are no grounds to waive exhaustion of remedies insofar as the requirement of an administrative determination of culpability is concerned.

To recover 19 U.S.C. § 1592(d) duties, the government must first prove one or more violations of § 1592(a), establishing both the person deemed liable by Customs, and the level of culpability alleged by Customs. *See United States v. Aegis Sec. Ins. Co.*, 422 F. Supp. 3d 1328 (Ct. Int'l Tr. 2019). CBP has done neither here.

### B.    The Complaint Does Not Properly Allege Culpability, an Essential Element of a 19 U.S.C. § 1592(a) Violation.

In addition, the Complaint in this case fails to allege another element essential to establishing a violation of 19 U.S.C. § 1592(a)—the level of culpability of the "person" who committed the violation (whomever that may be).

As addressed in Defendant's renewed Motion to Dismiss, the government in this case has sought to do precisely what the Federal Circuit held in *Nitek* that it may not do—allege, for the first time, a level of culpability in a lawsuit.[10] As previously noted, Customs' duty demand letter did not indicate any level of culpability associated with a 19 U.S.C. § 1592(a) violation, and thus

---

[10] A level of culpability was not identified in the Complaint, but presumably the government will attempt to state one in litigation. Its Cross-Motion for Summary Judgment, the government suggests it intends to assert "negligence," but as noted herein, this is both incorrect and inappropriate.

was not a decision on which action could be brought in this Court. The Complaint does not mention any of the statutory level of culpability terms—"negligence," "gross negligence," or "fraud." These are terms of art carrying distinct meanings.

In its response to the *Renewed Motion to Dismiss*, the government contends—for the first time—that the Complaint *does* plead one of the § 1592 culpability levels because it claims that defendant failed to exercise "reasonable care" as required by 19 U.S.C. § 1484. This, the government argues, constitutes an allegation of "negligence."

There are several problems with this argument. First, "reasonable care" is a statutory burden placed on all importers to exercise diligence in the entry of merchandise. 19 U.S.C. § 1484. As CBP itself has written:

> [T]he clear requirement that parties exercise reasonable care in importing into the United States. Section 484 of the Tariff Act, as amended, requires an importer of record to use reasonable care to make entry by filing such information as is necessary to enable CBP to determine whether the merchandise may be released from CBP custody, and using reasonable care, complete the entry by submitting with CBP the declared value, classification and rate of duty and such other documentation or information as is necessary to enable CBP to properly assess duties, collect accurate statistics, and determine whether any other applicable requirement of law is met.

*See* U.S. Customs and Border Protection, What Every Member of the Importing Community Should Know: Reasonable Care; An Informed Compliance Publication (2017), at 7. While failure to exercise "reasonable care" is mentioned as an element of a "negligent" violation of § 1592(a),[11] it does not follow that grossly negligent or fraudulent violations of the statute do not equally

---

[11] *See* U.S. Customs and Border Protection, Mitigation Guidelines: Fines, Penalties, Forfeitures and Liquidated Damages: Commercial Fraud – 19 U.S.C. 1592 Negligence, Gross Negligence and Fraud (2004) at 84

involve a failure to exercise "reasonable care."[12] A grossly negligent or fraudulent violation of § 1592(a) necessarily involves a failure to exercise reasonable care, through acts of commission or omission, plus additional elements, such as "actual knowledge of or wanton disregard for the relevant facts and with indifference to or disregard for the offender's obligations under the statute" (gross negligence), or a commission or omission done "knowingly, *i.e.,* was done voluntarily and intentionally."[13]

Indeed, Customs' Informed Compliance Publication setting out the agency's Mitigation Guidelines for Penalties states:

> General Standard: All parties, including importers of record or their agents, are required to exercise reasonable care in fulfilling their responsibilities involving entry of merchandise. These responsibilities include, but are not limited to: providing a classification and value for the merchandise; furnishing information sufficient to permit Customs to determine the final classification and valuation of merchandise; taking measures that will lead to and assure the preparation of accurate documentation, and determining whether any applicable requirements of law with respect to these issues are met. In addition, all parties, including the importer, must use reasonable care to provide accurate information or documentation to enable Customs to determine if the merchandise may be released. Customs may consider an importer's failure to follow a binding Customs ruling a lack of reasonable care. In addition, unreasonable classification will be considered a lack of reasonable care (e.g., imported snow skis are classified as water skis). **Failure to exercise reasonable care in connection with the importation of merchandise may result in imposition of a section 592 penalty for fraud, gross negligence or negligence.**

*See* U.S. Customs and Border Protection, Mitigation Guidelines: Fines, Penalties, Forfeitures and Liquidated Damages: Commercial Fraud – 19 U.S.C. 1592 Negligence, Gross Negligence and Fraud (2004), at 86 (emphasis added).

---

[12] A showing that the accused exercised "reasonable care" is a complete defense to a charge of negligence under the statute. *See, e.g., United States v. Optrex America Inc*., 30 C.I.T. 650,663 (2006); *United States v. Ford Motor Co.,* 29 C.I.T. 827, 847 (2005).

[13] U.S. Customs and Border Protection, Mitigation Guidelines: Fines, Penalties, Forfeitures and Liquidated Damages: Commercial Fraud – 19 U.S.C. 1592 Negligence, Gross Negligence and Fraud (2004), at 85.

As the Court of Appeals held in *Nitek*, the various culpability levels set out in § 1592 do not represent "lesser included offenses," but instead make out distinct and different violations of the statute. *United States v. Nitek Elecs. Inc*., 806 F.3d 1376, 1381 (Fed. Cir. 2015).[14] The government, in making administrative determinations in § 1592 cases and bringing suit on them, must analyze the facts and state the violation correctly.

