**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE THOMAS J. AQUILINO, JUDGE**

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 19-cv-00125-TJA |
| | ) | |
| KATANA RACING, INC., *doing business as* | ) | |
| Wheel & Tire Distributors, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF CROSS MOTION FOR
PARTIAL SUMMARY JUDGMENT**

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

TARA K HOGAN
Assistant Director

EMMA E. BOND
Trial Attorney
U.S. Department of Justice
Commercial Litigation Branch - Civil
Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Tel: (202) 305-2034

March 15, 2024                    *Attorneys for Plaintiff United States*

## **TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ................................................................................................... 1

I.      Katana Failed To Controvert Material Facts Supporting The United States' Cross Motion ......................................................................................... 2

II.    Katana Has Not Demonstrated Entitlement To Defer Deciding The Cross Motion Pursuant To Rule 56(d) ............................................................... 6

III.   Katana Fails To Counter The United States' Showing Of Entitlement To Summary Judgment On Liability And Quantum Of Unpaid Duties Pursuant To 19 U.S.C. § 1592(d) .......................................................................... 7

     A.    Katana Is The Importer Of Record For All 386 Entries ............................ 8

     B.    The 386 Entries Were Entered By Means Of Material And False Statements, Resulting In $5,742,483.80 In Unpaid Duties ....................... 12

     C.    Katana Fails To Provide Any Evidence Showing It Satisfied The Duty Of Care, Requiring Summary Judgment In The United States' Favor ............................................................................................... 14

IV.   Katana Has Not Provided Admissible Evidence Disputing That The United States Timely Filed The Lawsuit ........................................................... 18

CONCLUSION ..................................................................................................... 20

**TABLE OF AUTHORITIES**

**CASES**                                                                                                  **PAGE(S)**

*Aireko Constr., LLC. v. United States,*
   547 F. Supp. 3d 1350 (Ct. Int'l Trade 2021)..................................................................6

*Anderson v. Liberty Lobby, Inc*.,
   477 U.S. 242 (1986) ....................................................................................................2, 5

*First Nat. Bank of Ariz. v. Cities Serv. Co*.,
   391 U.S. 253 (1968) ........................................................................................................5

*Heng Ngai Jewelry, Inc. v. United States,*
   318 F. Supp. 2d 1291 (Ct. Int'l Trade 2004)................................................................11

*Int'l Custom Prod., Inc. v. United States,*
   791 F.3d 1329 (Fed. Cir. 2015)....................................................................................17

*Macclenny Prod. v. United States,*
   963 F. Supp. 2d 1348 (Ct. Int'l Trade 2014)..................................................................5

*NEC Corp. v. United States,*
   151 F.3d 1361 (Fed. Cir. 1998)....................................................................................17

*Simmons Oil Corp. v. Tesoro Petroleum Corp.,*
   86 F.3d 1138 (Fed. Cir. 1996)........................................................................................7

*United States v. Aegis Sec. Ins. Co*.,
   422 F. Supp. 3d 1328 (Ct. Int'l Trade 2019)................................................................16

*United States v. Blum*,
   858 F.2d 1566 (Fed. Cir. 1988)....................................................................................16

*United States v. Deladiep, Inc.,*
   255 F. Supp. 3d 1326 (Ct. Int'l Trade 2017)................................................................14

*United States v. Ford Motor Co.,*
   463 F.3d 1267 (Fed. Cir. 2006)....................................................................................14

*United States v. Great Am. Ins. Co. of New York*,
   229 F. Supp. 3d 1306 (Ct. Int'l Trade 2017)..............................................................2, 6

*United States v. Katana Racing, Inc.,*
   569 F. Supp. 3d 1296 (Ct. Int'l Tr. 2022) *rev'd*,
   75 F.4th 1346 (Fed. Cir. 2023)......................................................................................8

*United States v. Optrex Am., Inc.*,
    560 F. Supp. 2d 1326 (Ct. Int'l Trade 2008).........................................................14

*United States v. Pan Pac. Textile Grp., Inc.*,
    395 F. Supp. 2d 1244 (Ct. Int'l Trade 2005).........................................................16

*United States v. Univar USA, Inc.*,
    195 F. Supp. 3d 1312 (Ct. Int'l Trade 2016)...........................................................7

*United States v. Wanxiang Am. Corp.*,
    654 F. Supp. 3d 1279 (Ct. Int'l Trade 2023)...........................................................7

**STATUTES**

19 U.S.C. § 1484..............................................................................................12, 15

19 U.S.C. § 1484(a).................................................................................................16

19 U.S.C. § 1484(a)(1)....................................................................................passim

19 U.S.C. § 1484(a)(2)(B)........................................................................................9

19 U.S.C. § 1592(a).........................................................................................passim

19 U.S.C. § 1592(c)(4).............................................................................................10

19 U.S.C. § 1592(d)......................................................................................7, 15, 18

19 U.S.C. § 1592(e)(4).............................................................................................14

19 U.S.C. § 1618......................................................................................................19

**REGULATIONS**

19 C.F.R. § 141.1........................................................................................10, 11, 16

19 C.F.R. § 141.32.....................................................................................................9

19 C.F.R. § 171...................................................................................................11, 14

**RULES**

Fed. R. Evid. 801(c)...............................................................................................4, 5

Fed. R. Evid. 801(d)(2)..............................................................................................3

