Slip Op. 24-100

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| UNITED STATES,<br><br>                    Plaintiff,<br><br>v.<br><br>KATANA RACING, INC. d/b/a WHEEL &<br>TIRE DISTRIBUTORS,<br><br>                    Defendant. | Before: Lisa W. Wang, Judge<br><br>Court No. 19-00125 |

### <u>OPINION AND ORDER</u>

[Defendant's motion to dismiss for failure to state a claim is denied. Defendant's motion for summary judgment in the alternative is denied. Plaintiff's motion for partial summary judgment is denied.]

Dated: September 9, 2024

<u>Emma Eaton Bond</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for the plaintiff.

<u>John M. Peterson</u>, Neville Peterson, LLP, of New York, NY, argued for defendant Katana Racing, Inc. With him on the brief were <u>Patrick Brady K</u>lein <u>and Richard F. O'Neill</u>.

        Wang, Judge: The government ("Plaintiff" or "government") seeks unpaid duties "stem[ming] from violations of 19 U.S.C. § 1592(a), with respect to 386 entries of certain passenger vehicle and light truck tires ('PVLT') from [the People's Republic of] China into the United States from November 24, 2009 through August 7, 2012" via "false statements" on entry forms filed with Plaintiff's U.S. Customs and Border Protection ("Customs"). Compl. ¶¶ 1, 13.

The Defendant, Katana Racing, Inc. ("Defendant" or "Katana") moves to dismiss Plaintiff's complaint for failure to state a claim pursuant to United States Court of International Trade ("CIT") Rule 12(b)(6), or in the alternative, to grant summary judgment pursuant to CIT Rule 56. Def.'s Renewed Mot. to Dismiss for Failure to State a Claim, Or in the Alternative, for Summ. J., Nov. 14, 2023, ECF No. 40 ("Def.'s Mot."). Plaintiff opposes the motion and, in its cross motion, moves for partial summary judgment. Pl.'s Cross Mot. for Partial Summ. J. and Opp. To Def.'s Combined Mot. to Dismiss and Mot. for Summ. J., ECF No. 46 ("Pl.'s Resp.").

With respect to Defendant's motion to dismiss, the issues before the court are whether the government's complaint: (1) fails to properly identify the person liable for a violation of 19 U.S.C. § 1592(a), and the level of culpability attributable to such person; (2) fails to allege exhaustion of available administrative remedies; (3) alleged claims barred by laches; and (4) alleges claims barred by the statute of limitations due to the government's purported affirmative misconduct in obtaining a statute of limitations waiver. In the alternative, Katana seeks a motion for summary judgment. Additionally, the court must determine whether Katana's motion in for summary judgement in the alternative or the government's partial motion for summary judgment are proper and justiciable at this stage of proceedings.

For reasons discussed herein, Defendant's motion to dismiss is denied; Defendant's motion for summary judgment in the alternative is denied; and Plaintiff's motion for partial summary judgment is denied.

## BACKGROUND

### I.    Case History Prior to This Suit

On July 15, 2019, the United States brought an action before the CIT against Katana Racing, Inc. to recover unpaid customs duties and fees pursuant to the Tariff Act of 1930, as amended, 19 U.S.C. § 1592(d), based on violations of 19 U.S.C. § 1592(a). Compl. ¶ 1. The government alleges that Katana, a California-based distributor of wheels and tires, was the importer of record for 386 entries of PVLT from China between November 24, 2009, and August 7, 2012. Id. ¶ 3. Throughout that time, Customs alleges that Katana undercalculated the amount of safeguard duties, regular customs duties, harbor maintenance fees, and merchandise processing fees it owed Customs by $5,742,483.80. Id. ¶ 13. After Customs conducted an audit and identified the unpaid duties amount, the parties remained in communication and Katana agreed to three waivers of the statute of limitations, the first of which was signed on May 15, 2014. Def.'s Mot. to Dismiss, ECF No. 12-3, Attached Exhibits. ("Def.'s Ex.") at 159–62. The third and final waiver, dated October 25, 2016, indicated that the statute of limitations would be waived "up to and including July 15, 2019." Compl. ¶ 4.

### II.    Case History at Initial United States Court of International Trade Appearance

The government filed suit for the unpaid duties on July 15, 2019. Compl. ¶ 1. On August 30, 2019, Katana moved to dismiss the action under CIT Rule 12(b)(6) for "failure to state a claim upon which relief can be granted" and under CIT Rule 12(b)(1) for lack of jurisdiction. United States v. Katana Racing, Inc. ("Katana I"), 569 F. Supp. 3d 1296, 1298 (CIT 2022). Katana asserted that "it had been the victim of a pervasive

Court No. 19-00125                                                        Page 4

scheme of . . . 'identity theft', as PRC vendors had engaged U.S. customs brokers to file

entries in Katana's name, without its knowledge or permission." <u>Id</u>. at 1302.