Second, the offense charged in this case—"double invoicing" with false values—has never been treated as a "negligent" violation of Section 592; it has invariably been charged as fraud (and in one case as gross negligence).[15] Double invoicing has long been viewed by the United States Supreme Court as fraud, *see Manella v. Barry*, 7 U.S. 415 (1806). Double invoicing is viewed as fraud in Customs law contexts outside of Section 592, *see Zenith Radio Corp. v. Matsushita Elec. Ind. Co.* 513 F. Supp. 1100 (E.D. Pa. 1981), and in matters of taxation generally. *Estate of Feuer v. Commissioner*, T.C. Memo 1978-309 (Tax Court 1978). It necessarily involves fraudulent intent to create a second set of books of account. We are at a loss (and expect Plaintiff would be, as well), to understand how one can "negligently" double invoice.  To the extent the government wants the Court to construe the Complaint as alleging negligent instances of double invoicing, such an allegation is not plausible.

---

[14] The Federal Circuit in *Nitek* refused to import into Section 592 of the Tariff Act the concept of "lesser included offenses" from the criminal law. This was appropriate because, while the standard of proof in criminal cases is always "proof beyond a reasonable doubt," the burden of proof in Section 592 cases varies according to the asserted culpability of the defendant, and Customs is required to provide notice to the party being investigated if the level of culpability changes.

[15] *See e.g*., *United States v. Inn Foods, Inc*., 560 F.3d 1338 (Fed. Cir. 2009); *United States v. Greenlight Organic Inc*., 586 F. Supp. 3d 1342 (Ct. Int'l Tr. 2022); *United States v. Chu-Chaing Ho*., 582 F. Supp. 3d 1325 (Ct. Int'l Tr. 2022); *United States v. Spanish Foods*, 24 C.I.T. 1052 (2000); *United States v. Modes, Inc.*, 16 C.I.T. 879 (1992). Double invoicing of imports has also been prosecuted criminally and civilly as a violation of the False Claims Act.

The government may not, by artless pleading, shed either its burden of pleading the fraud with particularity, as required by USCIT R. 9(b), or of proving the violation by "clear and convincing evidence," as required by 19 U.S.C. § 1592(c)(3).

Rule 9(b) requires particularity in pleading fraud, and that the plaintiff specify and "plead in detail the *who*, *what*, *when*, *where*, and *how* of the alleged fraud." *In re BP Lubricants USA Inc.,* 637 F.3d 1307, 1309-10 (Fed. Cir. 2011) (citing *Exergen Corp. v. Wal-Mart Stores, Inc.,* 575 F.3d 1312, 1327 (Fed. Cir. 2009)). This level of specificity is intended to provide defendants with adequate notice of the conduct complained of, enabling them to prepare an appropriate defense. The Complaint in this case alleges double-invoicing (in one instance, at least, of the 386 invoices involved in this case), but does not even specify *who* issued the allegedly false invoices. The Complaint thus fails to plead a plausible cause of action under *Ashcroft v. Iqbal*, 566 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

While *Iqbal, supra,* did not directly concern an allegation of fraud, it did involve the assessment of mental states, knowledge, and intent,[16] which are also crucial elements in fraud cases. The *Iqbal* decision underscores the requirement for detailed allegations in order to satisfy elements that concern a defendant's mental state. For cases involving fraud—where a plaintiff must plead the circumstances constituting fraud with particularity per Rule 9(b)—this often

---

[16] *Iqbal* did not directly involve allegations of fraud but it did address the issue of pleading sufficient facts to show the defendants acted with the necessary state of mind—in that case, discriminatory intent. The plaintiff, Javaid Iqbal, claimed he was detained and subjected to harsh conditions due to discriminatory policies spearheaded by high-ranking officials, including then-Attorney General John Ashcroft and FBI Director Robert Mueller, following the September 11 attacks. Iqbal argued that the officials knew of, condoned, and willfully and maliciously agreed to subject him to harsh conditions of confinement as a matter of policy solely on account of his religion, race, or national origin. In addressing the allegations of wrongful intent, the Court emphasized the need for factual allegations that go beyond mere speculation; thus, Iqbal's complaint would need to include factual allegations consistent with knowledge and intent to discriminate in order to satisfy the plausibility standard.

translates into a need for specific allegations about a defendant's *knowledge of the falsity* and *intent to deceive*—not just conclusory statements that falsehoods and deception occurred.

Since negligent, grossly negligent and fraudulent violations of Section 592(a) are separate violations with different elements, the government's effort to charge double invoicing as simple negligence could lead to perverse results. For example, the government might plead the elements of the violation as in negligence cases, *see* 19 U.S.C. § 1592(c)(1), and be defeated when the defendant establishes that the violation was not negligent, but fraudulent. This Court should resoundingly reject the government's bare-faced attempt to charge fraud without providing a detailed pleading, while trying to boot-strap itself into the much lower burden of proof associated with cases involving simple negligence.

### C.    The Government Failed to Exhaust its Administrative Remedies.

In bringing actions under 19 U.S.C. § 1592, the government is required by 28 U.S.C. § 2637(d) to exhaust administrative remedies before filing suit. *See e.g., United States v. Nitek Elecs. Inc.*, 806 F.3d 1376 (Fed. Cir. 2015), *United States v. Optrex America Inc., supra; United States v. Priority Products*, 799 F.2d 296 (Fed. Cir. 1986); *United States v. Aegis Sec. Ins. Co.,* 301 F. Supp. 3d 1359 (Ct. Int'l Tr. 2018). This is true when Customs sues to recover penalties under other statutes as well. *See United States v. Robert E. Landweer & Co.*, 36 U.S. 200 (2012). While exhaustion is not jurisdictional, and the Court has authority under 28 U.S.C. § 2637(d) to waive exhaustion in appropriate cases, the Courts will generally require the government to exhaust its administrative remedies in Section 592 matters.  However, § 2637(d) "indicates a congressional intent that, absent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Corus Staal BV v. United States,* 502 F.3d

1370, 1379 (Fed. Cir. 2007); *United States v. Nitek Elecs., Inc.*, 806 F.3d 1376, 1382 (Fed. Cir. 2015).