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE THOMAS J. AQUILINO, JUDGE**

| | |
|---|---|
| UNITED STATES,      ) | |
|         ) | |
|        Plaintiff,    ) | |
|         ) | |
|      v.        ) | Court No. 19-cv-00125-TJA |
|         ) | |
| KATANA RACING, INC., *doing business as* ) | |
| Wheel & Tire Distributors,    ) | |
|         ) | |
|        Defendant.   ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF**
**CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

<u>INTRODUCTION</u>

At the summary judgment stage, parties must support any material facts or disputes with evidence that would be admissible at trial. In its cross motion for partial summary judgment, the United States presented evidence demonstrating that: (1) Katana is the importer of record for the 386 entries at issue, and (2) Katana negligently entered the merchandise by material and false statements, resulting in $5,742,483.80 in unpaid duties. In response, Katana failed to submit evidence that would be admissible at trial to rebut these points. Katana did not submit any affidavit or declaration made under penalty of perjury. Instead, Katana primarily relies on statements it made to CBP, but those statements are hearsay that would not be admissible at trial and, thus, do not establish any dispute of material fact.

Katana nonetheless argues that it was not the importer of record for the 386 entries and instead was the victim of identity theft. But as demonstrated in our cross motion, Katana satisfies all requirements of an importer of record. Not only is Katana listed on the entries as the

importer of record, but it is the U.S. purchaser of the relevant merchandise and signed powers of attorney allowing customs brokers to enter the merchandise on its behalf. Katana has provided no evidence that would be admissible at trial to controvert these facts.

Because the United States has demonstrated entitlement to summary judgment on liability and quantum of unpaid duties—and because Katana has failed to dispute this showing—we respectfully request that the Court grant the cross motion for partial summary judgment.[1]

I.    <u>Katana Failed To Controvert Material Facts Supporting The United States' Cross Motion</u>

As an initial matter, Katana failed to submit admissible evidence to controvert the material facts established in the United States' cross motion. The summary judgment posture presents a threshold opportunity to determine "whether there is a need for a trial"—in other words, whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also* Ct. Int'l Trade R. 56(c). To determine whether there is a need for trial, the party seeking summary judgment must support each proposed undisputed fact with evidence. *See* R. Ct. Int'l Trade 56.3(c). Similarly, to controvert any proposed fact, the party opposing summary judgment must provide "citation to evidence which would be admissible." *Id.* "If a party fails to properly . . . address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." *United States v. Great Am. Ins. Co. of New York*, 229 F. Supp. 3d 1306, 1310 (Ct. Int'l Trade 2017) (citing Ct. Int'l Trade Rule 56(e)(2)).

---

[1] As previously discussed, prejudgment interest would be the only remaining matter to be resolved if the Court grants the cross motion. Pl. Cross Mot. at 1, ECF 46.

Consistent with these rules, the United States submitted evidentiary support for each element of an unpaid duty claim based on a negligent violation of 19 U.S.C. § 1592(a). *See* Pl. 56.3 Statement of Material Facts (Pl. SMF), ECF No. 46-2; *see also* Conf. Appendix, ECF No. 47, Public Appendix, ECF No. 48 (cited as Appx__). In support of its motion, the United States submitted sworn declarations from U.S. Customs and Border Protection (Customs or CBP) employees, including auditor Denise Andren and Assistant Center Director Judy Staudt. Appx1-8 (declaration of Ms. Andren); Appx9-10084 (attachments to Ms. Andren's declaration); Appx10085-10087 (declaration of Ms. Staudt); Appx10088-10089 (attachments to Ms. Staudt's declaration). Ms. Andren's declaration demonstrated that Katana is the importer of record for the 386 entries at issue, which were entered by means of material and false statements, resulting in $5,742,483.80 in unpaid duties. Appx1-8; Pl. SMF at ¶¶ 6, 26-31, 41-43, 54. Ms. Staudt's declaration contained additional evidence supporting Katana's status as the importer of record. Appx10087.

Katana's statements to CBP—admissible as a statement of a party opponent, Fed. R. Evid. 801(d)(2)—provide further evidence demonstrating its liability for the unpaid duties. According to its own statements, Katana provided powers of attorneys to customs brokers allowing entries to be made "on Katana's behalf." *See, e.g.*, Appx22 (Katana Aug. 31, 2013 Suppl. Claimed Prior Disclosure) (Katana stating that it "provided Powers of Attorney to several Customhouse brokers"); Appx28-115 (Katana letters to customs brokers that made entry "on Katana's behalf"); Katana Comments on Quick Response Audit, ECF No. 12-3 at 22, 26 (Katana admitting it "provided Customs powers of attorney" as its suppliers requested). Katana also confirmed the presence of material and false statements in the entry documentation by admitting that "{f}alse statements were made" to CBP, and that "loss of revenue result{ed} from errors

made on the entries in question." Appx20, Appx23 (Katana Aug. 31, 2013 Supp. Claimed Prior Disclosure). Finally, Katana's submissions to CBP reflect Katana's failure to exercise reasonable care to ensure accuracy in the entry documentation. Far from ensuring such accuracy, Katana failed to even obtain copies of the entry documents for its purchased merchandise until after submitting the claimed prior disclosure. *See* Appx22 (Andren Decl. Ex. 4, Aug. 31, 2013 Supplemental Claimed Prior Disclosure).

In opposition, Katana denies that it was the importer of record, and further denies that the entries were made on its behalf. Def. SMF Resp. at ¶¶ 28, 29. But Katana fails to provide any evidentiary support for these claims that would be admissible in Court. Katana presents no declaration or affidavit under penalty of perjury from any current or former officer of Katana. Instead, Katana attempts to rely on its own statements made to CBP, which, when offered by Katana to prove the truth of the matter, are inadmissible hearsay. *See* Fed. R. Evid. 801(c).