Katana's three main arguments were: (1) the government's complaint should be

dismissed under CIT Rule 12(b)(6) for failure to state a claim because Customs never

found a violation of 19 U.S.C. § 1592(a), which is a prerequisite to penalties under 19

U.S.C. § 1592(c) and assertion of unpaid duties under 19 U.S.C. § 1592(d); (2) the

government's complaint should be dismissed under CIT Rule 12(b)(6) because

Customs was required to exhaust administrative remedies set forth in 19 U.S.C. §

1592(b) prior to determining a violation of 19 U.S.C. § 1592(a); and (3) that the

government's suit was untimely and should be dismissed under CIT Rule 12(b)(1)

because Katana had revoked its final waiver of the statute of limitations due to Customs'

failure to undertake administrative proceedings to determine the validity of Katana's

identity theft claim. <u>Id</u>. at 1302–1308.

In its response, the government argued that: (1) Customs did not have to

establish a violation of 19 U.S.C. § 1592(a) prior to bringing suit to recover duties under

[§] 1592(d) , and need only allege a violation of § 1592(a) in its complaint; (2) Customs

did not have to exhaust administrative remedies because 19 U.S.C. § 1592(d) creates

an independent cause of action for unpaid duties without exhaustion of administrative

remedies; and (3) the suit was timely because Katana did not properly revoke its third

waiver of the statute of limitations, as the government did not promise administrative

proceedings in exchange for the waiver and Customs justifiably relied on that waiver. <u>Id</u>.

The court granted Katana's motion to dismiss on March 28, 2022. The court held that the suit was "barred by the passage of time" because the June 26, 2019 revocation of the third waiver of the statute of limitations was effective after Customs failed to meet its "promise" of providing administrative procedures. Id. at 1314. The court further held that the government could not bring suit against Katana solely as the importer of record, and instead was required to provide "precise reasons for holding a defendant 'responsible' for paying its § 1592(d) duty demand in its complaint." Id.

### III.    Case History at Appeal

The government appealed to the United States Court of Appeals for the Federal Circuit ("Federal Circuit") on May 25, 2022, and contended "that the Court of International Trade erroneously dismissed its suit for lack of jurisdiction pursuant to CIT Rule 12(b)(1)." United States v. Katana Racing, Inc. ("Katana II"), 75 F.4th 1346, 1351 (Fed. Cir. 2023). In its appeal, the government contended: (1) that "the statute of limitations set forth at 19 U.S.C. § 1621 is not jurisdictional. Rather, it is an affirmative defense that, at the pleading stage, must be adjudicated based on the well-pleaded facts in the complaint"; (2) that "the government may bring a non-penalty action for duties under [§] 1592(d) without first undertaking the administrative procedures necessary to find that Katana, itself, violated [§] 1592(a)"; and (3) that "the court erred by holding that Katana's status as importer of record was not sufficient to state a claim under [§] 1592(d)." Id.

Katana, in response, argued that the "the statute of limitations waiver was procured by deception, specifically, Customs' false promise of the administrative

proceedings required by § 1592(b), and that therefore it was in fact 'void,' as opposed to 'revoked.'" Id. Following oral argument, Katana "agreed with the government that, to the extent the Court of International Trade dismissed the government's suit for lack of jurisdiction, it erred." Id. "Instead, Katana argued that the Court of International Trade issued an appealable decision on Katana's USCIT Rule 12(b)(6) because it lacks factual allegations supporting Katana's culpability under § 1592(a)." Id. at 1352.

The Federal Circuit held, "that the Court of International Trade erred in dismissing the government's suit for lack of jurisdiction under CIT Rule 12(b)(1)." Id. at 1353. In its analysis, the Federal Circuit explained that the statute of limitations set forth in 19 U.S.C. § 1621 is not a jurisdictional time limit but is an affirmative defense, and that "a statute of limitations waiver, which is tantamount to a 'consensual extension of the limitations period,' serves to preclude the defendant from raising the statute of limitations as an affirmative defense." Id. (citing United States v. Inn Foods, Inc., 383 F.3d 1319, 1322 (Fed. Cir. 2004)). Ultimately, the Federal Circuit held that, "because the Court of International Trade erred in dismissing for lack of jurisdiction, we reverse the court's decision and remand the case to the court for further proceedings." Id.

The Federal Circuit provided that on remand, Katana can "assert any and all defenses to the government's claim for unpaid duties," but that Katana cannot argue that "Customs was required by statute to follow the penalty assessment procedures set forth in 19 U.S.C. § 1592(b) … [as such procedure[s] were not statutorily required." Id. at 1353–1354. The Federal Circuit further declined to address the sufficiency of the complaint on appeal, and provided that, "on remand, Katana may renew its motion to

dismiss under CIT Rule 12(b)(6) or seek summary judgment." Id. at 1353, n.5. The

Federal Circuit also provided that, on remand, "Katana will be able to assert as an

affirmative defense its claim that its third statute of limitations waiver was void." Id. at

1353 (emphasis added).