The instant Section 592 action was initiated by Katana's submission of a prior disclosure pursuant to 19 U.S.C. § 1592(c)(4), which, while disclaiming liability for such violations (citing "identity theft"), alerted Customs to possible violations of 19 U.S.C. § 1592(a). Customs' own regulations require that all prior disclosures be referred to CBP's Office of Investigation for validation. *See* 19 C.F.R. § 162.74(f).  There is no indication in the record that CBP ever made such a referral, or that any investigation of the facts disclosed was initiated or performed. The Government did not process Katana's prior disclosure at all. Rather, an ongoing Regulatory Audit of entries made in Katana's name continued to conclusion. At no point did anyone in Customs' Office of Investigations attempt to investigate the claims of identity theft made in the prior disclosure, nor attempt to identify any individuals who might have submitted the allegedly false invoices to CBP. To be sure, the Audit Report generated by the agency recited extensive evidence supporting Katana's claims of identity theft.[17]

Regardless of the fact that Customs ultimately elected to commence a suit to recover 19 U.S.C. § 1592(d) "withheld duties," rather than 19 U.S.C. § 1592(a) penalties, the agency was still required to follow procedures set out in 19 C.F.R. § 162.74(f), which states that "[u]pon receipt of a prior disclosure, the Customs officer shall notify Customs Office of Investigations of the

---

[17] Thus, the auditors confirmed that Katana did not have any copies of the entries being audited; that Katana had not received bills for clearance services from Customs brokers with respect to the entry; that Katana was invoiced for the merchandise on "Delivered, Duty Paid" (DDP) terms, and paid those invoices.  The auditors also noted that Katana was forced to write to numerous Customs brokers to obtain copies of the entries filed in its name. The Complaint in this action concedes (at ¶12) that the duties deposited with the entries were advanced by the vendors, not Katana.

disclosure," and further states that "it is incumbent upon the Customs officer [receiving the disclosure] to provide a copy of the disclosure to the concerned Fines, Penalties, and Forfeitures Officer." There is no evidence that anyone at CBP attempted to validate the prior disclosure.[18] No Customs official, for example, contacted any of the Customhouse brokers who filed the entries to ask them who had provided them with the allegedly false invoices. Had they done so, they would have been able to validate Katana's claims that it was the victim of identity theft. They might even have identified and held the culpable parties responsible. They might have determined to whom the brokers had sent invoices for their services performed in respect of the entries.

But Customs apparently did not involve its Office of Investigations in the prior disclosure validation process at all. The agency's only contact with the company, apart from a Katana-requested meeting with the Assistant Port Director in Los Angeles/Long Beach, were three (3) requests for statute of limitations waivers from the agency's Office of Fines, Penalties and Forfeitures office and the duty demand letter later issued by that office. It is difficult to see how CBP will establish a violation of 19 U.S.C. § 1592(a)—which it must do, in order to defeat the finality of liquidation of entries established by 19 U.S.C. § 1514(a) and proceed to seek § 1592(d) "withheld duties," when it never investigated the disclosure at all.

There is simply no basis for the Court to waive the requirement that prior disclosures be referred to CBP's Office of Investigations, particularly in this case, where the prior disclosure expressly disclaimed any involvement by Katana in the violations.

---

[18] Katana made no request that Customs withhold or delay validation. In any event, CBP is not obligated to honor such a request.

**D.     Customs' Action is Barred by the Statute of Limitations because the Third Statute of Limitation Waiver was Procured by Deception.**

This case is barred by the statute of limitations set out in 19 U.S.C. § 1621 because Katana's third statute of limitations waiver was procured by deception. Customs falsely represented to Katana that the company would be able to make a presentation responding to any duty demand to discuss the identity theft it had been the victim of and would, by signing the third waiver be allowed "the benefit of orderly administrative proceedings." *See* Katana Third SoL Waiver of October 25, 2016, ECF 12-3 at 186. The Government's deception was not immediately apparent because the Government did nothing with Katana's case until 2019, when the agency made its withheld duty demand, and refused to provide Katana the promised opportunity to make a presentation. Katana's reliance on the Government's false representations induced it to sign the third statute of limitations waiver the government solicited. That waiver is void, since the Government procured it through a false representation, with the result that this case is time-barred and must be dismissed.

On March 21, 2016, representatives of Katana and counsel met in Long Beach with Mr. Jorge Garcia, Assistant Port Director of Customs for the Port of Los Angeles/Long Beach. Mr. Garcia promised that Customs would allow Katana to make a presentation in responding to the duty demand, articulating its claims of identity theft. This understanding was made clear in the March 22, 2016, letter which Katana's counsel sent the very next day to Assistant Port Director Garcia:

> You indicated that Customs will issue a Section 592(d) demand for the $5.7 million in controversy and Katana will have a right to make presentations in response to that demand and in accordance with 19 U.S.C. § 1618. We appreciate the consideration and will prepare a submission to the Fines, Penalties and Forfeitures office after the Section 592(d) demand is issued.

*See* ECF 12-3 at 182. This Court has previously noted, the Government does not dispute this version of events. *See United States v. Katana Racing, Inc.*, 569 F. Supp. 3d 1296, 1304, 1312-13 (Ct. Int'1 Tr. 2022).

On October 26, 2016, Katana executed its third statute of limitations waiver which stated that:

> ... in order that Katana might obtain the benefits of the orderly continuation and conclusion of any administrative proceedings currently being conducted or contemplated by CBP, so that Katana could enjoy the benefit of orderly administrative proceedings in which CBP is reviewing entries of tires by Katana which might be subject to safeguard duties formerly imposed on entries of certain passenger car and light truck tires from China.

*See* ECF 12-3 at 186.  In addition, as this Court previously noted:

> With regard to the effect of defendant's last SoL waiver, CBP asserts that the presence of the word "might" in it deprives Katana of any reliance interest. See supra. But, the defendant explains that its execution of the waiver was prompted by more than the language of the waiver form itself: at an in-person meeting between Katana's counsel and officers and the Assistant Port Director of Customs at Long Beach, California, held on March 21, 2016, Assistant Port Director Garcia expressly represented to Katana that it would be provided an administrative notice claiming and explaining Katana's "violation" of withheld duties and granting the company an opportunity to respond. Katana's counsel confirmed this representation in writing. See Def's Br., Ex. H. This representation was operative and uncontradicted when, seven months later, CBP requested a third SoL waiver, to allow for the orderly conclusion of administrative proceedings.