For example, rather than offering evidence that would be admissible at trial, Katana "{a}vers" that it did not "directly or indirectly, issue Customs Powers of Attorney to the majority of Customs brokers who filed the entries in question." Def. SMF Resp. ¶ 29(d). Aver means "{t}o assert positively, esp. in a pleading; to allege." Aver, Black's Law Dictionary (11th ed. 2019). Katana does not provide any declaration or affidavit to support this allegation.

At the end of the same paragraph, Katana cites a number of documents, none of which constitute admissible evidence supporting the asserted fact regarding powers of attorney. *Id.* (citing Prior Disclosure of July 23, 2012, ECF 12-3 at 2-3; Katana Racing Quick Response Audit Report, ECF 12-3 at 17; Katana Letter of March 22, 2016, ECF 12-3 at 182; Katana Response to Duty Demand of June 26, 2019, ECF 12-3 at 212, 221, 232; Katana Letter of July 2, 2019, ECF 12-3 at 416). Specifically, Katana cites its own statements to CBP in: (1) the claimed prior

4

disclosure, (2) comments on the quick response audit report, (3) the letter to Assistant Port Director Garcia, and (4) the response to the duty demand. *Id.* None of these statements are affidavits or declarations made under the penalty of perjury. When submitted for the truth of the matter, each of these out-of-court statements is hearsay that would not be admissible at trial. Fed. R. Evid. 801(c). Thus, Katana has failed to support its allegations with admissible evidence.[2]

Katana nonetheless argues that if the case "proceed{s} to trial, Katana will produce evidence, both direct and circumstantial," to support the contention that its "identity was stolen." Def. Resp. at 28. In making this argument, Katana misunderstands its obligation at the summary judgment stage. Once a party has presented a "properly supported motion for summary judgment"—as the United States has here—the nonmovant cannot "rest on his allegations" to reach a jury "without 'any significant probative evidence tending to support the complaint.'" *Anderson*, 477 U.S. at 249–50 (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)). Katana is not entitled to present its arguments to a factfinder without first demonstrating a genuine dispute of fact through evidence that could be admissible at trial. *See* R. Ct. Int'l Trade 56.3(c). "{W}here a motion for summary judgment is filed and properly supported, an adverse party may not rest upon mere denials to defeat it." *Macclenny Prod. v. United States*, 963 F. Supp. 2d 1348, 1358 (Ct. Int'l Trade 2014). Instead, Katana must "cit{e} to particular parts of materials in the record" to establish the "presence of a genuine dispute" warranting trial. Ct. Int'l Trade R. 56(c).

---

[2] Further, any claim that Katana did not provide powers of attorney to the majority of customs brokers conflicts with Katana's letters to the relevant customs brokers admitting that the entries were made "on Katana's behalf." Att. C, Aug. 31, 2013 Ltr., ECF No. 12-3 at 65-149; Appx28-115 (Andren Decl. Ex. 4-1).

Having failed to provide such evidence, Katana has not controverted the material facts presented in our motion. For example, this Court has previously considered a summary judgment movant's statement of facts "undisputed for the purpose" of the motion when the other party failed to respond to the statement of facts. *Aireko Constr., LLC. v. United States*, 547 F. Supp. 3d 1350, 1352 n.3 (Ct. Int'l Trade 2021). In another case, this Court held there was "no genuine dispute" on a factual point when the nonmovant failed to provide evidence in support of its conjecture. *United States v. Great Am. Ins. Co. of New York*, 229 F. Supp. 3d 1306, 1315 (Ct. Int'l Trade 2017). In this case, likewise, the Court should consider the United States' proposed facts as undisputed for purposes of the cross motion for partial summary judgment. *See Great Am. Ins. Co. of New York*, 229 F. Supp. 3d at 1310 (citing Ct. Int'l Trade Rule 56(e)(2)).

II.    Katana Has Not Demonstrated Entitlement To Defer Deciding The Cross Motion Pursuant To Rule 56(d)

In opposing the cross motion for partial summary judgment, Katana complains that the United States cross-moved for summary judgment before discovery has commenced. Def. Resp. at 23-27. Yet, Katana's argument on this point contradicts its own actions in this case—filing a motion for summary judgment before discovery commenced. *See* Katana Combined Mot. to Dismiss and Mot. for Summ. J., ECF No. 40 (Nov. 14, 2023). Indeed, the United States requested entry of a scheduling order to govern further proceedings in the case, including discovery, Pl. Mot., ECF 39 (Oct. 24, 2023), but Katana opposed the motion as "premature" given its pending motion to dismiss and motion for summary judgment, *see* Def. Resp., ECF 41 (Nov. 14, 2023) (citing Katana Combined Mot. to Dismiss and Mot. for Summ. J., ECF No. 40 (Nov. 14, 2023)).