### IV.    Case on Remand

Upon remand, Katana renews its CIT Rule 12(b)(6) motion to dismiss, asserting

that the complaint should be dismissed because the third statute of limitations waiver is

void due to the purported affirmative misconduct of the government. Katana argues that

"[i]ndeed, the Court of Appeals stated '[i]nstead, on remand Katana may renew its

motion to dismiss under CIT Rule 12(b)(6) or seek summary judgment.'" Def.'s Mot. at 6

n.3.

Katana asserts that the complaint should be dismissed under CIT Rule 12(b)(6)

because the government failed to state a claim by (1) failing to properly identify the

person liable for the violation, and (2) failing to identify the proper level of culpability

under 19 U.S.C. § 1592(a). Def.'s Mot. at 12. Katana asserts that the complaint should

be dismissed under CIT Rule 12(b)(6) because the government failed to exhaust

administrative remedies as required by 28 U.S.C. § 2637(d). Def.'s Mot. at 6. Finally,

Katana asserts that the complaint should be dismissed under CIT Rule 12(b)(6)

because it is barred by laches. Def.'s Mot. at 27. Katana moves for summary judgment

in the alternative. Def.'s Mot. at 29.

The government, in its response and later reply, argues that: (1) the government

did not engage in affirmative misconduct in procuring a statute of limitations waiver from

Katana; (2) its complaint was properly pleaded; (3) it was not required to exhaust

administrative remedies; and (4) its suit is not barred by laches. Pl.'s Resp. The

government moves for partial summary judgment, arguing that as the importer of

record, Katana is liable for unpaid duties, and that there is no dispute of material,

admissible facts. Pl.'s Resp. and Pl.'s Reply in Supp. of Cross Mot. for Partial Summ. J.,

ECF No. 50 ("Pl.'s Reply").

### STANDARD OF REVIEW

Whether the court has subject matter jurisdiction to hear an action is a

"threshold" inquiry. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998).

In considering a motion to dismiss under CIT Rule 12(b)(6), the court must accept well-

pleaded factual allegations to be true and draw all reasonable inferences in favor of the

nonmovant. Wanxiang Am. Corp. v. United States, 12 F.4th 1369, 1373 (Fed. Cir.

2021). To survive a motion to dismiss for failure to state a claim, "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim of relief that is

plausible on its face.'" Ashcroft v. Iqbal ("Iqbal"), 556 U.S. 662, 678 (2009) (quoting Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Additionally, a motion for summary judgment will be granted "if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." CIT R. 56(a); Anderson v. Liberty Lobby, Inc. ("Liberty

Lobby"), 477 U.S. 242, 247 (1986).

Court No. 19-00125                                                    Page 9

## DISCUSSION

Although nearly fifteen years have passed since the first entry of tires into the United States without payment of required duties for which Katana was the alleged importer of record, the lengthy administrative history and considerable judicial resources which have already been expended in refereeing the controversy between the government and Katana do not change the procedural posture of the motions before the court: the parties' respective motions are each upon the initial pleadings, the Defendant has not filed an answer to the government's complaint, and the discovery process has not yet begun. The events which underlie the government's claims and Katana's defenses are variously described and contested in both their substance and their import. Despite submitting and responding to a CIT Rule 56.3 statement, the parties have not yet established a body of undisputed facts that the court could rely upon in determining that no <u>genuine dispute of any material fact</u> exists. The court has only the parties' pleadings and their representations made at oral argument upon which to base its determinations as to the propriety and persuasiveness of the arguments set forth in their motions. That procedural posture informs and compels the court's analysis and decisions below.

**I.    Katana's 12(b)(6) Motion to Dismiss Is Denied**

**A.    The government sufficiently alleged the culpability level for an action under 19 U.S.C. § 1592(d).**

The first issue is whether the government asserted the proper level of culpability in its complaint.

To survive a 12(b)(6) motion to dismiss for failure to state a claim, a complaint must show the court that the pleader is entitled to relief through well-pleaded facts accepted as true. In United States v. Blum, the Federal Circuit held that independent action can be brought for unpaid duties under 19 U.S.C. § 1592(d) without finding the requisite culpability level under 19 U.S.C. § 1592(a). 858 F.2d 1566, 1570 (Fed. Cir. 1988). "[F]or ordinary negligence [the government] need only show that acts or omissions constituting a violation occurred." United States v. KAB Trade Co., 21 CIT 297, 303 (1997). States of mind for negligence may be pleaded generally. Id. Iqbal provides that factual assertions are the lynchpin of a claim, and that conclusory legal opinions will not suffice. Iqbal, 556 U.S. at 1950.