*United States v. Katana Racing, Inc.*, 569 F. Supp. 3d 1296, 1312-13 (Ct. Int'1 Tr. 2022).

Customs did nothing to allow Katana to make its presentation to the agency about identify theft or to allow for the "orderly continuation and conclusion of any administrative proceedings." Instead, in 2019 the agency refused to provide the opportunities promised and filed this suit one day before the third statute of limitations waiver would have expired, had it been valid.

The Government's argues that because Katana "knowingly and voluntarily" signed the third statute of limitation waiver, there is no need for the Court to look into whether the waiver

19

was induced by deception. The Federal Circuit's opinion made clear that the Court did not foreclose "Katana's argument that its third waiver was induced by affirmative misconduct by Customs." *United States v. Katana Racing, Inc*., 75 F.4th 1346, 1353 fn 6 (Fed. Cir. 2023). The Government's argument fails.

It is well established that a waiver of a right or defense is void if procured by fraud, deceit, or misrepresentation, including a Section 592 statute of limitation waiver. *See Heckler v. Cmty. Health Servs. Of Crawford Cnty., Inc*., 467 U.S. 51, 60-61 & n.12 (1984); *United States v. Ford Motor Co*., 463 F.3d 1267, 1279 (Fed. Cir. 2006). In *Scharf v. Department of the Air Force*, 710 F.2d 1572, 1575 (Fed. Cir. 1983), the Federal Circuit held that a government official's statement was misleading, that the petitioner had reasonably relied upon it, and set aside the voluntary retirement as having been procured by misrepresentation because "a reasonable person would certainly have concluded from the advice received that there would be no adverse consequences if an optional retirement preceded a disability retirement ... [and] it was reasonable for petitioner to rely on the advice of his retirement counselor." *Id.* The Government attempts to distinguish this case because it is an employment case, but the case is still applicable for setting out the Federal Circuit's position on inducement by government deception.

Numerous circumstances demonstrate that Katana reasonably relied on Customs' promise of an opportunity to make a presentation that would exonerate the company when it executed the third statute of limitations waiver. In addition, despite the Government's characterization of the waiver language as "form language," it would have induced a reasonable person to believe that Katana would receive the meeting and a meaningful opportunity to make its presentation, present its evidence of identity theft, and avoid suit. This is especially true after Port Director Garcia made such explicit representation to Katana *in person* at the March 2016 meeting.

The deception became apparent only years after the waiver was executed, when Customs, through Ms. Hiyama—who had previously indicated she knew of "no reason why the government would not also seek a penalty," *see* Email of May 31, 2019, ECF 12-3 at 194—refused Katana the right to make such a presentation. This Court has previously indicated that it was "clear to [Katana] that the waiver had been procured by 'false pretenses.'" *See United States v. Katana Racing, Inc.*, 569 F. Supp. 3d 1296, 1306 (Ct. Int'l Tr. 2022). This deception should be equally clear to the Court.

The Government relies on *United States v. Daewoo Int'l (America) Corp.*, 696 F. Supp. 1534, 1544 (Ct. Int'l Trade 1988), for the proposition that a statute of limitations waiver is still valid even if a hoped-for settlement did not materialize. In that case the Court declined to focus "on why the settlement was not accepted or whether Customs' refusal to accept the offer was due to [a congressional] investigation." *Id.* at 1544. But there was no suggestion in *Daewoo* that the government induced the waiver through misrepresentation or bad faith. Katana accepts that a meeting with Customs may or may not have resolved the matter; but when it signed the third waiver, it did so because the waiver had been solicited for the purpose of allowing Katana "orderly administrative proceedings," and the company had been *promised* an opportunity to make a presentation.[19] Because the third statute of limitations waiver was procured through misrepresentation, it was void. It follows that this action was untimely brought and must be dismissed.

---

[19] There has been no assertion that Mr. Garcia, a senior Customs official, lacked authority to make this promise.

E.    **This Action is Barred by Laches.**

USCIT R. 8(d)(1) provides laches as an available affirmative defense to a complaint. The defense of laches is available where a plaintiff unreasonably delayed asserting its rights, and the defendant can prove material prejudice as a result of such delay. *See e.g., Lincoln Logs Ltd. v. Lincoln Pre-Cut Log Homes, Inc*., 971 F.2d 732 (Fed. Cir. 1992); *Freeport Minerals Co. v. United States*, 758 F.2d 629 (Fed. Cir. 1985).

In response, the Government argues that "laches generally "cannot be invoked to bar legal relief in the face of a statute of limitations enacted by Congress," and "that the lawsuit was timely filed within the time provided by the statute of limitations waiver." Gov't Br. 40. In addition, the government argues that Katana cannot establish any "unreasonable, prejudicial delay in commencing suit" because "Katana signed a statute of limitations waiver 'knowingly and voluntarily.'" *Id.*

The Government's first argument defeats itself. The case law rule cited stands against using laches while congressionally specified statutes of limitations have not run. The congressionally specified statute of limitation applicable to this case, found in 19 U.S.C. § 1621, was 5 years. This statute of limitations ran on the entries at issue, starting a decade ago, between 2014 and 2017. However, the Government ends its argument by saying under the *waivers* the statute of limitations did not run until after this case was filed. This is well after the first Congressionally mandated statute of limitation had run.

However, the limitations period claimed by the government is not the Congressionally-mandated period set out in 19 U.S.C. § 1621; it is a period created by the third waiver, which, as noted, was procured by deception. And the government did engage in extended, unjustified delay. The claimed loss of revenue had been calculated and demanded before Katana's March 22, 2016,

meeting with Assistant Port Director Lopez; yet Customs apparently did *absolutely nothing for to advance the case for three years,* other than reiterating its duty demand and reneging on its promise that Katana would be allowed to present its identity theft claims.