Despite opposing discovery and filing a pre-discovery motion for summary judgment, Katana now claims that "summary judgment without discovery is not appropriate." Def. Resp. at

23 (capitalization altered). That is not an accurate statement of the law. Instead, pursuant to Rule 56(d) of this Court's rules, a party may ask the Court to defer or deny a motion for summary judgment because "it cannot present facts essential to justify its opposition." *United States v. Univar USA, Inc.*, 195 F. Supp. 3d 1312, 1317 (Ct. Int'l Trade 2016) (citing, *e.g.*, Ct. Int'l Trade R. 56(d)). However, "the party requesting relief pursuant to Rule 56(d) must 'state with some precision the materials it hopes to obtain with further discovery, and exactly how it expects those materials would help it in opposing summary judgment.'" *Id.* (quoting *Simmons Oil Corp. v. Tesoro Petroleum Corp.,* 86 F.3d 1138, 1144 (Fed. Cir. 1996)) (cleaned up). Pursuant to Rule 56(d), the Court may "defer" or deny a summary judgment motion "{i}f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." R. Ct. Int'l Trade 56(d). Thus, a party seeking to defer or delay consideration of a motion for summary judgment must justify its need for discovery by presenting an "affidavit or declaration" detailing "specified reasons" for requiring discovery. *Id.*

Katana has failed to comply with the Rule 56(d) standard. Katana has presented no "affidavit or declaration" on any topic. *See* R. Ct. Int'l Trade 56(d). Nor has it provided any "specified reasons" for requiring discovery to respond to any portion of the cross motion. *See id.* Thus, Katana has not demonstrated entitlement to defer or delay consideration of our cross motion pursuant to Rule 56(d).

III.   Katana Fails To Counter The United States' Showing Of Entitlement To Summary
       <u>Judgment On Liability And Quantum Of Unpaid Duties Pursuant To 19 U.S.C. § 1592(d)</u>

The United States' cross motion establishes every element of an unpaid duty claim pursuant to 19 U.S.C. § 1592(d). First, the cross motion demonstrates that Katana is the importer of record for all 386 entries, and, thus, the party traditionally liable for payment of duties. Second, the cross motion demonstrates each element of a claim pursuant to 19 U.S.C. § 1592(a),

namely, (1) the act, (2) materiality, (3) falsity, and (4) culpability.  *United States v. Wanxiang Am. Corp*., 654 F. Supp. 3d 1279 (Ct. Int'l Trade 2023).  Specifically, Katana's merchandise was entered by means of material and false statements in the 386 entries, resulting in $5,742,483.80 in unpaid duties.  As to culpability, the false statements resulted from Katana's negligence in ensuring accurate entry documentation.  Finally, the cross motion demonstrates that the case was timely filed.  In response, Katana fails to controvert the material facts supporting summary judgment or to provide any legal basis to deny summary judgment on the facts presented.  *See generally* Def. Opp. to Summ. J., ECF No. 49 (Def. Opp.).

A.    <u>Katana Is The Importer Of Record For All 386 Entries</u>

As demonstrated in our statement of material facts, Katana is the importer of record for the 386 entries at issue.  Pl. SMF at ¶ 28 (citing Appx5-8) (Andren Decl. ¶¶ 18-28); *see also id.* at ¶¶ 26-29, 38, 41, 43 (citing, *e.g.*, Appx5, Appx22, Appx28-115).  Katana's arguments to the contrary are unpersuasive.

First, Katana relies on this Court's statement in its prior decision that "merely stating that the defendant was the 'importer of record' does not suffice in the circumstances of this action." Def. Opp. at 24 (quoting *United States v. Katana Racing, Inc.*, 569 F. Supp. 3d 1296, 1314 (Ct. Int'l Tr. 2022), *rev'd*, 75 F.4th 1346 (Fed. Cir. 2023)).  But Katana cannot rely on findings of fact made in the prior opinion, which was reversed by the Federal Circuit.  *United States v. Katana Racing, Inc.*, 75 F.4th 1346 (Fed. Cir. 2023).[3]  Instead, at the summary judgment posture,

_____

[3]  The Federal Circuit explained that the timeliness defense forming the basis for this Court's dismissal was not jurisdictional.  *Katana*, 75 F.4th at 1353.  Thus, rather than considering timeliness at the 12(b)(1) posture—in which factual findings are permitted to assess disputed jurisdictional facts, *Reynolds v. Army & Air Force Exch. Serv*., 846 F.2d 746, 747 (Fed. Cir. 1988)—timeliness must be considered at the Rule 12(b)(6) posture, in which all well-pleaded allegations in the complaint must be taken as true, *Bell Atl. Corp. v. Twombly*, 550 U.S.

Katana must present evidence that would be admissible at trial disputing its status as the importer of record. *See* Ct. Int'l Trade R. 56.3(c); Section I. This, Katana has not done.

Second, Katana contends that there are "genuine issues of material fact concerning the Defendant's claims of identity theft and its lack of authorization for the merchandise to be entered in its name as importer of record." Def. Opp. at 24. But Katana has not controverted with specificity any of the legal and factual arguments demonstrating that Katana is the importer of record.

For example, Katana does not dispute the relevant law defining the importer of record as a party "who is eligible to file" entry documentation, including "the owner or purchaser of the merchandise." 19 U.S.C. § 1484(a)(2)(B). As demonstrated in our filing and not disputed in the opposition, Katana was the United States purchaser for the merchandise in all 386 entries and paid its Chinese suppliers for the merchandise. Pl. SMF ¶¶ 26-27; *see also* Pl. Cross Mot. for Summ. J. at 21, ECF No. 46 (Pl. Cross Mot.); Def. Rule 56.3 Resp. ¶ 26, ECF No. 49-1 (Def. Resp. SMF).