The government brings a 19 U.S.C. § 1592(d) claim against Katana for unpaid duties in the amount of $5,742,483.80, without seeking additional penalties. Compl. ¶ 1. Although the government did not use the term "negligence," it alleged in its complaint that Katana, "as the importer of record," engaged in conduct which fell below "the reasonable standard of care" required under 19 U.S.C. § 1592(a). Id. ¶ 14.

There are three levels of culpability under 19 U.S.C. § 1592: (1) negligence; (2) gross negligence; and (3) fraud. 19 C.F.R. pt. 171, app. B(C) (2023). "As a general rule, a violation is negligent if it results from failure to exercise reasonable care and competence." Id. (emphasis added). In comparison, gross negligence and fraud have heightened mens rea culpability levels; where grossly negligent violations are done with actual knowledge of or wanton disregard, and fraudulent violations are the result of a known material false statement, omission, or act. Id. The court has previously explained

that these three culpability levels are distinct from one another, and only one may be

pleaded at the complaint stage:

> It is clear that the three alternative theories of liability recognized by 19
> U.S.C. § 1592 are mutually exclusive. <u>See</u> 19 U.S.C. § 1592(a)(1) (1999)
> (indicating that a violation may occur "by fraud, gross negligence <u>or</u>
> negligence"). Congress' use of the word "or" indicates that a choice must be
> made among the three theories; for purposes of determining penalty liability
> under 19 U.S.C. § 1592, a person who commits a customs violation may
> not have more than one mens rea at the time of commission.

<u>United States v. Pan Pac. Textile Grp., Inc.</u>, 395 F. Supp. 2d, 1244, 1258 (CIT 2005).

The Supreme Court has further instructed that it is the function of a claim, not the

form, that guides a lawsuit by explaining the elements of a claim will guide the suit

throughout litigation. <u>Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media</u>, 589 U.S.

327, 332 (2020). In <u>Comcast Corp.</u>, the Court held that while the difficulty to satisfy the

elements of a claim may increase, the elements themselves do not change:

> Normally, too, the essential elements of a claim remain constant through
> the life of a lawsuit. What a plaintiff must do to satisfy those elements may
> increase as a case progresses from complaint to trial, but the legal elements
> themselves do not change. So, to determine what the plaintiff must plausibly
> allege at the outset of a lawsuit, we usually ask what the plaintiff must prove
> in the trial at its end.

589 U.S. at 332.

The government claims that "Katana did not exercise reasonable care to ensure

that these entries, for which Katana is the importer of record, reflected accurate values

of the merchandise, and thus Katana violated 19 U.S.C. § 1592(a)." Compl. ¶ 14. The

government's factual allegations of the entries, paired with the "scheme" described, do

not collectively transmogrify into a constructive allegation of fraud. <u>See</u> <u>id</u>. ¶ 13. Instead,

these are factual allegations required in a complaint to support the asserted elements

for a claim of negligence, the reasonable standard of care. These elements, alleged in

the initial complaint, are the elements that will remain constant throughout the suit. See

Compl. ¶ 14; Comcast Corp, 589 U.S. at 332.

Further, this Court has previously held that a violation of 19 U.S.C. § 1592(a)

creates a presumption of negligence,

> It is basic that the applicable statute generally supersedes other standards
> of conduct. See 2 American Law Institute, Restatement of the Law Second
> § 284 (1965). Further, violation of the statute [19 U.S.C. § 1592(a)] creates
> a presumption of negligence. See W. Prosser, Handbook of the Law of Torts
> 200 (1971). It therefore follows that a statute-based claim which adequately
> pleads elements of the statute satisfies the pleading requirement […].

United States v. Valley Steel Prod. Co., 12 CIT 1161, 1162 (1988); United States v. Jac

Natori Co., 821 F. Supp. 1514 (CIT 1993).

Although it did not use the term "negligence," the government properly described

the culpability level for negligence, which is the exercise of "reasonable care and

competence." 19 C.F.R. pt. 171, app. B(C) (2023). The government's allegation of

violating the elements for negligence under a statute, 19 U.S.C. § 1592(a), paired with

sufficient factual allegations of the claimed violation, satisfies a claim for negligence.

Katana's motion to dismiss on the grounds that the government failed to allege the

requisite culpability in its initial complaint is denied.

**B.      The government properly identified the person responsible for the
        violation.**

The next issue is whether the government properly alleged the person or entity

liable for unpaid duties in its complaint.