Defendant is significantly prejudiced because it will be extremely difficult for Katana to obtain materials from the dozens of customs brokers who acted without authorization from, or communication with, Katana, and unlawfully filed the entries (while lacking contractual privity with Katana). While Katana was able to reconstruct entry records some of the brokers filed in its name, other broker records made between 2009 and 2012—customs powers of attorney, correspondence between the brokers, and those furnishing the apparently false documents—are by now far outside the mandatory 5-year period for which brokers must keep records of "customs business" transacted. *See* 19 U.S.C. § 1508(c). Some of the brokers are no longer in business; some are deceased. Katana's own General Manager, who was key in its response to CBP's audit, is long retired and his recollections may have dimmed with the passing of time; and this may be true of some of the brokers who would be likely witnesses if this case proceeds to trial.

The Government had all of the information it relied upon in issuing its § 1592(d) demand, and to bring this suit, no later than early 2016. Rather than preparing and filing suit, it waited 39 months to bring the instant action after depriving Katana of agency-officer-promised, administrative proceedings. The Court should dismiss the Government's Complaint on the grounds of laches.

## II.    Response in Opposition to Plaintiff's Cross-Motion for Summary Judgment and in Support of Defendant's Motion for Summary Judgment.

### A.    Summary Judgment Without Discovery is Not Appropriate.

Twice, now, the government has moved for summary judgment in this case before issue is joined or any discovery had. It is well established that "[o]nly in the rarest of cases may summary

judgment be granted against a [party] who has not been afforded the opportunity to conduct discovery[,]" *Hellstrom v. U.S. Department of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000); *United States v. Univar USA, Inc.*, 195 F. Supp. 3d 1312, 1317-1318 (Ct. Int'l Tr. 2016).[20] The Court should find that this is not one of those rare cases because there are genuine issues of material fact concerning the Defendant's claims of identity theft and its lack of authorization for the merchandise to be entered in its name as importer of record.

By attempting to foreclose discovery into the circumstances of the alleged identity theft, the government essentially imposes a theory of vicarious liability on Katana, undermining the legal principles of individual responsibility and fairness. And yet, according to the government:

> Katana misunderstands the obligations associated with serving as importer of record. The importer of record has a duty of care to ensure accurate statements in entry paperwork, regardless of whether the importer of record personally enters the merchandise or acts through "an agent authorized by the party in writing." See 19 U.S.C. § 1484(a)(1); see also 19 C.F.R. Pt. 171, App. B(C)(1), (D)(6) (defining negligence and lack of reasonable care). The complaint alleges that Katana breached its duty by failing to act with reasonable care. Compl. ¶ 13, ECF No. 2 (July 15, 2019). This is not vicarious liability, but an affirmative duty of care held by the importer of record itself.

Gov't Br. at 12.[21] As this Court has previously stated "merely stating that the defendant was the 'importer of record' does not suffice in the circumstances of this action." *United States v. Katana Racing*, Inc., 569 F. Supp. 3d 1296, 1314 (Ct. Int'l Tr. 2022)

---

[20] Some jurisdictions prohibit bringing motions for summary judgment before issue is joined. *See e.g.*, N.Y. C.P.L.R. § 3212(a). USCIT R. 56(b) allows such a motion to be filed within 30 days after the close of all discovery. The general cadence of these rules is that discovery should almost always occur before summary judgment is sought.

[21] While Katana was named as the importer of record, it in fact did not serve as importer of record. Its name and identity were stolen by others who caused false statements to be filed with CBP. To the extent the government disregards this fact, it is indeed raising a theory of vicarious liability. As noted *supra*, imputing fraud to innocent parties is against public policy.

The government's reliance on the duty of care outlined in 19 U.S.C. § 1484(a)(1) and the corresponding regulatory framework, 19 C.F.R. Pt. 171, App. B(C)(1), (D)(6), underscore the responsibilities of the importer of record; however, these provisions presuppose the authenticity and authorization of the actions taken in the name of the importer of record.

The government's stance overlooks the critical dimension of identity theft and imposes liability irrespective of the authorization of the importation or the identity of the person(s) actually responsible for supplying false invoices and entry data to CBP. This oversight not only misinterprets the essence of the duty of care but also imposes an unreasonable burden on entities potentially victimized by fraudulent actions. The duty of care mandated by the law is inherently tied to actions authorized by, or genuinely attributable to, the person actually filing the entry documents with CBP. It is a fundamental legal principle that liability should not extend to acts conducted without authorization or through deceitful means, as such an extension would effectively punish victims of identity theft rather than protect the integrity of importation processes.[22]

---

[22] Recognizing that identity theft was a growing problem, Customs in 2022 revised its regulations dealing with Customhouse brokers, requiring brokers to receive a power of attorney *directly* from the importer or drawback claimant it will represent, and prohibiting brokers from accepting powers of attorney from freight forwarders (a frequent source of identity theft, as in this case). As amended, 19 C.F.R. § 111.36(c)(3) provides:

> (3) The broker must execute a customs power of attorney directly with the importer of record or drawback claimant, and not via a freight forwarder or other third party, to transact customs business for that importer of record or drawback claimant. No part of the agreement of compensation between the broker and the forwarder, nor any action taken pursuant to the agreement, can forbid or prevent direct communication between the importer of record, drawback claimant, or other party in interest and the broker …

Not only were brokers prohibited from accepting powers of attorney from a forwarder prospectively, they were obligated to replace all powers of attorney received from freight forwarders with a POA signed directly by the importer or drawback claimant. *See* Modernization

Moreover, the government's refusal to investigate Katana's claims administratively, and efforts to deny Katana discovery into the facts surrounding the allegations of identity theft, further exacerbate this issue. The government's stance effectively precludes Katana from demonstrating the unauthorized nature of the importations, thereby imposing a theory of liability rooted in vicarious liability. Vicarious liability typically arises in scenarios where one party is held responsible for the actions of another, based on their relationship, rather than through some direct involvement or fault. By holding Katana liable for actions it has consistently argued were *unauthorized* and caused by *identity theft*, the government is attributing liability to Katana for acts it neither committed, condoned, nor authorized.