Nor does Katana dispute that the importer of record may enter the merchandise "either in person or by an agent authorized by the party in writing," 19 U.S.C. § 1484(a)(1), including through CBP Form 5291 powers of attorney, 19 C.F.R. § 141.32. As demonstrated in our motion, Katana used customs brokers as agents to facilitate the subject 386 entries. *See, e.g.*, Pl. SMF ¶ 29.[4] Katana admits providing "Customs powers of attorney to certain brokers who it

---

544, 556 (2007). Accordingly, the factual findings in the Court's prior opinion were reversed by the Federal Circuit's decision. *Katana*, 75 F.4th at 1353.

[4] For example, the entry summary for entry number DZ1-31531839 reflects Katana as the "Importer of Record," with EWI, Inc. as the broker completing the required declaration as Katana's "agent." See Appx459. Katana, in turn, provided a power of attorney to EWI, Inc., as reflected in the record. Appx224-226.

authorized to make entry for the company," and further "{a}dmits sending letters to many Customs brokers{.}"  Def. Opp. at ¶ 29(a), (b).  Nevertheless, Katana "{d}enies that the entries were made on Katana's behalf," and "{a}vers" that it did not issue powers of attorney to "the majority of Customs brokers who field the entries in question."  Def. Resp. SMF at 29(c), (d). But Katana fails to provide admissible evidence in support of this denial—which, in any event, contradicts Katana's letters to the Customs brokers admitting that the entries were made "on Katana's behalf."  Pl. SMF ¶ 29; Appx28-115 (Andren Decl. Ex. 4-1).  Indeed, Katana provided "Powers of Attorney" to customhouse brokers, Pl. SMF ¶ 29, and sent letters to the "the Customs brokers listed as having filed entries," stating that the entries were made on Katana's behalf. Pl. SMF ¶¶ 29, 43.

Katana also admits that it filed a claimed prior disclosure associated with errors in the entry documentation for importation of certain passenger vehicle and light truck tires.  Def. Resp. SMF at ¶¶ 32, 40.  This filing supports Katana's status as importer of record.  By statute, prior disclosures may be filed by "the person concerned" with a violation of section 1592(a). 19 U.S.C. § 1592(c)(4).  As the importer of record, Katana was "the person concerned" with the unpaid duties on the subject entries, *see id*., given that import duties are a "personal debt" of the importer of record, 19 C.F.R. § 141.1.  Thus, Katana's conduct in submitting a claimed prior disclosure relating to "entries made in {its} name during the period 2009-2011," provides further support confirming Katana's status as importer of record.  Pl. SMF ¶ 40.

Katana's unsupported statements regarding identity theft are insufficient to demonstrate a genuine factual dispute at summary judgment.  Katana fails to explain what it means by so-called "identity theft," instead claiming generally that its "name and identity were stolen by others who caused false statements to be filed with CBP."  Def. Opp. at 24 n.21.  But not only did Katana

offer no admissible evidence to support this assertion, it is controverted by evidence that Katana purchased the merchandise and signed powers of attorney allowing customs brokers to enter the merchandise on its behalf.  *See, e.g.*, Pl. SMF ¶¶ 26-29, 43.

Katana's unsupported claim that its importer of record number was used without its knowledge also conflicts with evidence from Katana's and CBP's records.  For example, in an email copying Katana, one of the brokers who filed entry documents on Katana's behalf explained that "Wheels and Tires" (Katana's doing business name) "wants us to do the customs clearance," and "has {the} authority to choose the broker because *they are the importer of record* and liable to customs and it's their bond." Appx260 (emphasis added); Appx7-8 (Andren Decl. ¶ 28) (emphasis added).  Further, as early as 2010 and 2011, Katana received requests for information and notices of action from CBP for multiple entries made by the brokers that Katana now claims were acting without authorization.  Appx6-7 (Andren Decl. ¶¶ 23-24, 26-27).  Katana's receipt of such entry-specific documentation in 2010 and 2011 undermines Katana's claimed lack of knowledge that its brokers were using its importer of record number.  *See* Appx6-7 (Andren Decl. ¶¶ 23-24, 26-27).  Katana was also on notice that its bond was being used to enter merchandise into the United States, following multiple demands in 2011 and 2012 for Katana to increase the continuous bond that it used to import merchandise.  Appx10085-10089 (Staudt Decl. & Exs. A, B).  In its opposition, Katana fails to respond to any of these pieces of evidence, which are fatal to its (unsupported) claims that its importer of record number was used without its knowledge.

Katana further claims that recognizing Katana's status as importer of record would open the door to "any Customs case involving identity theft."  Def. Opp. at 31.  But the reasoning in this case simply applies to an importer of record that is the U.S. purchaser of the relevant

merchandise and that authorized customs brokers to enter merchandise on its behalf—in other words, a textbook example of an importer of record. *See* Pl. SMF ¶¶ 26-29, 43; 19 U.S.C. § 1484(a)(1), (2)(B). Such importers of record are free to choose their business partners and contractual arrangements. However, in doing so, importers of record remain obligated to exercise reasonable care in ensuring accuracy in the entry documentation, *see* 19 U.S.C. § 1484(a)(1), (2)(B); 19 C.F.R. pt. 171 app. B(D)(6), and remain liable for duties owed on the merchandise they import, 19 C.F.R. § 141.1; *Heng Ngai Jewelry, Inc. v. United States*, 318 F. Supp. 2d 1291, 1301 (Ct. Int'l Trade 2004) (citing 19 U.S.C. § 1484 (1999)).