Blum provides that importers of record can be held liable for unpaid duties. 858

F.2d at 1570. The Federal Circuit explained that,

> Although such parties may be innocent of a subsection (a) violation, these
> parties, if determined to be liable for import duties, are not "innocent" with
> respect to subsection (d). Subsection (d) allows the United States to recover
> duties that would have been paid but-for conduct that violates subsection
> (a). It follows that subsection (d) provides the United States with a cause of
> action to recover duties from those parties traditionally liable for such duties,
> e.g., the importer of record and its surety.

Id.

Additionally, this Court has held that,

> [A]s importer of record, [a defendant is] clearly a 'person' within the meaning
> of 19 U.S.C. § 1592(a) and, as such, may be held liable for a violation of
> that statute. This Court has repeatedly held that an importer of record
> belongs to the class of "persons" subject to liability under 19 U.S.C. §
> 1592(a) and against whom a claim may be brought for suspect entries.

Pan Pac. Textile Grp., Inc., 395 F. Supp. 2d at 1250 (citing United States v. F.H.

Fenderson, Inc., 658 F. Supp. 894 (CIT 1987)).

Where it is uncontested that a defendant is the importer of record for shipments

at issue, he is a "person" subject to 19 U.S.C. § 1592(a) liability. Id.; see also United

States v. Pacheco, 151 F. Supp. 3d, 1323, 1327 (CIT 2015) ("Having given Individual A

a power of attorney, Pacheco, as principal, can be held liable for her agent Individual

A's actions whether or not she authorized the specific unlawful conduct which

constituted the violation of section 1592.").

Further, 19 U.S.C. § 1592(d) requires only that "if the United States has been

deprived of lawful duties, taxes, or fees as a result of a violation of subsection (a), the

Customs Service shall require that such lawful duties, taxes, and fees be restored,

whether or not a monetary penalty is assessed." 19 U.S.C. § 1592(d). There are

sufficient factual allegations pleaded to show that the government believes that Katana,

as the alleged importer of record, is culpable for violating subsection (a) under a theory

of negligence, and therefore, may be found liable for the unpaid duties. See generally

Compl.

Nonetheless, the Federal Circuit has made clear that Katana is "entitled to assert

any and all defenses to the government's claims for unpaid duties," including its claims

that it was the victim of identity theft. Katana II, 75 F.4th at 1354. Such defenses,

however, entail fact-based inquiries that are not suited for resolution at the threshold

stage of this proceeding. For purposes of its claim, the government properly alleged the

"person" within the meaning of a 19 U.S.C. § 1592(a) violation. Katana's motion to

dismiss on the grounds of the government's failing to name the "person" in its initial

complaint is denied.

### C.    The government was not required to exhaust administrative remedies prior to filing suit.

The next issue is whether the government was required to exhaust administrative

procedures pursuant to 28 U.S.C. § 2637(d) prior to filing suit for a 19 U.S.C. § 1592(d)

claim.

In remanding the case, the Federal Circuit held that,

Katana will not be able to argue that Customs was required by statute to follow the penalty assessment procedures set forth in 19 U.S.C. § 1592(b). As the government argues and as Katana recognizes, such procedures were not statutorily required. Section 1592(b) provides the applicable procedures for issuing a pre-penalty and penalty notice in the event the government seeks to collect penalties for a violation of § 1592(a). In

contrast, § 1592(d) explains that "the Customs Service shall require that ... lawful duties, taxes, and fees be restored, <u>whether or not a monetary penalty is assessed</u>." 19 U.S.C. § 1592(d). Thus, when a penalty is not assessed, as here, the statute does not mandate the performance of the procedures under § 1592(b).

<u>Katana II</u>, 75 F.4th at 1354 (emphasis in original).

The Federal Circuit has held that the government's claim for unpaid duties under 19 U.S.C. § 1592(d) does not require the performance or exhaustion of the administrative procedures under 19 U.S.C. § 1592(b). Katana has not alleged what additional administrative procedures might be required beyond those set forth in subsection (b).[1] As such, it would be inappropriate for the court to create further administrative procedure requirements through application of the catch-all provision of 28 U.S.C. § 2637(d). Katana's motion to dismiss for failure to exhaust additional administrative remedies is denied.

### D.    This claim is not barred by laches.

The next issue in Katana's renewed motion to dismiss is whether the government's claim is barred by laches.

The Supreme Court has provided guidance for determining timeliness of suit when Congress has specifically enacted a statute of limitations. In <u>SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC</u>, the Court held that,

---

[1] Instead, Katana again alleges that "[w]hile [...] Customs is not required to follow the elaborate procedures of § 1592(b) when asserting a claim for withheld duties, it must articulate that there was a culpable violation of § 1592(a)." Def.'s Mot. at 10. As previously discussed, Customs has alleged a culpable violation of 19 U.S.C. § 1592(a).