The government urges the Court to impose liability on an importer of record without a thorough administrative investigation or discovery in litigation which directly contradicts principles of fairness and justice. The government's reliance on cases like *United States v. Pan Pac. Textile Grp., Inc*., 395 F. Supp. 2d 1244, 1254 (Ct. Int'l Trade 2005),[23] and *United States v. Blum*, 858 F.2d 1566, 1570 (Fed. Cir. 1988), for the proposition that "it is preferable to extend liability for unpaid duties to an innocent party who is nonetheless 'traditionally liable' for such payment," overlooks the important reality that *innocent parties* who do not authorize entries are

---

of the Customs Broker Regulations, 87 Fed. Reg. 63267, 63289 (U.S. Customs and Border Protection 2022).

Despite this reform, the United States remains far behind trading partners such as Mexico, which require importers to join a central registry and provide the Customs authorities with their Customs powers of attorney, so that the authorities may detect efforts to enter goods in the importer's name by persons seeking to appropriate another's identity.

[23] Additionally, in *Pan Pacific*, the Complaint alleges specific violations of § 1592(a), citing specific acts or omissions and the level of culpability attaching thereto. *See* Complaint at §§ 27-28, 31, 34, 40, 44, *United States v. Pan Pac. Textile Grp., Inc.,* Case No. 01-cv-01022-RWG, ECF 3. Such specificity is woefully lacking in the instant Complaint.

not "traditionally liable" under the customs laws of the United States.[24] The government never connects the dots on liability extending to an innocent victim of identity theft defrauded by other actor(s).

It is imperative that the Court allow for the consideration of identity theft as a valid defense against alleged breaches of the duty of exercise reasonable care. Without such consideration, the duty of reasonable care becomes an unreasonable and unjust instrument of vicarious liability, rather than a means of ensuring compliance in the exercise of reasonable care in entering merchandise.

Therefore, it is not only the presence of genuine issues of material fact that requires that the Court deny Plaintiff's motion, but also fundamental notions of fairness and justice that require consideration of Katana's allegations of unauthorized entries being filed in its name.

### B.    The Government Assumes Incorrectly That There are No Genuine Issues of Material Fact.

According to the government, "no genuine dispute that a loss of revenue resulted from a violation of 19 U.S.C. § 1592(a) with respect to the subject 386 entries," and "Katana, as the importer of record," either "failed to exercise reasonable care in ensuring the accuracy of the entry paperwork," or "is unable to demonstrate that the false statements 'did not occur as a result of negligence.'" Gov't. Br. at 24-25. The fact that revenue is owing on the subject entries does not mean *ipso facto* that Katana is liable—Katana's identity was stolen and fraudulently used without its knowledge or authorization—nor does it support a finding that Katana is responsible for any

---

[24] *See also, infra,* discussion of amendments to Section 592 which were "meant to prevent innocent parties who are somehow involved in the entry from being charged with a 592 violation." H.R. Rep. No. 95-1517, at 11-12 (1978).

acts or omissions giving rise to liability under § 1592. Importantly, no specific acts or omissions are identified in the Complaint.

Since its inception, this Court has recognized that the existence of triable issues of material fact precludes the resolution of cases via summary judgment. *Texas Instruments, Inc. v. United States*, 1 C.I.T. 236 (1981). To sustain its cause of action, the government must plead and prove that Katana committed acts of commission or omission which violated the proscription in 19 U.S.C. § 1592(a). The Complaint in this case does not squarely accuse Katana of having violated that statute.[25] However, Katana has raised the most fundamental of material fact disputes: "we didn't do it!" Nor is this a formulation devised for litigation. Katana has claimed its identity was stolen from the very beginning of this matter, when it submitted its prior disclosure, and at all times since. Should the case proceed to trial, Katana will produce evidence, both direct and circumstantial, to support this contention. This will include testimony from Katana officers that they did not authorize the filing of the entries, and that they did not authorize the overwhelming majority of the brokers who filed these entries to act for them. It will include evidence that the brokers never dealt with Katana, received documents from someone other than Katana, invoiced someone other than Katana, and received funds to pay duties from someone other than Katana. It will include testimony from Customhouse brokers that they only dealt with persons other than Katana. It will include testimony from Customs auditors who will confirm that Katana did not have in its possession documents related to the subject entries, needed to collect them from the brokers who filed the entries, and did have in its possession documents showing the DDP prices

---

[25] Nor does the government indicate what the violation is. For one of the 386 entries in question, the Complaint contains an allegation that goods were undervalued. It contains absolutely no allegation with respect to the other 385 entries. To the extent double invoicing is a form of fraud, this is fatal to the Complaint under USCIT R. 9(b).

for which it was invoiced, and paid those DDP prices to the sellers. The government is either articulating a theory of vicarious liability, or its summary motion judgment is frivolous.

In addition, the government is trying to wriggle out of its burden of proof under 19 U.S.C. § 1592(c)(3). As noted *supra*, the government's accusations are of "double invoicing," which is an allegation of fraud. To recover in this action, the government must prove the fraud by "clear and convincing evidence." *Id.*

The government's complaint suffers from a crucial lack of specificity regarding the party responsible for the alleged violations. Section 592 of the Tariff Act, which is designed to address and remedy and/or penalize false or fraudulent statements made to Customs that affect the importation of merchandise, requires a clear demonstration of who committed the actionable mistake or omission. It is today an *in personam* monetary penalty provision, and requires the government to identify the person(s) *who actually engaged in, or aided and abetted,* Customs violation. The government's broad claim that a loss of revenue resulted from a violation of 19 U.S.C. § 1592(a) without directly accusing Katana of specific acts or omissions, or elucidating the precise nature of its culpability, raises significant concerns about fundamental fairness and traditional notions of due process.[26]

A fundamental issue lies in the government's failure to concretely identify Katana as the violator within the Customs duty demand or in the instant Complaint. The duty demand's reference

---

[26] The government's failure to specify the acts or omissions attributed to Katana undermines the essence of due process. Without knowing the exact nature of the alleged violations, Katana is significantly handicapped in preparing a defense, challenging the evidence, or even understanding the full scope of the government's claims. This lack of specificity can lead to a scenario where a party is being held accountable for unspecified actions, and/or actions which the government is ambivalent as to a party's underlying culpability under theories of vicarious liability, which is antithetical to the principles of justice and fairness, and contrary to the framework and purpose of Section 592.

to duties deprived as a result of a violation of 19 U.S.C. § 1592(a) and the Complaint's reference to Katana owing duties as the "importer of record," do not adequately specify the actions constituting the violation (*i.e.*, an act or omission), or establish a level of culpability, which leaves a substantial gap in the necessary facts that must be pled to make out a *prima facie* violation of Section 592.[27] This omission is critical because 19 U.S.C. § 1592(a) delineates different levels of culpability—negligence, gross negligence, or fraud—with corresponding penalties and burdens of proof, emphasizing the need for precise allegations and evidence of the alleged violator's state of mind or level of culpability.