Finally, even assuming that Katana's brokers or suppliers (and not Katana) submitted false invoices and entry documentation to CBP, that fact would not alter Katana's status as importer of record. Indeed, the governing statute, 19 U.S.C. § 1484, contemplates that importers of record will "make entry" either "in person or by an agent authorized by the party in writing." 19 U.S.C. § 1484(a)(1). That is precisely what occurred in this case, in which Katana authorized customs brokers to enter merchandise on its behalf. Pl. SMF ¶¶ 28-29, 43. Thus, even assuming that the actual entry documentation was submitted by customs brokers and not by Katana, that does not alter Katana's status—and resulting responsibility to exercise reasonable care—as the importer of record. *See* 19 U.S.C. § 1484(a)(1).

B.    The 386 Entries Were Entered By Means Of Material And False Statements, Resulting In $5,742,483.80 In Unpaid Duties

Our cross motion demonstrates that the 386 entries were entered by means of material and false statements resulting in $5,742,483.80 in unpaid duties. Pl. SMF at ¶¶ 6, 30, 31, 42, 54. In response, Katana fails to present admissible evidence disputing any of these points.

For example, Katana fails to present admissible evidence disputing that the merchandise in the 386 entries were entered by means of material and false statements. *See, e.g.*, Def. Resp.

SMF at ¶ 30.  Katana states that it "denies" that "{t}he entry summaries for the 386 entries that Katana entered as the importer of record from September 26, 2009, to September 26, 2012, contained false statements that resulted in the undervaluation of duties to the United States." Def. Resp. SMF ¶ 30 (citing Katana Racing Quick Response Audit Report, ECF 12-3 at 19, 22; Customs Letter of Feb. 12 2016, ECF 12-3 at 177; Customs Duty Demand of June 20, 2019, ECF 12-3 at 198); *see also* Pl. SMF ¶ 30 (citing Appx3-4, Appx8 (Andren Decl. ¶¶ 13, 29- 30) (citing Appx452-10084, Ex. 16)).  In fact, however, Katana merely equivocates regarding the specific type of falsity that resulted in the underpayment of duties.  Specifically, Katana avers "that some entries appear to have undervalued the goods, others appear to have misclassified the goods, and others appeared to have contained inaccurate descriptions of the goods in order to avoid deposit of safeguard duties."  Def. Resp. SMF ¶ 30.  But undervaluation, misclassification, and inaccurate description of goods "to avoid . . . duties" are all different types of material and false statements.  *See id.*  Katana thus fails to controvert the key point:  that the entry documentation for the 386 entries contains material and false statements resulting in the underpayment of duties.

Katana's concession on this point is consistent with its prior statement that "the commercial invoices presented to Customs with the entry documents were materially different" than the invoices sent to Katana.  Pl. SMF ¶ 42.  Indeed, Katana notified CBP that the entry documentation undervalued the merchandise "resulting in underpayment of duties."  *Id.* Accordingly, there is no dispute regarding the presence of material and false statements in the entry documentation for the 386 entries.

Nor does Katana present evidence disputing the quantum of unpaid duties resulting from the false statements, totaling $5,742,483.80.  *See, e.g.*, Def. Resp. SMF at ¶ 31.  In our motion,

we demonstrated that "{t}he discrepancies between the amount paid by Katana and the amount reported on the entry summaries resulted in a total loss of revenue of {$}5,742,483.80." Pl. SMF ¶ 31 (citing Appx3-5, 8 (Andren Decl. ¶¶ 12-13, 17, 29-30) (citing Appx191-201, Appx207-215, Appx452-10084 (Andren Decl., Exs. 9, 9-1, 12, 12-1, 16)). In response, Katana again "{a}vers that some of this loss of revenue was based on undervaluation, some was based on misclassification, and some was based on misdescription of tires." *Id.* But Katana's averments are irrelevant to the quantum of the unpaid duties and present no admissible evidence controverting the amount of unpaid duties. Thus, there is no triable issue of fact on this point and the United States is entitled to summary judgment.

C.     Katana Fails To Provide Any Evidence Showing It Satisfied The Duty Of Care, Requiring Summary Judgment In The United States' Favor

Katana also fails to present admissible evidence to create a genuine dispute of fact on the final element for a 19 U.S.C. § 1592(a) claim—culpability. The United States satisfied its burden to demonstrate loss of duty from false statements in the entry documentation, thereby making out a prima facie case of statutory negligence. 19 U.S.C. § 1592(e)(4); *United States v. Deladiep, Inc*., 255 F. Supp. 3d 1326, 1338-1339 (Ct. Int'l Trade 2017); *United States v. Ford Motor Co*., 463 F.3d 1267, 1279 (Fed. Cir. 2006). Once the United States establishes that "a materially false statement or omission occurred," the burden shifts to Katana "to demonstrate lack of negligence." 19 U.S.C. § 1592(e)(4).

In response, Katana presents no evidence that it acted with reasonable care. Katana does not dispute that importers of record are required to act with reasonable care in entering merchandise, including providing a "classification and value for the merchandise" and "furnishing information sufficient to permit Customs to determine the final classification and valuation of merchandise." 19 C.F.R. pt. 171 app. B(D)(6); *see also United States v. Optrex*

14

*Am., Inc.*, 560 F. Supp. 2d 1326, 1335–36 (Ct. Int'l Trade 2008) (citing H. Rep. No. 103–361 at 120–21, reprinted in 1993 U.S.C.C.A.N. 2552, 2670–71 (1993)) (discussing the reasonable care standard). Despite having the opportunity to present declarations or affidavits describing measures taken to demonstrate reasonable care, Katana failed to do so.