> Laches provides a shield against untimely claims, and statutes of limitations serve a similar function. When Congress enacts a statute of limitations, it speaks directly to the issue of timeliness and provides a rule for determining whether a claim is timely enough to permit relief. The enactment of a statute of limitations necessarily reflects a congressional decision that the timeliness of covered claims is better judged on the basis of a generally hard and fast rule rather than the sort of case-specific judicial determination that occurs when a laches defense is asserted. Therefore, applying laches within a limitations period specified by Congress would give judges a "legislation-overriding" role that is beyond the Judiciary's power. As we stressed in Petrella, "courts are not at liberty to jettison Congress' judgment on the timeliness of suit."

SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC, 580 U.S. 328, 334–35 (2017) (internal citations omitted) (quoting Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 667 (2014)).

At oral argument, Katana was asked to explain why its argument regarding laches is appropriate given the clear directive from the Supreme Court. Oral Arg. 46:4–5, ECF No. 56. Katana failed to explain why this court should depart from the Supreme Court's holding or how the facts of this proceeding are distinguishable.[2] As such, the court will not take on a "legislation-overriding" role. Katana's motion to dismiss under a theory of laches is denied.

---

[2] In response to questioning as to whether Katana wanted to continue its laches argument despite clear directive from the Supreme Court in SCA Hygiene Prod. Aktiebolag, counsel for Katana replied, "You know, the normal questions of laches apply; dimmed recollection, dimmed access to documents." Oral Arg. 48:13–16.

### E.     Katana's assertion of affirmative misconduct is appropriately raised by motion for summary judgment.

The Federal Circuit held that the court erred in dismissing the case for lack of subject-matter jurisdiction under CIT Rule 12(b)(1), and that on remand Katana has the option to either "renew its motion to dismiss under USCIT Rule 12(b)(6) or seek summary judgment." Katana II, 75 F.4th at 1353 n.5. The Federal Circuit explained that Katana is "able to assert as an affirmative defense its claim that its third statute of limitations waiver was void." Katana II, 75 F.4th at 1353. Specifically, a waiver may be found to be void if it is not "voluntary" or is procured from an act of "affirmative misconduct." Id. (citing United States v. Ford Motor Co., 497 F.3d 1331,1336 (Fed. Cir. 2007); Stange v. United States, 282 U.S. 270, 276 (1931)). Thus, if Katana were able to demonstrate that the execution of its third statute of limitations waiver was procured through the government's affirmative misconduct, it would be able to raise the statute of limitations as an affirmative defense to the government's claims.[3]

Generally, an affirmative defense is not properly raised at the motion to dismiss stage, and instead is asserted at trial or at the summary judgment stage by reference to undisputed material facts. See Toxgon Corp. v. BNFL, Inc., 312 F.3d 1379, 1382 (Fed. Cir. 2002); Transamerica Premier Life Ins. Co. v. Selman & Co., LLC, 401 F. Supp. 3d 576, 588 (D. Md. 2019) ("Courts ordinarily do not 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses' through a Rule 12(b)(6)

---

[3] While Katana did not explicitly assert the claimed affirmative misconduct as an affirmative defense, the court will treat it as such following the Federal Circuit's guidance. See Katana II, 75 F.4th at 1353.

motion."). An exception exists, and an affirmative defense may be considered at the

motion to dismiss stage when it "clearly appears on the face of the pleading." Mobile

Acuity Ltd. v. Blippar Ltd., 110 F.4th 1280, 1289 (Fed. Cir. 2024) (quoting Boquist v.

Courtney, 32 F.4th 764, 774 (9th Cir. 2022) ("Ordinarily affirmative defenses may not be

raised by motion to dismiss …. But a complaint may be dismissed when the allegations

of the complaint give rise to an affirmative defense that clearly appears on the face of

the pleading.")). A motion to dismiss based upon an affirmative defense must be

resolved by summary judgment standards if it relies upon matters outside the pleadings.

CODA Dev. s.r.o v. Goodyear Tire & Rubber Co., 916 F.3d 1350, 1360 (Fed. Cir. 2019)

("If a court does consider material outside the pleadings, the motion to dismiss must be

treated as a motion for summary judgment under Rule 56 and all parties must be given

a reasonable opportunity to present all material pertinent to the motion."); see also 5C

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (3d ed.

2018) ("Once the district court decides to accept matters outside of the pleadings, the

presence of the word 'must' [in Rule 12(d)] indicates that the judge must convert the

motion to dismiss into one for summary judgment.").

       In its renewed motion to dismiss pursuant to CIT Rule 12(b)(6), Katana asserts

that the government engaged in affirmative misconduct by inducing Katana to agree to

a waiver of the statute of limitations in exchange for a promise to make a "presentation."