The absence of detailed allegations against Katana regarding the specific acts or omissions that it allegedly committed in violation of 19 U.S.C. § 1592(a) fundamentally undermines the government's motion for summary judgment, and inescapably introduces issues of material fact that must be resolved before liability can be established. The law requires not only that a violation occurred but also that the party accused of the violation had a certain level of culpability—negligence, gross negligence, or fraud. Without clear and specific accusations detailing how Katana either failed to exercise reasonable care or was otherwise culpable, summary judgment for the government is completely inappropriate.

A brief survey of Federal precedents reveals that a dispute concerning the identity of a material actor in a case inevitably precludes the grant of summary judgment. *See e.g.*, *Global Bio. Res. v, Cantrell*, 2023 U.S. Dist. LEXIS 103897 (D. Wyo. 2023) (dispute as to the identity of shareholders); *First Mercury Ins. Co. v. First Fla. Building Corp.*, 2022 U.S. Dist. LEXIS 159264

---

[27] Stated another way, the government cannot plead its cause of action using passive voice. "Violations occurred," or "duties were underpaid" are insufficient allegations. The Complaint must identify the person who committed the § 1592(a) violation which is a necessary perquisite to filing any claim for § 1592(d) lost duties.

(M.D. Fl. 2002) (identity of party's employer); *Whitley v. Kion N. Am. Corp.,* 2017 U.S. Dist. LEXIS 41441 (D. Ma. 2017) (identity of forklift manufacturer); *Oaster v. Robsertson,* 173 F. Supp. 3d 1160 (D. Co. 2016) (identity of allegedly infringing entities); *Hudson v. Babilonia,* 2015 U.S. Dist. LEXIS 51249 (D. Conn. 2015) (claim of **identity theft** regarding procurement of Sallie Mae loan); *Guardian Ins. & Annuity Co. v. White*, 2014 U.S. Dist. LEXIS 24305 (S.D. Oh 2014) (dispute concerning identity of decedent's intended beneficiary); *Scheuneman v. J.C. Christensen & Assoc.*, 802 F. Supp. 2d 981 (E.D. Wi. 2011) (dispute regarding identity of creditor); *Gordon Altman Butowsky Weitzen Shalov & Wein v. RWS Support Services*, 1997 U.S. Dist. LEXIS 1684 (S.D.N.Y. 1997) (dispute regarding identity of debtor).

In this case, the government is required to demonstrate the identity of person(s) who provided false statements to Customs. Katana has credibly disputed, with citation to direct and circumstantial evidence, in its Rule 56.3 response, that it entered merchandise into the United States by means of false and material acts, statements, or omissions. Neither CBP's withheld duty demand, nor the complaint in this action, provide any evidence that Katana was the violator. The Plaintiff's entire claim is based on identification of Katana as the importer of record (which identification could be made in **any** Customs case involving identity theft). There is no basis to grant the government summary judgment on the facts alleged; should this action proceed to trial, there would be a clear need for fulsome discovery.

Moreover, principles of due process underscore the necessity for the government to provide a clear and specific basis for its claims. The inherent vagueness of the government's allegations against Katana highlights a crucial gap in procedural fairness, as it deprives Defendant of the ability to mount an effective defense or to address specific allegations of wrongdoing. The government's nonspecific assertions of violations of 19 U.S.C. § 1592(a) without direct, specific

allegations against Katana raise significant issues of material fact. These issues not only challenge the foundation of the government's claim but also underscore the importance of pleading specificity, which again, are subject to heightened pleading standards under USCIT R. 9(b). Without addressing these fundamental concerns, the government's Complaint lacks the requisite precision necessary to establish Katana's liability for the alleged violations of Section 592.

**C.    Seeking Withheld Duties Under 19 U.S.C. § 1592(d) is Tied to the Sufficiency of Allegations of a Violation Under § 1592(a).**

The government's failure to explicitly name Katana as the violator or to detail the precise acts of negligence or fraud under § 1592(a) dooms any subsequent claims under § 1592(d). Without alleging, and later establishing, a prerequisite violation, the government's case for recovering duties lacks a foundational element. The statutory construction of 19 U.S.C. § 1592 erects a logical sequence and dependency where a determination of violation under § 1592(a) is inherently a prerequisite for any actions brought under § 1592(d). This is because § 1592(d) directly references the violations detailed in § 1592(a) as the basis for recovering duties or imposing penalties. Therefore, without alleging and establishing a violation as outlined in § 1592(a)—whether through negligence, gross negligence, or fraudulent acts—there would be no grounds under the statute to assess duties, taxes, or fees under § 1592(d). *United States v. Aegis Sec. Ins. Co*, 422 F. Supp. 3d 1328, 1350 (Ct. Int'l Tr. 2019).

In this sense, the statutory scheme creates a cause-and-effect relationship between the violation of § 1592(a), and the collection of duties, taxes, or fees under § 1592(d). For the government to leverage § 1592(d) against Katana or any party, it must first concretely allege that they committed a violation under § 1592(a). This includes identifying the specific false statements, omissions, or actions that purportedly violated the statute. Unless this is done, the subject entries are protected by the statutory finality of liquidation set out in 19 U.S.C. § 1514(a).

This interpretation not only aligns with the statute's wording but also with broader legal principles ensuring fairness and due process in the imposition of liability for uncollected duties, taxes, or fees.