The United States' cross motion further demonstrates that Katana acted negligently by providing powers of attorney to enable customs brokers to enter merchandise in its name, then accepting the imported merchandise without confirming the accuracy of entry documentation. Pl. Cross Mot. at 27-28. Katana did not request entry records from its customs brokers until after entries had been made. Appx22 (Andren Decl. Ex. 4, Aug. 31, 2013 Supplemental Claimed Prior Disclosure); *see also* Pl. SMF ¶ 42. Once Katana took that step, moreover, "it immediately became clear to Katana that the commercial invoices presented to Customs with the entry documents were materially different from the {duty delivery paid} invoices which had been sent to Katana." Appx22; *see also* Pl. SMF ¶ 42. Katana does not present any admissible evidence controverting these facts. *See* Def. Resp. SMF ¶ 42.

Katana argues that "the government is required to demonstrate the identity of person(s) who provided false statements to Customs." Def. Opp. at 31.[5] That is not accurate. Instead, as the importer of record, Katana negligently "enter{ed}" the 386 entries at issue by means of material and false entry documentation—thereby violating 19 U.S.C. § 1592(a). Katana cannot evade its responsibilities as importer of record by pointing the finger at its customs brokers or Chinese suppliers. The fact that Katana entered the merchandise "by an agent," *i.e.,* a customs

---

[5] Katana also cites a list of cases involving disputes regarding identity. Def. Opp. at 30-31 (citations omitted). These cases are not relevant because none involves 19 U.S.C. § 1592(a) or (d), and none undermines the evidence demonstrating that the United States has satisfied each element of a 19 U.S.C. § 1592(a) claim, entitling the United States to unpaid duties pursuant to 19 U.S.C. § 1592(d).

broker, is consistent with the system established in 19 U.S.C. § 1484, and does not add new

elements to establish a violation of 19 U.S.C. § 1592(a).[6]  Indeed, if Katana believed that one of

its business partners should be responsible for paying the unpaid duty liability, it could pursue a

third party complaint against its suppliers or customs brokers for indemnification, as defendants

have done in other cases.  Pl. Cross Mot. at 24 (citing *United States v. Aegis Sec. Ins. Co.*, 422 F.

Supp. 3d 1328, 1341 (Ct. Int'l Trade 2019)).  Katana has not done so.

Despite having failed to demonstrate the exercise of reasonable care, Katana nonetheless

argues that it should not be held responsible for the actions of "the person(s) actually responsible

for supplying false invoices and entry data to CBP."  Def. Opp. at 25; *see also id.* at 24 (arguing

that the Government's position amounts to "a theory of vicarious liability").  But importers of

record *are* traditionally liable for payment of unpaid duties, even if the section 1592(a) violation

was committed by another party.  *United States v. Blum*, 858 F.2d 1566, 1570 (Fed. Cir. 1988).

Duties are a personal debt of the importer of record. 19 C.F.R. § 141.1.  "{R}ather than force the

---

[6] Section 1484(a) provides, in relevant part:

(a) Requirement and time

(1) Except as provided in sections 1490, 1498, 1552, and 1553 of
this title, one of the parties qualifying as "importer of record"
under paragraph (2)(B), *either in person or by an agent*
authorized by the party in writing, shall, using reasonable care--

(A) *make entry* therefor . . .

(B) complete the entry, or substitute 1 or more reconfigured
entries on an import activity summary statement, by filing with
the Customs Service the declared value, classification and rate
of duty applicable to the merchandise, and such other
documentation or, pursuant to an electronic data interchange
system, such other information as is necessary to enable the
Customs Service to--(i) properly assess duties on the
merchandise{.}

19 U.S.C. § 1484(a) (emphases added).

government (as third party) to bear the loss resulting from unpaid duties, it is preferable to extend liability for unpaid duties to an innocent party who is nonetheless 'traditionally liable' for such payment." *United States v. Pan Pac. Textile Grp., Inc.*, 395 F. Supp. 2d 1244, 1254 (Ct. Int'l Trade 2005) (quoting *Blum*, 858 F.2d at 1570).  Further, in this case, Katana is not "an innocent party." *See id.*  Instead, Katana failed to exercise reasonable care as the importer of record, when importing millions of dollars in passenger vehicle and light truck tires from China. *See* 19 U.S.C. § 1484(a)(1); Pl. Cross Mot. at 24-29.  Thus, Katana's liability is based on its own negligent violation of 19 U.S.C. § 1592(a).  *See* Pl. Cross Mot. at 24-29.

Katana nonetheless argues that the alleged failure to "accus{e} Katana of specific acts or omissions" implicates "traditional notions of due process."  Def. Opp. at 29.  Again, this is incorrect.  Katana entered the merchandise through customs brokers and failed to exercise reasonable care to ensure accurate entry documentation.  *See* Pl. SMF ¶¶ 26-31, 42. "{E}ngaging in foreign commerce is not a fundamental right protected by notions of substantive due process."  *Int'l Custom Prod., Inc. v. United States*, 791 F.3d 1329, 1337 (Fed. Cir. 2015) (quoting *NEC Corp. v. United States*, 151 F.3d 1361, 1369 (Fed. Cir. 1998)).  Katana chose to enter into business relationships with its Chinese suppliers and customs brokers, chose to purchase the imported merchandise, and chose to provide powers of attorney to customs brokers to effect entry on its behalf.  *See* Pl. SMF ¶¶ 26-29.  In doing so, Katana acted as the importer of record and bound itself to the corresponding requirement of exercising reasonable care to ensure accuracy in the resulting entry documentation.  *See* 19 U.S.C. § 1484(a)(1).  Despite that obligation, Katana did not even attempt to confirm the accuracy of the entry documentation for its purchases until after it submitted the claimed prior disclosure.  Pl. SMF ¶ 42 (discussing steps

17

taken to review entry documentation as part of the supplemental claimed prior disclosure). There is no violation of due process in holding Katana liable for the resulting unpaid duties.