Def's. Mot. at 21. Katana provides multiple exhibits in support of this affirmative defense

assertion, including written statements between Customs officers and Katana's lawyers

discussing this purported presentation. Def.'s Ex. at 182. In its complaint, however, the

government asserted that,

> This action is timely pursuant to 19 U.S.C. § 1621. Katana executed a
> waiver of the statute of limitations for a two-year period commencing on May
> 15, 2014. On July 15, 2015, Katana signed a second two-year waiver that
> extended the period of the waiver until July 15, 2017. On October 25, 2016,
> Katana signed a third waiver for a period "up to and including July 15, 2019."

Compl. ¶ 4.

The government's assertion in its initial complaint is valid on its face. As such,

within the context of a motion to dismiss, the court cannot consider Katana's assertion

of affirmative misconduct as an affirmative defense given the factual dispute as to

whether its third waiver of the statute of limitations is void. This factual dispute relies on

matters outside the initial pleading, rather than on the face of the complaint itself.

Therefore, it is appropriate to analyze Katana's arguments respecting its allegations of

the government's affirmative misconduct under the rubric of a motion for summary

judgment.

### II.    Katana's Motion for Summary Judgment and Government's Motion for Partial Summary Judgment Are Denied

Summary judgment is proper when "the movant shows that there is no genuine

issue as to any material fact and the movant is entitled to judgment as a matter of law."

CIT Rule 56(a); see also Celotex Corp. v. Catrett ("Celotex"), 477 U.S. 317, 324 (1986).

The Federal Circuit has explained that the "movant bears the burden of demonstrating

absence of all genuine issues of material fact" and the court "must view the evidence in

a light most favorable to the nonmovant and draw all reasonable inferences in its favor

and must resolve all doubt over factual issues in favor of the party opposing summary

judgment." SRI Int'l v. Matsushita Elec. Corp. of America, (citation omitted) 775 F.2d

1107, 1116 (Fed. Cir. 1985).

If a genuine dispute about a material fact exists, summary judgment must be

denied. Liberty Lobby, 477 U.S. at 248. A dispute is "genuine" only if a reasonable fact-

finder could find for the non-moving party; a fact is "material" only if it is capable of

affecting the outcome of the litigation. Id. The primary responsibility of the court on a

motion for summary judgment is to determine whether there are any factual issues to be

tried. Dan-Dee Imports, Inc. v. United States, 7 CIT 241, 243 (1984); Yamaha

International Corp. v. United States, 3 CIT 108, 109 (1982); Outlet Book Co. v. United

States, 11 CIT 598, 599 (1987).

### A.  Katana's claim regarding the government's purported affirmative misconduct presents an issue of material fact.

Because Katana's affirmative defense alleging the government's purported

affirmative misconduct relies on arguments outside of the initial pleadings, the court now

considers those arguments under summary judgment standards.

Outside of the initial pleadings, Katana asserts that the government engaged in

affirmative misconduct by inducing Katana to agree to a waiver of the statute of

limitations in exchange for a promise to make a "presentation." Def's. Mot. at 21. Katana

argues that it relied on this opportunity to make a presentation in order to "exonerate

itself" prior to the government's demand for payment of unpaid duties. Id. at 23. In

support of this argument, Katana cites to a March 21, 2016, meeting where Katana's

President, General Manager and Controller, and counsel met with Customs Deputy

Assistant Director Jorge A. Garcia. Def.'s. Mot. 20–21. After this meeting, and reflected

in a March 22, 2016, letter, Mr. Garcia granted Katana an extension of time to tender

the claimed unpaid duties and allowed Katana the "right to make presentations in

response to that demand in accordance with 19 U.S.C. § 1618." Def.'s Ex. at 182.

Katana executed its third statute of limitations waiver on October 25, 2016. Def.'s

Ex. at 186. Katana asserts that the opportunity to make a presentation was later

revoked and that the affirmative misconduct is "the refusal of Customs at Detroit to

honor the promise of Mr. Garcia from Los Angeles, that we would be given the

opportunity to come in and make a presentation about the identity theft." Oral Arg.

40:19–22.

The government disagrees that there was any affirmative misconduct. The

government presented evidence that a Customs official, Officer Hiyama, attempted to

communicate with Katana multiple times between June 24, 2018 and March 28, 2019,

without a response. Def.'s Ex. at 190–91. In these communications, Officer Hiyama

asked for updates from Katana, as well as offered a "pathway to settlement." Def.'s Ex.

190. The government additionally asserts that there was no affirmative misconduct

because the right to present was available as a written submission, and "Katana

recognized that it could be a written submission." Oral Arg. 42:24.