**D.    The Finality of Liquidation in 19 U.S.C. § 1514(a) Protects Innocent Importers from Liability Under Section 1592.**

Section 1514(a) of the Tariff Act of 1930, 19 U.S.C. § 1514(a), plays a pivotal role in protecting innocent importers from liability for customs duties by providing a definitive endpoint in the customs entry process.[28] Section 1514(a) provides that, after liquidation, all parties—

---

[28] Section 1514(a) provides (emphasis added):

> (a) **Finality of decisions**; return of papers
>
> Except as provided in subsection (b) of this section, section 1501 of this title (relating to voluntary reliquidations), section 1516 of this title (relating to petitions by domestic interested parties), section 1520 of this title (relating to refunds), and section 6501 of title 26 (but only with respect to taxes imposed under chapters 51 and 52 of such title), **any clerical error, mistake of fact, or other inadvertence**, whether or not resulting from or contained in an electronic transmission, **adverse to the importer, in any entry, liquidation, or reliquidation, and, decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to**—
>
> (1) the appraised value of merchandise;
>
> (2) the classification and rate and amount of duties chargeable;
>
> (3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;
>
> (4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;
>
> (5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof, including the liquidation of an entry, pursuant to either section 1500 of this title or section 1504 of this title;

including CBP and the importer—must treat the duties assessed and the entry's classification as final unless a timely protest is filed within the specified period. This finality ensures that importers can conduct their business with a degree of certainty regarding their customs obligations. It also promotes administrative efficiency by limiting the window during which entries can be contested. This efficiency reduces the administrative burden on CBP and helps prevent the legal system from being overwhelmed with disputes over customs entries.

While the government retains the right to pursue actions in cases brought under Section 592, the finality of liquidation under § 1514(a) means that such actions must be justified and pursued within a clear legal framework. Unless a violation is alleged and proven under § 1592(a), the entries remain protected by the finality of liquidation granted by § 1514(a). In this sense, Section 1514(a) serves to limit the government's ability to revisit previously settled matters, thereby providing a form of checks and balances on the power of CBP.[29]

---

> (6) the refusal to pay a claim for drawback; or
>
> (7) the refusal to reliquidate an entry under subsection (d) of section 1520 of this title;
>
> **shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed** in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Court of International Trade in accordance with chapter 169 of title 28 within the time prescribed by section 2636 of that title. When a judgment or order of the United States Court of International Trade has become final, the papers transmitted shall be returned, together with a copy of the judgment or order to the Customs Service, which shall take action accordingly.

[29] Indeed, prior to enactment of the Customs Procedural Reform and Simplification Act, P.L. 95-110, the government could not recover withheld duties even where a violation of 19 U.S.C. § 1592 was proven. *See, e.g., United States v. Brown,* 404 F. Supp. 968 (S.D.N.Y. 1975).

This court has recently held that 19 U.S.C. § 1514(a) bars the government's efforts to assert counterclaims in Customs litigation regarding entries which are liquidated and final. *See. e,g, Second Nature Designs, Inc. v. United States*, 654 F. Supp. 3d 1301 (Ct. Int'l Tr. 2023); *Maple Leaf Mktg. v. United States*, 639 F. Supp. 3d 1363 (Ct. Int'l Tr. 2023); *Second Nature Designs Inc. v. United States*, 586 F. Supp. 3d 1334 (Ct. Int'l Tr. 2022); *Cyber Power Systems (USA) Inc v. United States,* 586 F. Supp. 3d 1325 (Ct. Int'l Tr. 2022). This leaves 19 U.S.C. § 1592(d) as the only exception to the finality of liquidation under 19 U.S.C. § 1514(a). This Court must assiduously defend the requirements which Congress has prescribed for avoiding the statutory finality of liquidation.

The government's attempt to impose vicarious liability on Katana under 19 U.S.C. § 1592(d) for unspecified violations of § 1592(a) fundamentally undermines the principle of finality established by 19 U.S.C. § 1514(a), which is essential for the efficient conduct of commerce and for maintaining the integrity of the administrative process. Pursuing vicarious liability under § 1592(d) for actions potentially unrelated to or not directly committed by Katana contradicts the certainty and finality intended by § 1514(a). Vicarious liability, particularly when based on unspecified violations, creates an environment of uncertainty and potentially subjects importers to penalties for actions beyond their control or for which they may not have direct knowledge.

Allowing the government to pursue liability against Katana for unspecified violations after liquidation has been finalized without clear evidence of Katana's direct involvement or negligence defeats the purpose of § 1514(a) because it introduces significant elements of unpredictability and retroactivity, which are wholly contrary to the legal certainty Congress aimed to provide in the Tariff Act of 1930, as amended.

## **CONCLUSION**

For the reasons set forth herein, Defendant requests that this Court grant Defendant's motion to dismiss this action, with prejudice, deny Plaintiff's "Cross-Motion for Summary Judgment" and dismiss this action. Defendant further requests that the Court grant Defendant with such other and further relief as may appropriate, including an awards of attorney's fees and costs.

Respectfully submitted,

NEVILLE PETERSON LLP

/s/ John M. Peterson
John M. Peterson
Richard F. O'Neill
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated:  February 23, 2024

36

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. THOMAS J. AQUILINO, SENIOR JUDGE**

-------------------------------------------------------------------- X

UNITED STATES,                                      :

                 Plaintiff,                   :

        v.                                      :

KATANA RACING, INC. d/b/a WHEEL & TIRE    :      **No. 19-cv-00125**
DISTRIBUTORS,                               :

              Defendant.                   :

-------------------------------------------------------------- X

## <u>CERTIFICATE OF COMPLIANCE</u>

       Pursuant to the U.S. Court of International Trade Standard Chambers Procedures, and in

reliance upon the word count feature of the word processing program used to prepare the instant

Memorandum, I, Richard F. O'Neill, of Neville Peterson LLP, who is responsible for the instant

Memorandum, certify that it contains 12,309 words.

                                 Respectfully submitted,

                                 /s/ Richard F. O'Neill_____
                                   Richard F. O'Neill