Katana next argues that the United States cannot succeed at summary judgment because of claimed inadequacies in the complaint. Def. Opp. at 28. Specifically, Katana argues that the complaint "does not squarely accuse Katana of having violated the statute." *Id.*; *see also id.* at 29 (arguing the complaint contains "a crucial lack of specificity regarding the party responsible"). Katana is wrong. The complaint plausibly alleges that Katana violated 19 U.S.C. § 1592(a) and is liable for duties pursuant to 19 U.S.C. § 1592(d). *See, e.g.*, Compl. ¶¶ 13-15; *see also* Pl. Cross Mot. at 7-19.[7] Further, Katana's argument on this point is irrelevant at the summary judgment posture, in which disputes are assessed based on the presence (or absence) of admissible evidence. *See, e.g.*, Ct. Int'l Trade R. 56, 56.3. Katana claims that the complaint "inescapably introduces issues of material fact that must be resolved before liability can be established." Def. Opp. at 30. But Rules 56 and 56.3 of this Court's rules establish a detailed set of procedures to controvert evidence presented at the summary judgment stage. *See* Ct. Int'l Trade R. 56, 56.3. Katana has failed to present any admissible evidence that could establish a triable issue of material fact. *See* Section I. Katana's resort to the adequacy of the complaint simply highlights Katana's failure to present admissible evidence that would controvert any of the material facts supporting summary judgment in favor of the United States.

---

[7] For example, the complaint alleges that "Katana did not exercise reasonable care to ensure that {the 386 entries at issue}, for which Katana is the importer of record, reflected accurate values of the merchandise, and thus Katana violated 19 U.S.C. § 1592(a)." Compl. ¶ 14. The complaint further alleged that the entry documentation contained material and false statements and that "Katana, as importer of record, caused the amount of safeguard duties, regular customs duties, Harbor Maintenance Fees, and Merchandise Processing Fees to be undercalculated by $5,742,483.80." Compl. ¶ 13.

IV.    Katana Has Not Provided Admissible Evidence Disputing That The United States Timely Filed The Lawsuit

The United States further demonstrated that its claim was timely filed within the period established by statute of limitations waivers that were knowingly and voluntarily signed by Katana.  Pl. Cross Mot. at 29-40.  Specifically, this action is timely because Katana executed three statute of limitations waivers, extending the statute of limitations to and including July 15, 2019, the same day that the complaint was filed.  Pl. SMF ¶¶ 46, 53, 56-58, 66.  Katana admits that it executed the first, second, and third statute of limitations waivers, but "{a}vers" that the third waiver was invalid.  Def. Resp. SMF ¶¶ 46, 53, 56.  Again, however, an averment or allegation is not cognizable at the summary judgment posture.  *See* Section I.

The only support cited by Katana for its claim that the third waiver is void is Katana's March 22, 2016 letter to Assistant Port Director Jorge Garcia—but that letter does not support Katana's claim.  Def. Resp. SMF ¶ 56-58.  The sole relevant portion of the March 22, 2016 letter states that Assistant Port Director Garcia indicated "that Customs will issue a Section 592(d) demand for the $5.7 million in controversy, and Katana will have a right to make presentations in response to that demand and in accordance with 19 U.S.C. § 1618."  *See* Letter of March 22, 2016, ECF 12-3 at 182.  Katana cannot show any affirmative misrepresentation based on this statement.  CBP issued a 1592(d) demand and Katana had the opportunity to respond to that demand before the United States filed suit.  *See* Pl. SMF ¶¶ 55, 61-65.  There was never any need for Katana to make presentations "in accordance with 19 U.S.C. § 1618," because section 1618 is limited to mitigation of *penalties*, and CBP ultimately did not impose any penalty in this case.  *See* Pl. SMF ¶ 65 (explaining that CBP did not issue any penalty); 19 U.S.C. § 1618 (titled "Remission or mitigation of penalties"); 19 C.F.R. Pt. 171, App. B (explaining that "{a} monetary penalty" may be mitigated under 19 U.S.C. § 1618).  Because Katana has failed to

present cognizable evidence that the statute of limitations waiver is void, there is no genuine

dispute of fact that the case was timely filed.

CONCLUSION

For these reasons, we respectfully request that the Court grant our cross motion for partial

summary judgment, awarding the United States $5,742,483.80 in unpaid duties.  We further

request that the Court allow the case to proceed regarding entitlement to prejudgment interest.

Respectfully Submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. McCARTHY
Director

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

/s/ Emma E. Bond
EMMA E. BOND
Trial Attorney
U.S. Department of Justice
Civil Division
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-2034
Email: Emma.E.Bond@usdoj.gov

March 15, 2024                          *Attorneys for Plaintiff*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Chambers Procedures 2(B)(1) and (2), I hereby certify that the attached

REPLY IN SUPPORT OF CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT

contains 6,317 words, according to the word-count function of the word processing system

used to prepare this brief (Microsoft Office for Microsoft 365).

Dated: March 15, 2024                             /s/ Emma E. Bond
                                                  Emma E. Bond

21