The parties' disagreement about the events that transpired during the time period

between October 25, 2016 and July 15, 2019 constitutes a genuine dispute about a

material fact that cannot be resolved at the summary judgment stage, and without

discovery. There is no single test for detecting the presence of affirmative misconduct;

each case must be decided on its own particular facts and circumstances. See Dis

Vintage, LLC v. United States, 40 Int'l Trade Rep. (BNA) 1089 at 18 (CIT 2018); Lavin v.
Marsh, 644 F.2d 1378, 1382–83 n.6 (9th Cir. 1981). The inquiry is necessarily fact-
intensive and given the parties' disagreement about the facts surrounding Katana's third
waiver, it is improper to rule on this affirmative defense under summary judgment
standards. Katana, however, will have the opportunity to assert its affirmative defense at
trial, and both parties will have the opportunity to develop a more thorough factual
record through discovery.

**B.    Katana's claims regarding its level of culpability as a purported
victim of identity theft present an issue of material fact.**

Also at issue before the court is the government's cross motion for partial
summary judgment seeking $5,742,483.80 in unpaid duties. The government argues
that it has presented evidence which "would be admissible at trial" demonstrating the
elements necessary for a 19 U.S.C. § 1592(d) claim. Pl.'s Reply at 3–7. According to
the government, Katana "failed to submit evidence that would be admissible at trial to
rebut these points." Id. The government faults Katana for failing to submit an affidavit or
declaration made under penalty of perjury, arguing that "Katana primarily relies on
statements it made to CBP, but those statements are hearsay that would not be
admissible at trial and, thus, do not establish any dispute of material fact." Id. at 1.
Katana disagrees, arguing that the Federal Rules of Civil Procedure were "amended a
few years ago [so] you no longer have to put admissible evidence in support of a
summary judgment motion." Oral Arg. 33:20–33:21. Katana asserts that the "only
requirement" at the summary judgment stage of a proceeding is a statement "which
could be provided to the court at trial in an admissible form." Id. at 33:23–33:25.

Katana is correct that when considering a motion for summary judgment, the court may consider evidence presented in a form that would be inadmissible at trial. Celotex, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."). The inquiry for summary judgment purposes is "whether the cited evidence may be reduced to admissible form, not whether it is admissible in the form submitted at the summary judgment stage." United States v. Univar USA Inc. ("Univar USA"), 355 F. Supp. 3d 1225, 1235–1236 (CIT 2018) (quoting United States v. Sterling Footwear, Inc. ("Sterling Footwear"), 279 F. Supp. 3d 1113, 1124 (CIT 2017)); see also United States v. Harvic Int'l, Ltd., 427 F. Supp. 3d 1349, 1356 (CIT 2020).

The government relies on the hearsay rule as the basis for its summary judgment argument. Pl.'s Reply at 3–7. Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is inadmissible at trial unless a federal statute, Federal Rule of Evidence, or other rule "prescribed by the Supreme Court" provides otherwise. Fed. R. Evid. 802. Nonetheless, a court "may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." Sterling Footwear, 279 F. Supp. 3d at 1124–25 (2017). Cf. CIT Rule 56(c)(2).

Here, the email statements made by Katana's employees regarding its claims of identity theft as a defense against culpability may be hearsay to the extent that they are

used to prove the truth of the matter asserted.[4] See Fed. R. Evid. 801(c). However,

"[t]he most obvious way that hearsay testimony can be reduced to admissible form is to

have the hearsay declarant testify directly to the matter at trial." Sterling Footwear, 279

F. Supp. 3d at 1124–25. Counsel for Katana stated that with respect to these

statements, "there's an author and a recipient of the email; they could be made to testify

at trial." Oral Arg. 34:3–34.5. The government has made no indication that these

individuals would not be able to testify at trial.

    As such, irrespective of the government's arguments regarding the form of the

statements, the content of Katana's statements indicates that there is a genuine dispute

as to one of the most significant material facts of the case: the person or entity who is

liable under 19 U.S.C. § 1592(a) for the claim of unpaid duties under 19 U.S.C. §

1592(d). Summary judgment is not appropriate when such a significant material fact is

in dispute, and CIT Rule 56 was not meant or anticipated to be used in such manner.

See Univar USA, 355 F. Supp. 3d at 1235–1236.

    Both Katana's motion for summary judgment in the alternative and the

government's motion for partial summary judgment are therefore denied.

**CONCLUSION**

    For the foregoing reasons, Defendant's motion to dismiss is **DENIED**;

Defendant's motion for summary judgment in the alternative is **DENIED**; and Plaintiff's

motion for partial summary judgment is **DENIED**. It is **ORDERED** that both parties are

---

[4] The court makes no finding regarding the admissibility of such statements as hearsay.

Court No. 19-00125                                                    Page 25

hereby directed to file with this court within forty-five days of the date of this order an

amended Joint Status Report and Proposed Scheduling Order. Without intimating any

view on the merits, the court encourages the parties to conduct a good faith attempt to

settle this matter prior to trial.


                                        /s/      Lisa W. Wang
                                        Lisa W. Wang, Judge

Dated: September 9, 2024
        New York, New York